LORI J. COSTANZO (SBN 142633)
GABRIELLE KORTE (SBN 209312)
COSTANZO LAW FIRM
111 North Market Street, #910
San Jose, CA 95113
Phone: (408) 993-8493
Fax:    (408) 993-8496
Email: lori@costanzo-law.com
          gabrielle@costanzo-law.com

LORI E. ANDRUS (SBN 205816)
ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Phone: (415) 986-1400
Fax:    (415) 986-1474
Email: lori@andrusanderson.com

*Attorneys for Plaintiff, the Proposed Classes, and the Aggrieved Employees*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| LYNNE COATES, on behalf of herself and all others similarly situated and aggrieved,<br><br>          Plaintiff,<br><br>     vs.<br><br>FARMERS GROUP, INC., FARMERS INSURANCE EXCHANGE, and FARMERS INSURANCE COMPANY, INC.,<br><br>          Defendants. | Case No.: _____<br><br>**CLASS ACTION**<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT** |

Plaintiff Lynne Coates ("Plaintiff," "Plaintiff Coates," or "Ms. Coates"), by and through her attorneys, brings this action in her individual capacity, on behalf of other aggrieved current and former female attorney employees, and on behalf of all similarly-situated current and former female attorney employees, against Defendants Farmers Group, Inc., Farmers Insurance Exchange, and

Farmers Insurance Company, Inc. (collectively "Farmers" or "Defendants"), to redress gender discrimination at Farmers.

Plaintiff alleges, upon knowledge as to herself, and otherwise upon information and belief, as follows:

**INTRODUCTION**

1.     Farmers, the nation's third largest personal property and casualty insurance company, employs more than 900 attorneys nationwide to defend lawsuits brought against its insureds.

2.     Farmers does not reward its female attorneys equally compared to their male counterparts performing equal work.  Instead, Farmers systematically pays female attorneys less than similarly-situated male attorneys.  Not only are male attorneys paid more, they are routinely given higher profile work assignments; are given raises and promotions more frequently; and are recognized for their accomplishments while female attorneys are not.  In general, Farmers advances the careers of its male attorneys more quickly while treating its female attorneys more like support staff.

3.     Farmers' Human Resources Department is on notice of the fact that its female attorneys are underpaid, under-promoted, and/or terminated because of their gender, and has been for decades.  Indeed, the Secretary of Labor brought a lawsuit against Farmers for unequal pay in the mid-1970s.  In *Marshall v. Farmers Ins. Co.*, Civil Action No. 75-63-C2, the United States District Court of Kansas found that Farmers' "salary policy—which was admittedly couched in terms of neutral factors other than sex—nevertheless operated to perpetuate the discriminatory effects of the defendants' prior substantive policy of excluding women from promotion to [the position of] policy writing supervisor and other higher-status positions."  Nevertheless, Farmers has failed to take appropriate remedial measures to ensure that its female employees are paid fairly.

4.     Plaintiff brings this class and collective action lawsuit on behalf of similarly-situated female attorneys to seek redress for Farmers' discriminatory policies and practices.  On behalf of the Classes defined below, and on behalf of similarly aggrieved female attorney employees, Plaintiff seeks all legal and equitable relief available pursuant to Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000(e) *et seq.*, as amended; the Equal Pay Act of 1963, 29 U.S.C. § 201, *et seq.*;

the California Fair Employment and Housing Act, California Government Code § 12940, *et seq.*;

the California Equal Pay Act, California Labor Code § 1197.5; California Business & Professions

Code § 17200, *et seq.*, the California Private Attorneys General Act of 2004, California Labor Code

§ 2698 *et seq.*, and California Code of Civil Procedure § 1021.5.

## PARTIES

5.      Plaintiff Coates is a female attorney who, at all times relevant to this action, resided

in San Jose, County of Santa Clara, California and worked at Farmers' San Jose Branch Legal

Office. Despite Ms. Coates' exemplary performance over many years as a Farmers' attorney, the

company discriminated against her on account of her gender as described herein.

6.      Defendant Farmers Group, Inc. is a corporation, organized and existing under the

laws of California, with its principal place of business located in Los Angeles, California.

7.      Defendant Farmers Insurance Exchange is an inter-insurance exchange organized

under California Insurance Code section 1300 *et seq.* Farmers Insurance Exchange maintains its

principal place of business located in Los Angeles, California.

8.      Defendant Farmers Insurance Company, Inc. is a corporation that is a subsidiary of

Farmers Insurance Exchange, organized and existing under the laws of Kansas. Farmers Insurance

Company, Inc. maintains a presence in California, and has a registered agent for service of process

in Woodland Hills, California.

9.      Farmers has adopted a Byzantine structure of interlocking affiliates with similar

names that defies easy understanding or explanation. The Farmers Group of Companies is a single

business enterprise operating as an unincorporated association and as a joint venture, which exists

to sell insurance under its service mark, the "Farmers Insurance Group of Companies." The entire

enterprise is controlled by Farmers Group, Inc.

10.     Farmers Group, Inc., together with the subsidiary companies that comprise the

"P&C Group" (property and casualty group), Farmers Insurance Exchange, Fire Insurance

Exchange, Truck Insurance Exchange (the "Exchanges"), and Mid-Century Insurance Co., form an

insurance company holding system. Farmers Group, Inc. operates as the attorney-in-fact for the

1   P&C Group.  As attorney-in-fact, Farmers Group, Inc. provides management services to the

2   ensuring entities, at a rate it sets, which averages more than $1 billion yearly.  Farmers Group, Inc.

3   handles all business functions other than claims processing for Farmers Insurance Exchange,

4   including, but not limited to, supply of employees, management services, underwriting, accounting,

5   actuarial services, investment advice and services, real estate management and maintenance,

6   computer services, facilities and equipment procurement.

7       11.     At all times mentioned, each and every defendant was the agent or employee of each

8   and every other defendant.  In doing the things alleged herein, each and every defendant was acting

9   within the course and scope of this agency or employment and was acting with the consent,

10  permission, and authorization of each of the remaining defendants.  All actions of each defendant

11  alleged in the causes of action (into which this paragraph is incorporated by reference) were ratified

12  and approved by the officers or managing agents of every other defendant.

13                          **JURISDICTION AND VENUE**

14      12.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§

15  1331 and 1343(a)(4).  This Court has supplemental jurisdiction over Plaintiff's state law claims

16  pursuant to 28 U.S.C. § 1367.

17      13.     This Court has personal jurisdiction over this action because Defendants are

18  corporations or other entities licensed to do business in California, which also regularly conduct

19  business in this District.

20      14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a

21  substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

22      15.     On or about August 17, 2014, Plaintiff Coates filed a Complaint of Discrimination

23  (DFEH No. 349586-123046) with the California Department of Fair Employment and Housing

24  ("DFEH").  On August 21, 2014, the DFEH issued a Right to Sue Notice.

25      16.     On or about September 10, 2014 Plaintiff Coates filed a Charge of Discrimination

26  (Charge No. 470-2012-01492) with the United States Equal Employment Opportunity Commission

27  (hereinafter "EEOC") alleging discrimination and retaliation on the basis of sex.  Plaintiff received

28  a Right to Sue Notice from the EEOC on April 15, 2015.

CLASS AND COLLECTIVE ACTION COMPLAINT

## FACTUAL ALLEGATIONS

17.     Plaintiff Coates has been licensed to practice law in the State of California since 1992.

18.     In 1993, Ms. Coates began working for Farmers as an attorney.  She worked for Farmers until 1998, when she left to seek employment elsewhere.

19.     In October 2010, Ms. Coates returned to Farmers as a contract attorney to cover for another attorney, Angela Storey, who was on maternity leave.  Plaintiff Coates' engagement letter indicated her starting salary would be $85,200 ($7,100 per month).  At first, Ms. Coates was paid a salary of $82,500, but that was eventually corrected to $85,200.

20.     On or about April 1, 2011, Ms. Coates ceased being a contract attorney and began working for Farmers as a full-time attorney employee.  Although at the time, it had not yet been determined whether she would be assigned to HEAT (the "High Exposure Attorney Team"), Ms. Coates' salary was raised to $90,000 per year ("salary grade 37").  According to Farmers' Bodily Injury Attorney Case Handling Guidelines, an attorney in Salary Grade 37 will "primarily/typically perform/have: substantial jury trial exposure, moderate to high exposure cases, and examinations under oath."

21.     On April 7, 2011, Ms. Storey returned from maternity leave.  At that time, Ms. Coates started working with fellow attorney Andy Lauderdale as part of the HEAT team.  Plaintiff Coates' duties at that time included: opening case files, preparing agreed to case management plans ("ACMP"), preparing routine status reports and discovery summary reports, taking depositions of plaintiffs, defendants, experts and witnesses, propounding and responding to discovery, handling witnesses and experts, preparing roundtable reports and pretrial reports, going to site inspections, meeting with clients, preparing clients for trial and deposition testimony, obtaining and coordinating with experts for independent medical examinations and/or consultations, attending mandatory settlement conferences and mediations, and representing clients at trial.

22.     Ms. Coates shared a common core of tasks with Mr. Lauderdale, who consistently referred to Ms. Coates as his "law partner" and "HEAT partner."  Mr. Lauderdale handled the same responsibilities as Ms. Coates in many large, high-exposure cases that they worked on together.

23.     On March 28, 2012, Ms. Coates received her 2011 Performance Review, in which she was rated "fully meets expectations" in all areas of evaluation.  Her title at that time was listed as "Trial Attorney" and her manager was Richard Eichenbaum.  Ms. Coates is informed and believes that the objectives outlined in her review were identical to those given to Mr. Lauderdale.

24.     On April 1, 2012, Plaintiff Coates' salary was increased slightly, to $92,250.

25.     On October 31, 2012, Mr. Lauderdale emailed Plaintiff to say that she was doing outstanding work.

26.     On February 22, 2013, Plaintiff Coates received a Performance Review for 2012.  The outlined objectives were the same as those in her 2011 review.  Again, Plaintiff received a "fully meets expectations" score.

27.     On April 1, 2013, Plaintiff Coates' salary was increased to $95,829.12.

28.     On February 18, 2014, Plaintiff Coates received a Performance Review for 2013.  The outlined objectives were the same as those in her 2011 and 2012 reviews.  Again, Plaintiff received a "fully meets expectations" score.

29.     On April 1, 2014, Plaintiff Coates' salary was increased to $99,634.08.

30.     In early May, 2014, Plaintiff Coates learned that there were male attorneys in the office with less experience who were receiving greater compensation than female attorneys with more experience.

    a.  First, Plaintiff learned that a male attorney, Dan Schaar, licensed only three years and without any insurance defense experience, was hired in early 2012 at a salary of $85,000, which was only $5,000 less than salary at which Plaintiff Coates was given when re-hired for a full time position ($90,000).  At that time, Plaintiff Coates had been licensed 18 years, had worked for Farmers for five and a half years, and had experience handling insurance defense matters, including trials.  Mr. Schaar's salary quickly increased and eventually exceeded Ms. Coates' salary.  When he left Farmers' employment, on information and belief, Mr. Schaar was earning $102,000.

    b.  Second, another male attorney, Jeff Atterbury, licensed nine years and with a history of criminal work and no insurance defense experience, had also been hired at

CLASS AND COLLECTIVE ACTION COMPLAINT

$85,000 in June of 2012. Mr. Atterbury's salary quickly increased. In 2014, on information and belief, he was earning $92,000.

c. Third, a female attorney, Jessica Nudelman, licensed in 2009 and hired in 2010, was earning well below her male counterparts (and well under market), with a salary of $68,000. Consistent with this information, Plaintiff Coates observed that certain female attorneys were not being promoted or given raises at the same rate as similarly-situated male attorneys, and thus not being paid as much as their male counterparts.

d. Fourth, Ms. Coates learned that she was making two-thirds to one-half of what her male counterpart, Andy Lauderdale was making. Mr. Lauderdale was licensed in 1993, one year after Ms. Coates. Mr. Lauderdale and Ms. Coates were both doing the same or substantially similar work, but with vastly unequal pay. Plaintiff Coates is informed and believes that in 2014, Mr. Lauderdale was earning between $150,000-$200,000, compared to her salary of $99,634.08.

31. On May 15, 2014, Plaintiff Coates had a meeting with her supervisor, attorney Scott Stratman, during which she told him that she had learned disturbing information concerning her salary from other attorneys in the office. Stratman asked her what she wanted him to do. She asked him to "make it right." Stratman told her that he would look into it and that she could hold him "accountable" for doing so.

32. On or about May 22, 2014, Stratman told Plaintiff Coates that he had asked someone in Farmers' Human Resources department ("HR") to look into the salary issue. Four weeks passed without comment on Plaintiff's concerns. Stratman, however, began to strip Plaintiff Coates of the duties she had been performing for years. She was, in effect, demoted from her attorney position to that of a paralegal in retaliation for complaining about unfair pay.

33. On or about June 13, 2014, Stratman sent an email about a work assignment to other attorneys in the office, noting that Plaintiff Coates had told him that she would be at a Mandatory Settlement Conference ("MSC") hearing on June 20, 2014. Stratman said that he preferred to have Rick Pedersen handle it "since it's an MSC." Ms. Coates was eventually added to the email string,

and she asked Stratman if there was any concern that she was incapable of handling an MSC, as she had been doing for years. In response, Stratman did not answer that question, but reiterated his preference that only HEAT attorneys or managing attorneys handle MSC appearances.

34. Later, in a phone call, Plaintiff Coates told Stratman that she felt insulted by the email exchange. Ms. Coates pointed out to Stratman that she had been handling high-level litigation tasks on HEAT files for three years. Stratman countered that he was concerned about how he would explain to Farmers' Claims Department that she took a deposition if things "went South." When pressed, Stratman acknowledged that he had never received any complaints about Plaintiff Coates' work, nor had Stratman's predecessor, Mr. Pedersen, ever said that anyone in Farmers' Claims Department had ever made any complaints about Plaintiff Coates' ability to handle such appearances.

35. On or about June 18, 2014, Stratman spoke with Plaintiff Coates regarding her complaint of unequal compensation. Stratman stated that HR determined that when they hired her, her salary was within Farmers' "parameters" (though Plaintiff Coates would later be told that her starting salary was at the "low end" of Farmers' parameters). Stratman stated that HR did not believe there was a "gender issue," and that Farmers was not going to make any adjustment to her salary.

36. On or about June 24, 2014, Plaintiff Coates found out that Stratman had scheduled himself to cover a mediation that had been assigned to her. After Plaintiff asked why he had made the change, Stratman said, "That's not your job." Ms. Coates then emailed Stratman to ask for clarification of her job duties since clearly they had been changed.

37. On or about June 25, 2014, Stratman responded via email to Plaintiff Coates regarding additional changes that would be made to her duties. Plaintiff Coates was no longer permitted to make certain appearances, and no longer permitted to take critical expert/witness depositions. This was obviously a demotion.

38. On or about June 30, 2014, Plaintiff Coates sent Stratman a letter outlining her concerns regarding unfair compensation and her demotion.

//

39.     On or about July 9, 2014, Stratman emailed Plaintiff Coates a copy of a document titled "HEAT Support Objectives", which did not accurately reflect the duties she had been assigned and assumed in the previous three years.  Rather, the document outlined duties more in line with what a paralegal would normally undertake when working on a case.  Plaintiff Coates considered this further evidence of her demotion, and it caused her substantial distress.

40.     On or about July 10, 2014, Plaintiff Coates emailed Stratman, stating that in addition to the issues raised in her June 30, 2014 letter, the change in her job duties was unacceptable.  Plaintiff Coates informed Farmers that her last day in employment with Farmers would be August 1, 2014.

41.     On or about July 10, 2014, Stratman sent an email to Plaintiff Coates acknowledging her resignation.  Stratman also sent an email entitled "Transition Plan," requesting a status report on all of Plaintiff's cases by July 14, 2014.  On or about July 14, 2014, Plaintiff Coates provided updates for all her cases.

42.     On or about July 31, 2014, Plaintiff Coates filled out the "Farmers Employee DashBoard Exit Interview" and stated that she "was demoted after I voiced a concern over wage issues."  She also stated "I realized I could no longer remain at this office in late June-early July of 2014.  I never 'wanted' to leave."  Asked whether or not she believes she was discriminated against, she responded, "Yes.  I believe that I was not compensated fairly compared to what my male colleagues were paid, and after voicing such concern, I was demoted, making it impossible for me to stay."

43.     Despite Plaintiff Coates' repeated requests that Farmers address her complaints about unequal compensation, Farmers refused to act.

44.     On or about August 1, 2014, Plaintiff Coates was constructively terminated from her job as an attorney with Farmers.

**Farmers' Centralized Decision-Making, Ineffective Human Resource Functions and Discriminatory Corporate Culture**

45.     Plaintiff is informed and believes that all of Farmers' Branch Legal Offices use the same standardized personnel and staffing policies and have the same general attorney employee

CLASS AND COLLECTIVE ACTION COMPLAINT

hierarchies.  All Branch Legal Offices use a centralized HR database and the Farmers' "Employee Dashboard."  All Branch Legal Offices use the same job descriptions and basic HR policies for attorney employees.  Farmers maintains a common internal website, which all of its attorney employees can, and do, access for training and other employment-related activities.  Farmers uses a centralized recruitment process for all attorney employee positions, posting attorney employee vacancies on its job search website (http://jobs.farmers.com/category/Legal).  Farmers' compensation policies, practices, and procedures are consistent throughout its Branch Legal Offices.  The administration of Farmers' compensation system for attorney employees is centralized, and Farmers' "parameters" for compensation cannot be exceeded without approval from centralized management.  Farmers' attorney employee job descriptions are generated from a centralized location, and are consistent nationwide, using the same job descriptions (often verbatim) and job titles.

46.      Of Farmers Group, Inc.'s eight corporate officers, only one is a woman, Deborah Aldredge, and none of the Exchanges' six officers are women (http://www.farmers.com/management/).  Bloomberg.com has a list of Key Executives for Farmers Group, Inc., which range from CEO to Head of Media Relations.  Of the 40 names listed, only three are female (http://www.bloomberg.com/research/stocks/private/people.asp?privcapId=956063).  One of those women, Keitha Schofield, is the only woman on the Board of Farmers Group, Inc., according to Bloomberg (http://www.bloomberg.com/research/stocks/private/board.asp?privcapId=956063).

47.      This cadre of mostly male corporate executives maintains centralized control over its attorneys' employment terms and conditions, including, without limitation, job assignment, career progression, promotion, discipline, demotion, training, evaluations, and compensation policies, practices and procedures.  Farmers' male-dominated leadership presides over the policies, procedures and practices that have a disparate impact on female attorney employees.  Such policies, procedures and practices are not valid, job-related, or justified by business necessity.  These employment policies, procedures and practices are not unique or limited to any particular Branch Legal Office location; rather, they apply to all locations and, thus, affect all female attorney

1  employees in the same manner regardless of the office in which they work, or position which they

2  hold.

3      48.      Farmers' uniform policies, procedures and practices all suffer from a lack of:

4  transparency, adequate quality standards and controls, sufficient implementation metrics,

5  management/HR review, and opportunities for redress or challenge.  As a result, female attorney

6  employees are assigned, evaluated, compensated, developed, promoted and terminated within a

7  system that is insufficiently designed, articulated, explained or implemented to consistently,

8  reliably or equitably manage or reward employees.  Farmers centralized policies, procedures and

9  practices have a disparate impact on female attorney employees' compensation.  Additionally,

10  through these centralized policies, procedures and practices, Farmers' female attorney employees

11  have unequal access to duties necessary for attorneys to gain the skills required for career

12  advancement at Farmers.

13      49.      Farmers lacks a system of accountability with respect to gender discrimination.

14  Social science research has increasingly shown that implementing a meaningful system which holds

15  employees accountable for making unbiased personnel decisions is an effective means of

16  eradicating unequal pay.  A meaningful system of accountability includes transparency in the

17  distribution of opportunities and rewards, which is sorely deficient at Farmers.  A meaningful

18  system of accountability also includes regular monitoring to identify instances in which rewards

19  and opportunities are not distributed appropriately.  Decision makers should be required to justify

20  personnel decisions, and some entity, individual or department, should be charged with addressing

21  instances in which fair treatment has been violated and sanctioning those who engage in unfair

22  treatment.  In other words, organizations need a department or individual who receives regular

23  reports on the decisions that have been made.  That individual or department must regularly

24  monitor all personnel actions to compare how employees of different sexes have been treated, and

25  must have sufficient clout to remedy unfair personnel actions and appropriately sanction the

26  decision makers who violated the organization's standards of fair behavior.

27      50.      Organizations have systems of accountability for all consequential processes—

28  accident rates, losses, output, etc.  The research on accountability shows that decision makers who

know that they are going to be held accountable for an outcome are less likely to use irrelevant criteria in making a decision, and that women fare better in organizations that have accountability systems associated with personnel evaluation.

51.     Without the appropriate standards, guidelines, or transparency necessary to insure an equitable workplace, unfounded criticisms may be lodged against female attorney employees and illegitimate criticisms may be given undue weight.  In short, Farmers' HR and management personnel have failed to curb a corporate culture that values male employees over female employees.

52.     Where HR complaint and compliance policies do exist at Farmers, they lack meaningful quality controls, standards, implementation metrics, and means of redress.  Concerns about discrimination made to Farmers' leadership and HR itself are allowed to go unaddressed.

53.     Farmers has failed to impose adequate oversight and discipline on male employees who violate equal employment opportunity laws, and has failed to create adequate incentives for its managerial and supervisory personnel to comply with such laws regarding its employment policies, procedures and practices.

54.     Thus, Farmers tolerates, and even cultivates, a hostile environment in which female attorney employees are openly devalued, where retaliation for voicing gender discrimination complaints is the norm, and where female attorneys who question the company's gender biases are routinely pushed out.

55.     Farmers publicly acknowledges a lack of diversity in its ranks, euphemistically referring to "opportunities for growth" among women in the insurance industry.  Rather than take responsibility for the unequal working conditions to which it subjected its female employees, however, Farmers chooses to blame the victim, proclaiming that it "has initiated a number of efforts to raise awareness of what women can do to prepare themselves for opportunities in key leadership roles."  This kind of blinder mentality is, unfortunately, endemic in the male-dominated corporate culture at Farmers.  Farmers' lack of commitment to promoting women in its organization is apparent even in its own promotional materials—of the 112 press releases publicly available on Farmers' website, only 13 female employees were directly discussed or quoted.  Two of these press

releases, in April 2014, congratulated the "elite group of agents and district managers" chosen for its "prestigious Presidents Council." Only 30 women were named in the selection of 154 Farmers employees from across the country.

56.     In sum, Farmers has demonstrated a reckless disregard and deliberate indifference to its female attorney employees by overlooking or otherwise dismissing even blatant evidence of gender discrimination.

57.     Farmers' uniform policies, procedures and practices have a disparate impact on its female attorney employees and, as a result, Plaintiff Coates and the Classes she seeks to represent have been individually and systematically discriminated against. Such gender discrimination includes, without limitation: (a) paying Plaintiff and other female attorneys less than similarly-situated male attorneys; (b) failing to promote or advance Plaintiff and other female attorneys at the same rate as male attorneys performing equal work; (c) carrying out discriminatory job assignments and reassignments, demotions, and terminations; (d) retaliation; and (e) other adverse employment actions.

**PRIVATE ATTORNEY GENERAL ACT REPRESENTATIVE ACTION ALLEGATIONS**

58.     Plaintiff Coates is an aggrieved employee. Plaintiff Coates was subjected to the conduct complained of herein, as were all similarly aggrieved current and former female attorney employees. Notice of the alleged violations by Farmers was provided by Plaintiff Coates to the Labor Workforce and Development Agency ("LWDA") on February 17, 2015. As of the date of filing of this complaint, the LWDA had not responded.

**CLASS ACTION ALLEGATIONS**

**Federal Equal Pay Act Claims are Brought on Behalf of a Nationwide Class**

59.     Plaintiff Coates alleges violations of the federal Equal Pay Act ("EPA") on behalf of: all current, former and future female attorney employees who worked for Farmers at any time during the applicable liability period including without limitation, the following job titles: staff attorney, attorney, trial attorney, senior trial attorney, HEAT attorney, supervising attorney, managing attorney (the "**Nationwide EPA Class**").

60.     Members of the Nationwide EPA Class: (a) were not compensated equally to male attorneys who had substantially similar job classifications, job functions, job titles, salary grades, job descriptions, and/or job duties based on Farmers' common and centralized employment policies, procedures and practices; (b) were not compensated equally to male attorney employees who performed substantially similar work based on Farmers' common and centralized employment policies, procedures and practices; and (c) were denied assignment, placement, promotion and/or advancement opportunities that would have resulted in greater compensation in favor of less-qualified male attorney employees based on Defendants' common and centralized employment policies, procedures and practices.

61.     Questions of law and fact common to Plaintiff Coates and the Nationwide EPA Class include, without limitation: (a) whether Farmers unlawfully failed to compensate female attorney employees at a level commensurate with male attorney employees performing equal work; (b) whether Farmers unlawfully failed to assign, place, promote and advance female attorney employees to higher paying positions in a fashion commensurate with similarly-situated male attorney employees; (c) whether Farmers' policy, procedure or practice of failing to compensate female attorney employees on par with comparable male attorney employees as a result of (a) and (b) violate applicable provisions of the EPA; and (d) whether Farmers' failure to compensate female attorney employees on par with comparable male attorney employees as a result of (a) and (b) was "willful" within the meaning of the EPA.

62.     Counts for violations of the EPA may be brought and maintained as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b), for all claims asserted by Plaintiff Coates, because her claims are similar to the claims of all putative members of the Nationwide EPA Class.

63.     Plaintiff Coates and the members of the Nationwide EPA Class are similarly situated due to the fact that they: (a) have substantially similar job classifications, job functions, job titles, job descriptions, and/or job duties; and (b) are all subject to Farmers' common and centralized compensation policies, procedures and practices resulting in unequal pay based on sex by (i) failing to compensate female attorney employees on par with male attorney employees who perform substantially equal work and/or hold equivalent job titles and positions, and (ii) failing to provide

1  female attorney employees equal pay by denying opportunities for assignment, placement,

2  promotion and advancement that would have resulted in greater compensation to them comparable

3  to those afforded to male attorney employees who perform substantially equal work.

**Title VII Claims are Brought on Behalf of a Nationwide Class**

4

5  64.     Plaintiff Coates alleges violations of Title VII on behalf of: all current, former and

6  future female attorney employees who worked for Farmers at any time during the applicable

7  liability period including without limitation, the following job titles: staff attorney, attorney, trial

8  attorney, senior trial attorney, HEAT attorney, supervising attorney, managing attorney (the

9  "**Nationwide Title VII Class**").

10  65.     Members of the Nationwide Title VII Class: (a) were not compensated equally to

11  male attorneys who had substantially similar job classifications, job functions, job titles, salary

12  grades, job descriptions, and/or job duties based on Farmers' common and centralized employment

13  policies, procedures and practices; (b) were not compensated equally to male attorney employees

14  who performed substantially similar work based on Farmers' common and centralized employment

15  policies, procedures and practices; and (c) were denied assignment, placement, promotion and/or

16  advancement opportunities that would have resulted in greater compensation in favor of less-

17  qualified male attorney employees based on Defendants' common and centralized employment

18  policies, procedures and practices.

19  66.     The proposed Nationwide Title VII Class meets the requirements for certification

20  pursuant to Federal Rule of Civil Procedure 23(a), as well as subsections (b)(3) and (c)(4), as

21  described below.

**Numerosity and Impracticability of Joinder**

22

23  67.     On information and belief, the Nationwide Title VII Class consists of hundreds of

24  former, current and future female attorney employees, too numerous to make joinder practicable.

**Common Questions of Law and Fact**

25

26  68.     The prosecution of the Nationwide Title VII Class' claims requires the adjudication

27  of numerous questions of law and fact common to the Plaintiff Coates' individual claims and those

28  of the Nationwide Title VII Class.

69.     The common questions of law include, *inter alia*, (a) whether Farmers has engaged in unlawful disparate impact gender discrimination in its compensation, assignment, selection, performance evaluation, promotion, advancement, and termination policies, procedures and practices, and in the general terms and conditions of work and employment under Title VII; (b) whether the failure to institute adequate standards, quality controls, implementation metrics, or oversight in assignment, compensation, evaluation, development, promotion and termination systems violates Title VII; (c) whether the lack of transparency and of opportunities for redress in those systems violates Title VII; and (d) whether senior management and HR's failure to prevent, investigate, or properly respond to evidence and complaints of discrimination in the workplace violates Title VII.

70.     The common questions of fact include whether Farmers has, *inter alia*: (a) used a system of assignment that lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency, and opportunities for redress; (b) through the use of that system of assignment, placed female attorney employees in job titles or classifications lower than similarly-situated male attorney employees; (c) systematically, intentionally or knowingly placed female attorney employees in job titles or classifications lower than similarly-situated male attorney employees; (d) used a compensation system that lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency and opportunities for redress; (e) through the use of that compensation system, compensated female attorney employees less than similarly-situated male attorney employees in salary, raises, and/or benefits; (f) systematically, intentionally, or knowingly compensated female attorney employees less than similarly-situated male attorney employees; (g) used a promotion system that lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency and opportunities for redress; (h) through the use of that promotion system, precluded or delayed the promotion of female attorney employees into higher level positions traditionally held by male attorney employees; (i) systematically, intentionally or knowingly precluded or delayed the promotion of female attorney employees into higher levels positions traditionally held by male attorney employees; (j) used a system for performance evaluations that lacks meaningful or appropriate standards, implementation metrics,

quality controls, transparency and opportunities for redress; (k) through the use of that performance evaluation system inadequately, inequitably, or disparately measured and classified female attorney employees' and male attorney employees' performance; (l) systematically, intentionally or knowingly subjected female attorney employees to inaccurate, inequitable or discriminatorily lowered performance evaluations; (m) used HR and equal employment opportunity systems that lack meaningful or appropriate standards, implementation metrics, quality controls, transparency and opportunities for redress; (n) through the use of those systems, minimized, ignored or covered up evidence of gender discrimination and harassment in the workplace and/or otherwise mishandled the investigation of responses to complaints of discrimination and harassment brought to the attention of senior management, the HR department, or through other reporting channels; (o) systematically, intentionally, knowingly, or deliberately showed an indifference to evidence of discrimination in the workplace or otherwise minimized, ignored, mishandled, or covered up evidence of or complaints about gender discrimination and harassment in the workplace; (p) failed to adequately or meaningfully train, coach or discipline senior management on equal employment opportunity principles and compliance; and (q) carried out demotions and/or job reassignments in a discriminatory manner based on gender.

71.     The answers to these common questions will be the same for Plaintiff Coates and all Nationwide Title VII Class members and will establish the elements of Plaintiff's claims at the same time as the Nationwide Title VII Class members' claims.

## Typicality

72.     Plaintiff Coates' claims are typical of the claims of the Nationwide Title VII Class. The relief sought by the Plaintiff for gender discrimination complained of herein is also typical of the relief sought on behalf of the Nationwide Title VII Class.

73.     Like the members of the Nationwide Title VII Class, Plaintiff Coates is a female and worked as an attorney for Farmers during the liability period.

74.     Discrimination in assignment, selection, promotion, advancement, compensation and termination affected the compensation and employment opportunities of Plaintiff Coates and all members of the Nationwide Title VII Class in the same or similar way.

75.     Farmers has failed to create adequate incentives for its executives and managers to comply with its own policies and equal employment opportunity laws regarding each of the employment policies, practices and procedures referenced in this Complaint, and have failed to discipline adequately its executives, managers, and other employees when they violated company policy or discrimination laws.  These failures have affected Plaintiff Coates and the Nationwide Title VII Class members in the same or similar ways.

76.     The relief necessary to remedy Plaintiff Coates' claims is the same relief necessary to remedy the claims of the Nationwide Title VII Class members in this case.

**Adequacy of Representation**

77.     Plaintiff Coates' interests are co-extensive with those of the members of the Nationwide Title VII Class.  Plaintiff Coates seeks damages resulting from Farmers' discriminatory employment policies, procedures and practices which impact all Class members in a uniform manner.  Plaintiff Coates is willing and able to represent the Nationwide Title VII Class fairly and vigorously as she pursues her individual claims in this action.

78.     Plaintiff Coates has retained counsel who are qualified, experienced, and able to conduct this litigation and to meet the time and fiscal demands required to litigate an employment discrimination class action of this size and complexity.  The combined interests, experience, and resources of Plaintiff's counsel to litigate competently the individual and class claims at issue in this case satisfy the adequacy of representation requirement.

**Requirements of Rule 23(b)(3)**

79.     The common issues of fact and law affecting the claims of Plaintiff Coates and the Nationwide Title VII Class members predominate over any issues affecting only individual claims.  These issues include whether Farmers has engaged in gender discrimination against female attorney employees by: (1) paying Plaintiff Coates and other female attorney employees less than male attorney employees performing the same or substantially similar work; (2) failing to promote or advance Plaintiff Coates and other female attorney employees at the same rate as similarly-situated male attorney employees; (3) failing to prevent, respond to, adequately investigate, and/or appropriately resolve instances of gender discrimination; (4) carrying out discriminatory demotions

and/or job reassignment; and (5) failing to implement a system of accountability that (a) ensures transparency and regular monitoring to ensure that the above (1)-(4) are carried out without regard to sex, and (b) that penalizes employees who fail to treat Farmers' female attorney employees fairly.

80.     Prosecution of these claims on a class-wide basis is the most efficient and economical means of resolving the questions of law and fact common to the claims of Plaintiff Coates and the Nationwide Title VII Class.

81.     Plaintiff Coates' individual claims require resolution of the common question of whether Farmers has engaged in a systemic pattern or practice of disparate impact discrimination against its female attorney employees.

82.     Plaintiff Coates has standing to seek such relief because of the adverse effect that such discrimination has had on her individually and on female attorney employees generally. Farmers caused Plaintiff Coates' injuries through its discriminatory policies, procedures and practices.  These injuries are redressable through systemic relief and class-wide remedies.

83.     In order to achieve such class-wide relief, Plaintiff Coates will first establish the existence of systemic gender discrimination as the premise for the relief she seeks.  Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations. Certification of the Nationwide Title VII Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiff Coates, the Nationwide Title VII Class, and the Defendants.

84.     The cost of proving the disparate impact of Farmers' policies, procedures and practices makes it impracticable for Plaintiff Coates and members of the Nationwide Title VII Class to prosecute their claims individually.

### Requirements of Rule 23(c)(4)

85.     Class-wide liability and the relief sought herein present common issues capable of class-wide resolution, which would advance the interests of the parties in an efficient manner.

//

19

**Claims Brought on Behalf of a California Class**

86.     In addition to the Nationwide EPA Class and the Nationwide Title VII Class, Plaintiff Coates seeks to represent the **California Class**, defined as: current, former and future female attorney employees who worked for Farmers in California at any time during the applicable liability period including without limitation, the following job titles: staff attorney, attorney, trial attorney, senior trial attorney, HEAT attorney, supervising attorney, managing attorney.

87.     On behalf of the California Class, Plaintiff Coates brings claims under the California Fair Employment and Housing Act, Cal. Gov. Code § 12940, *et seq*., the California Equal Pay Act, Cal. Lab. Code § 1197.5, *et seq*., California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*., the California Private Attorneys General Act of 2004, Cal. Lab. Code § 2698 *et seq*., and California Code of Civil Procedure § 1021.5.

88.     The proposed California Class meets the requirements for certification pursuant to Federal Rule of Civil Procedure 23(a), as well as subsections (b)(3) and (c)(4), as described below.

**Numerosity and Impracticability of Joinder**

89.     On information and belief, the California Class consists of many dozens, if not hundreds, of former, current and future female attorney employees, too numerous to make joinder practicable.

**Common Questions of Law and Fact**

90.     The prosecution of the California Class' claims requires the adjudication of numerous questions of law and fact common to the Plaintiff Coates' individual claims and those of the California Class.

91.     The common questions of law include, *inter alia*, (a) whether Farmers has engaged in unlawful disparate impact gender discrimination in its compensation, assignment, selection, performance evaluation, promotion, advancement, and termination policies, procedures and practices, and in the general terms and conditions of work and employment under FEHA, the California Equal Pay Act and/or other statutes; (b) whether the failure to institute adequate standards, quality controls, implementation metrics, or oversight in assignment, compensation, evaluation, development, promotion and termination systems violates FEHA, the California Equal

Pay Act and/or other statutes; (c) whether the lack of transparency and of opportunities for redress in those systems violates FEHA, the California Equal Pay Act and/or other statutes; and (d) whether senior management and HR's failure to prevent, investigate, or properly respond to evidence and complaints of discrimination in the workplace violates FEHA, the California Equal Pay Act and/or other statutes.

92.     The common questions of fact include whether Farmers has, *inter alia*: (a) used a system of assignment that lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency, and opportunities for redress; (b) through the use of that system of assignment, placed female attorney employees in job titles or classifications lower than similarly-situated male attorney employees; (c) systematically, intentionally or knowingly placed female attorney employees in job titles or classifications lower than similarly-situated male attorney employees; (d) used a compensation system that lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency and opportunities for redress; (e) through the use of that compensation system, compensated female attorney employees less than similarly-situated male attorney employees in salary, raises, and/or benefits; (f) systematically, intentionally, or knowingly compensated female attorney employees less than similarly-situated male attorney employees; (g) used a promotion system that lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency and opportunities for redress; (h) through the use of that promotion system, precluded or delayed the promotion of female attorney employees into higher level positions traditionally held by male attorney employees; (i) systematically, intentionally or knowingly precluded or delayed the promotion of female attorney employees into higher levels positions traditionally held by male attorney employees; (j) used a system for performance evaluations that lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency and opportunities for redress; (k) through the use of that performance evaluation system inadequately, inequitably, or disparately measured and classified female attorney employees' and male attorney employees' performance; (l) systematically, intentionally or knowingly subjected female attorney employees to inaccurate, inequitable or discriminatorily lowered performance evaluations; (m) used HR and equal employment opportunity systems that

lack meaningful or appropriate standards, implementation metrics, quality controls, transparency and opportunities for redress; (n) through the use of those systems, minimized, ignored or covered up evidence of gender discrimination and harassment in the workplace and/or otherwise mishandled the investigation of responses to complaints of discrimination and harassment brought to the attention of senior management, the HR department, or through other reporting channels; (o) systematically,  intentionally, knowingly, or deliberately showed an indifference to evidence of discrimination in the workplace or otherwise minimized, ignored, mishandled, or covered up evidence of or complaints about gender discrimination and harassment in the workplace; (p) failed to adequately or meaningfully train, coach or discipline senior management on equal employment opportunity principles and compliance; and (q) carried out demotions, and/or job reassignments in a discriminatory manner based on gender.

93.     The answers to these common questions will be the same for Plaintiff Coates and all California Class members and will establish (or not establish) the elements of Plaintiff's claims at the same time as the California Class members' claims.

<strong>Typicality</strong>

94.     Plaintiff Coates' claims are typical of the claims of the California Class.  The relief sought by the Plaintiff for gender discrimination complained of herein is also typical of the relief sought on behalf of the California Class.

95.     Like the members of the California Class, Plaintiff Coates is a female and worked as an attorney for Farmers during the liability period.

96.     Discrimination in assignment, selection, promotion, advancement, compensation and termination affected the compensation and employment opportunities of Plaintiff Coates and all members of the California Class in the same or similar way.

97.     Farmers has failed to create adequate incentives for its executives and managers to comply with its own policies and equal employment opportunity laws regarding each of the employment policies, procedures and practices referenced in this Complaint, and has failed to adequately discipline its executives, managers, and other employees when they violated company

policy or discrimination laws.  These failures have affected Plaintiff Coates and the California Class members in the same or similar ways.

98.      The relief necessary to remedy Plaintiff Coates' claims is the same relief necessary to remedy the claims of the California Class members in this case.

**Adequacy of Representation**

99.      Plaintiff Coates' interests are co-extensive with those of the members of the California Class.  Plaintiff Coates seeks to remedy Farmers' discriminatory employment policies, procedures and practices so that female attorney employees will no longer be paid less than their male counterparts doing the same or similar work.  Plaintiff Coates is willing and able to represent the California Class fairly and vigorously as she pursues her individual claims in this action.

100.      Plaintiff Coates has retained counsel who are qualified, experienced, and able to conduct this litigation and to meet the time and fiscal demands required to litigate an employment discrimination class action of this size and complexity.  The combined interests, experience, and resources of Plaintiff's counsel to litigate competently the individual and class claims at issue in this case satisfy the adequacy of representation requirement.

**Requirements of Rule 23(b)(3)**

101.      The common issues of fact and law affecting the claims of Plaintiff Coates and the California Class members predominate over any issues affecting only individual claims.  These issues include whether Farmers has engaged in gender discrimination against female attorney employees by: (1) paying Plaintiff Coates and other female attorney employees less than male attorney employees performing the same or substantially similar work; (2) failing to promote or advance Plaintiff Coates and other female attorney employees at the same rate as similarly-situated male attorney employees; (3) failing to prevent, respond to, adequately investigate, and/or appropriately resolve instances of gender discrimination; and (4) carrying out discriminatory demotions, and/or job reassignments.

102.      Prosecution of these claims on a class-wide basis is the most efficient and economical means of resolving the questions of law and fact common to the claims of Plaintiff Coates and the California Class.

103.     Plaintiff Coates' individual claims require resolution of the common questions of whether Farmers has engaged in a systemic pattern or practice of disparate impact discrimination against its female attorney employees.

104.     Plaintiff Coates has standing to seek such relief because of the adverse effect that such discrimination has had on her individual and on female attorney employees generally. Farmers caused Plaintiff Coates' injuries through its discriminatory policies, procedures and practices.  These injuries are redressable through systemic relief and class-wide remedies.

105.     In order to achieve such class-wide relief, Plaintiff Coates will first establish the existence of systemic gender discrimination as the premise for the relief she seeks.  Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations. Certification of the California Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiff Coates, the California Class, and the Defendants.

106.     The cost of proving the disparate impact of Farmers' policies, procedures and practices makes it impracticable for Plaintiff Coates and members of the California Class to prosecute their claims individually.

### Requirements of Rule 23(c)(4)

107.     Class-wide liability and the relief sought herein present common issues capable of class-wide resolution, which would advance the interests of the parties in an efficient manner.

### ALLEGATIONS REGARDING PUNITIVE DAMAGES

108.     Farmers has performed the acts alleged with malice, fraud, oppression, and/or reckless indifference to the protected rights of Plaintiff Coates and class members.  Plaintiff Coates and Class members are thus entitled to recover punitive damages in an amount according to proof.

//

//

//

//

**FIRST CLAIM FOR RELIEF**
**VIOLATIONS OF THE FAIR LABOR STANDARDS ACT OF 1938, AS AMENDED BY**
**THE EQUAL PAY ACT OF 1963**
**DENIAL OF EQUAL PAY FOR EQUAL WORK**
**29 U.S.C. § 206(d)** *et seq.*
**(On Behalf of Plaintiff Coates and the Nationwide EPA Class)**

109.    Plaintiff hereby incorporates and realleges each and every preceding paragraph of this Complaint as if the same were set forth at length herein.

110.    This cause of action is brought by Plaintiff Coates, individually, and on behalf of the Nationwide EPA Class, including all Nationwide EPA Class members who "opt in" to this action.

111.    Farmers Group, Inc. is an "employer" within the meaning of 29 U.S.C. § 203(d).

112.    Farmers Insurance Exchange is an "employer" within the meaning of 29 U.S.C. § 203(d).

113.    Farmers Insurance Company, Inc. is an "employer" within the meaning of 29 U.S.C. § 203(d).

114.    Plaintiff Coates and members of the Nationwide EPA Class are "employees" within the meaning of 29 U.S.C. § 203(e).

115.    The Farmers Branch Legal Office locations across the country conduct related activities under common control for a common business purpose.  As such, even though the Nationwide EPA Class members work in different locations, they are all employed by a single establishment.

116.    Farmers has discriminated against Plaintiff Coates and the Nationwide EPA Class members in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 206(d), *et seq*., as amended by the Equal Pay Act of 1963 ("EPA"), by providing them with lower pay than similarly-situated male colleagues even though Plaintiff Coates, and all other similarly-situated female attorney employees, performed substantially similar duties requiring the same skill, effort and responsibilities of their male counterparts, and are or were performed under similar working conditions.

117.    Farmers so discriminated by subjecting Plaintiff Coates and the Nationwide EPA Class members to common discriminatory pay policies, including discriminatory salaries, raises, and other compensation incentives, and discriminatory assignments, denials of promotions, and

other advancement opportunities that would result in higher compensation, and other forms of

discrimination in violation of the EPA.

118.     The differential in pay between male and female attorney employees was not due to

seniority, merit, quantity, or quality of production, but was due to gender.

119.     Farmers caused, attempted to cause, contributed to, or caused the continuation of,

the wage rate discrimination based on sex in violation of the EPA.

120.     The foregoing conduct constitutes a willful violation of the EPA within the meaning

of 29 U.S.C. § 255(a).  Because Farmers has willfully violated the EPA, a three-year statute of

limitations applies to such violations, pursuant to 29 U.S.C. § 255(a).

121.     As a result of Farmers' conduct, Plaintiff Coates and the members of the Nationwide

EPA Class have suffered and will continue to suffer harm, including but not limited to: lost

earnings, lost benefits, and other financial loss, as well as non-economic damages.

122.     By reason of Farmers' discrimination, Plaintiff Coates and the Nationwide EPA

Class members are entitled to all legal and equitable remedies available for violations of the EPA

including liquidated damages for all willful violations, prejudgment interest, attorneys' fees, costs,

and other compensation pursuant to 29 U.S.C. § 216(b).

123.     Attorneys' fees and costs are also warranted under California Code of Civil

Procedure § 1021.5.

**SECOND CLAIM FOR RELIEF**
**VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**GENDER DISCRIMINATION**
**42 U.S.C. § 2000e,** *et seq.*
**(On Behalf of Plaintiff Coates and the Nationwide Title VII Class)**

124.     Plaintiff hereby incorporates and realleges each and every preceding paragraph of

this Complaint as if the same were set forth at length herein.

125.     This cause of action is brought by Plaintiff Coates, individually, and on behalf of the

Nationwide Title VII Class.

126.     Farmers has discriminated against Plaintiff Coates and members of the Nationwide

Title VII Class in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, as

amended by the Civil Rights Act of 1991 ("Title VII"), as described herein.  Although Farmers'

uniform employment policies, procedures and practices are facially neutral, they result in a disparate impact upon Farmers' female attorney employees.

127.     Farmers has discriminated against Plaintiff Coates and members of the Nationwide Title VII Class by treating them differently from and less preferably than similarly-situated male attorney employees and by subjecting them to disparate pay, discriminatory denial of pay raises, disparate terms and conditions of employment, discriminatory job assignments, discriminatory demotions, discriminatory denial of promotions, and other forms of discrimination in violation of Title VII.

128.     Farmers has failed to prevent, respond to, adequately investigate, and/or appropriately resolve instances of gender discrimination in the workplace.

129.     Farmers' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Plaintiff Coates and all members of the Nationwide Title VII Class, entitling Plaintiff and the Nationwide Title VII Class members to punitive damages.

130.     Farmers' policies, practices and/or procedures have produced a disparate impact on Plaintiff Coates and members of the Nationwide Title VII Class with respect to the terms and conditions of their employment.

131.     Farmers' conduct is not justified by business necessity or, if it could be justified, there are less discriminatory alternatives to it.

132.     As a result of Farmers' conduct, Plaintiff Coates and the members of the Nationwide Title VII Class have suffered and continue to suffer harm, including but not limited to, lost earnings, lost benefits, lost future employment opportunities, other financial loss, as well as non-economic damages.

133.     By reason of Farmers' discrimination, Plaintiff Coates and the members of the Nationwide Title VII Class are entitled to all legal and equitable remedies available for violations of Title VII, including reinstatement and an award of compensatory and punitive damages.

134.     Attorneys' fees and costs should be awarded under 42 U.S.C. § 2000e-5(k) and California Code of Civil Proc. § 1021.5.

//

### THIRD CLAIM FOR RELIEF
### VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT
### GENDER DISCRIMINATION
### California Government Code § 12940, *et seq.*
### (On Behalf of Plaintiff Coates and the California Class)

135.     Plaintiff hereby incorporates and realleges each and every preceding paragraph of this Complaint as if the same were set forth at length herein.

136.     This cause of action is brought by Plaintiff Coates, individually, and on behalf of the California Class.

137.     Farmers has discriminated against Plaintiff Coates and the California Class in violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12940, *et seq.*, by subjecting them to uniform employment policies, procedures and practices that result in disparate impact based on gender and by subjecting them to disparate pay, discriminatory denial of pay raise, disparate terms and conditions of employment, discriminatory job assignment, discriminatory demotions, discriminatory denial of promotions, and other forms of discrimination in violated of FEHA.

138.     Farmers has failed to prevent, respond to, adequately investigate, and/or appropriately resolve instances of gender discrimination in the workplace.

139.     Farmers' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Plaintiff Coates and the California Class, entitling them to punitive damages.

140.     Farmers' policies, procedures and practices have produced a disparate impact on Plaintiff Coates and the California Class members with respect to the terms and conditions of their employment.

141.     As a result of Farmers' conduct, Plaintiff Coates and the members of the California Class have suffered and continue to suffer harm, including but not limited to, lost earnings, lost benefits, lost future employment opportunities, and other financial losses, as well as non-economic damages.

142.     By reason of Farmers' discrimination, Plaintiff Coates and the members of the California Class are entitled to all legal and equitable remedies available for violations of FEHA, including reinstatement and an award of compensatory and punitive damages.

1   143.     Attorneys' fees should be awarded under Cal. Gov. Code § 12940 and California

2   Code of Civil Procedure § 1021.5.

3                        **FOURTH CLAIM FOR RELIEF**
                    **VIOLATION OF THE CALIFORNIA EQUAL PAY ACT**
4                         **California Labor Code § 1197.5, *et seq.***
      **(On Behalf of Plaintiff Coates, the California Class and the Aggrieved Employees)**
5

6   144.     Plaintiff hereby incorporates and realleges each and every preceding paragraph of

7   this Complaint as if the same were set forth at length herein.

8   145.     This cause of action is brought by Plaintiff Coates, individually, and on behalf of the

9   California Class and the aggrieved employees.

10  146.     Farmers has discriminated against Plaintiff Coates and members of the California

11  Class in violation of California Labor Code § 1197.5, *et seq.*  Farmers has discriminated against

12  Plaintiff Coates and members of the California Class by discriminating against its female attorney

13  employees compared against similarly-situated male attorney employees who performed jobs which

14  required equal skill, effort, and responsibility, and which were performed under similar working

15  conditions.  Farmers so discriminated by subjecting them to discriminatory pay, discriminatory

16  denials of raises, discriminatory denials of promotions and other advancement opportunities that

17  would result in higher compensation, and other forms of discrimination in violation of the

18  California Equal Pay Act.

19  147.     Farmers caused, attempted to cause, contributed to, or caused the continuation of,

20  the wage rate discrimination based on sex in violation of the California Equal Pay Act.  Moreover,

21  Farmers willfully violated the California Equal Pay Act by intentionally, knowingly, and

22  deliberately paying women less than men.

23  148.     As a result of Farmers' conduct and/or Farmers' willful, knowing and intentional

24  discrimination, Plaintiff Coates and members of the California Class have suffered and will

25  continue to suffer harm, including but not limited to, lost earnings, lost benefits, and other financial

26  loss, as well as non-economic damages.

27  149.     Plaintiff Coates and the California Class are therefore entitled to all legal and

28  equitable remedies, including liquidated damages.

150.     Plaintiff Coates and the aggrieved employees are also entitled to civil penalties pursuant to California Labor Code §§ 1197.5 and 2699(f).

151.     Attorneys' fees should be awarded under California Labor Code § 1197.5 and California Code of Civil Procedure § 1021.5.

**FIFTH CLAIM FOR RELIEF**
**VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**Business and Professions Code § 17200, *et seq.***
**(On Behalf of Plaintiff Coates and the California Class)**

152.     Plaintiff hereby incorporates and realleges each and every preceding paragraph of this Complaint as if the same were set forth at length herein.

153.     This cause of action is brought by Plaintiff Coates, individually, and on behalf of the California Class.

154.     Farmers' is a "person" as defined under California Business & Professions Code § 17021.

155.     Farmers' willful failure to pay its female attorney employees equally and otherwise offer female attorney employees equal employment opportunities as alleged herein, constitutes unlawful and/or unfair and/or fraudulent activity prohibited by California Business & Professions Code § 17200.

156.     Accordingly, Plaintiff Coates and the California Class members are entitled to restitution with interest and other equitable relief.

**SIXTH CLAIM FOR RELIEF**
**VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**42 U.S.C. § 2000e(k), *et seq.*, and**
**CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**
**California Government Code § 12940, *et seq.***
**RETALIATION**
**(On Behalf of Plaintiff Coates)**

157.     Plaintiff hereby incorporates and realleges each and every preceding paragraph of this Complaint as if the same were set forth at length herein.

158.     This cause of action is brought by Plaintiff Coates, individually.

159.     Farmers retaliated against Plaintiff Coates for raising concerns about pay inequity illegally based on her gender.  Farmers took adverse employment actions against Plaintiff Coates

for engaging in protected activities.  Such adverse employment actions included demoting her, subjecting her to heightened scrutiny and unfavorable terms and conditions of employment, including, without limitation, demotion and constructive termination.

160.    Farmers' actions were intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of causing harm to Plaintiff Coates.

161.    As a direct and proximate result of Farmers' conduct, Plaintiff Coates has been damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

162.    As a result of Farmers' retaliation, Plaintiff Coates is entitled to all legal and equitable remedies available for violations of Title VII and FEHA, including an award of compensatory and punitive damages.

163.    Attorneys' fees should be awarded pursuant to 42 U.S.C. § 2000e-5(k) and Cal. Gov. Code § 12940 *et seq.*

**SEVENTH CLAIM FOR RELIEF**
**WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY—**
**CONSTRUCTIVE DISCHARGE**
**(On Behalf of Plaintiff Coates)**

164.    Plaintiff hereby incorporates and realleges each and every preceding paragraph of this Complaint as if the same were set forth at length herein.

165.    On or about May 15, 2014 and continuing until August, 2014, Farmers retaliated against Plaintiff Coates for complaining about the inequality of pay among Farmers' attorney employees.  This conduct included, but was not limited to, changing the duties and responsibilities Plaintiff Coates had for the prior three years, taking away court appearances she had been scheduled to handle without consulting her, and, in effect, demoting her.

166.    Farmers intentionally and/or knowingly permitted working conditions that were so intolerable or aggravated that a reasonable person in Plaintiff Coates' position would be compelled to resign.  As a direct consequence of these acts, Plaintiff Coates gave notice that she could no longer remain employed by Farmers.

167.    Farmers' retaliation constitutes an unlawful employment practice in violation of public policy.  Plaintiff Coates was constructively terminated for exercising the rights afforded to

her under Title VII, FEHA, the federal EPA, California's EPA, and California's Business & Professions Code § 17200.  Farmers' retaliation violated those statutes and violated California's prohibition against terminations motivated by purposes that contravene fundamental public policies.

168.      As a proximate result of this conduct, Plaintiff Coates has been injured in her health, strength, and activity, all of which have caused and continue to cause Plaintiff to suffer mentally and emotionally.

169.      As a further proximate result of the conduct alleged herein, Plaintiff Coates has lost earnings, employment opportunities and will lose job benefits in an amount yet to be ascertained.

170.      Defendants, and each of them, did the things alleged with fraud, oppression, and malice.  Plaintiff Coates is therefore entitled to exemplary and punitive damages in an amount according to proof.

**EIGHTH CLAIM FOR RELIEF**
**CIVIL PENALTIES UNDER LABOR CODE PRIVATE ATTORNEY GENERAL ACT**
**California Labor Code § 2698, *et seq.***
**(On Behalf of Plaintiff Coates and the Aggrieved Employees)**

171.      Plaintiff hereby incorporates and realleges each and every preceding paragraph of this Complaint as if the same were set forth at length herein.

172.      Plaintiff Coates, as an aggrieved employee, brings this claim under California Labor Code §§ 2698-2699 in a representative capacity on behalf of current and former female attorney employees of Farmers subjected to the California Labor Code violations alleged herein.

173.      The California Labor Code Private Attorneys General Act of 2004 (PAGA), California Labor Code § 2698 *et seq.*, grants California employees the right to bring a civil action for violation of any provision of the Labor Code on behalf of themselves and other current or former employees in order to recover civil penalties.  In passing PAGA, the California Legislature "declared that adequate financing of labor law enforcement was necessary to achieve maximum compliance with state labor laws, that staffing levels for labor law enforcement agencies had declined and were unlikely to keep pace with the future growth of the labor market, and that it was therefore in the public interest to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations."  *Arias v. Super. Ct.*, 46 Cal. 4th 969, 980 (2009).

1  Because PAGA deputizes employees to act as private attorneys general, class action requirements

2  do not apply to representative actions brought under PAGA.  *Id.*

3      174.     PAGA permits an aggrieved employee to collect the civil penalties authorized by

4  law and normally collectible by the California Labor and Workforce Development Agency.  To

5  address violations for which no penalty had been established, section 2699(f) creates a private right

6  of action for aggrieved employees and a default penalty in the amount of $100 for each aggrieved

7  employee per pay period for the initial violation, and $200 for each aggrieved employee per pay

8  period for each subsequent violation.  *See* Cal. Lab. Code § 2699(f).  Plaintiff Coates hereby seeks

9  to collect civil penalties for the Labor Code violations described herein.

10     175.     California Labor Code § 2699(g) further provides that any employee who prevails in

11  an action for civil penalties is entitled to an award of reasonable attorney's fees and costs.  Plaintiff

12  Coates hereby seeks to recover attorneys' fees and costs under this one-way fee and cost shifting

13  statute.

**PRAYER FOR RELIEF**

15     WHEREFORE, Plaintiff Coates, by and through her counsel, on behalf of herself and the

16  Nationwide EPA Class, the Nationwide Title VII Class, the California Class, and the aggrieved

17  employees, prays that this Court:

18     a.     Designate this action as a collective action on behalf of the proposed Nationwide
19     EPA Class, and (i) promptly issue notice pursuant to 29 U.S.C. § 216(b) to all similarly-
       situated members of the Nationwide EPA Class which (a) apprises them of the pendency of
20     this action and (b) permits them to assert timely EPA claims in this action by filing
       individual Consent to Join forms; and (ii) toll the statute of limitations on the claims of all
21     members of the Nationwide EPA Class from the date the original complaint was filed until
22     the Nationwide EPA Class members are provided with reasonable notice of the pendency of
       this action and a fair opportunity to exercise their right to opt-in as plaintiffs;
23

24     b.     Certify this case as a class action maintainable under Federal Rules of Civil
       Procedure Rule 23(a) and (b)(3) and/or (c)(4) on behalf of the Nationwide Title VII Class,
25     designate Plaintiff Coates as the Class Representative, and her counsel as Class Counsel;

26     c.     Certify this case as a class action maintainable under Federal Rules of Civil
27     Procedure Rule 23(a) and (b)(3) and/or (c)(4) on behalf of the California Class, designate
       Plaintiff Coates as the Class Representative, and her counsel as Class Counsel;

28

d. Award nominal, compensatory, liquidated, and punitive damages to Plaintiff Coates, the Nationwide EPA Class members, the Nationwide Title VII Class members, and the California Class members;

e. Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to Plaintiff Coates, the Nationwide EPA Class members, the Nationwide Title VII Class members, the California Class members, and the aggrieved employees;

f. Award back pay, front pay, lost benefits, preferential rights to jobs, and other damages for lost compensation and job benefits with pre-judgment and post-judgment interest suffered by Plaintiff Coates, the Nationwide EPA Class members, the Nationwide Title VII Class members and the California Class members in amounts to be determined at trial;

g. Order Farmers to make whole Plaintiff Coates, the Nationwide EPA Class members, the Nationwide Title VII Class members and the California Class members by providing them with appropriate lost earnings and benefits, and other affirmative relief;

h. Award damages for emotional distress, humiliation, embarrassment, and anguish, according to proof;

i. Award civil penalties as appropriate;

j. Award any other appropriate equitable relief to Plaintiff Coates, the Nationwide EPA Class members, the Nationwide Title VII Class members and the California Class members;

k. Award any other relief as this Court may deem just and proper.

Dated: April 29, 2015                          ANDRUS ANDERSON LLP

                                               By: _____
                                                   Lori E. Andrus

                                               Lori E. Andrus (Bar No. 205816)
                                               155 Montgomery Street
                                               San Francisco, CA 94104
                                               Tel.: (415) 986-1400
                                               Fax: (415) 986-1474
                                               lori@andrusanderson.com

                                               Lori J. Costanzo (Bar No. 142633)
                                               Gabrielle Korte (Bar No. 209312)
                                               COSTANZO LAW FIRM
                                               111 North Market Street, #910

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

San Jose, CA 95113
Tel.:  (408) 993-8493
Fax:  (408) 993-8496
lori@costanzo-law.com
gabrielle@costanzo-law.com

*Counsel for Plaintiff, the Proposed Classes, and
the Aggrieved Employees*

CLASS AND COLLECTIVE ACTION COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

2   Plaintiff Coates on behalf of herself and all other similarly situated and aggrieved

3 employees, demand a jury trial in this action for all claims so triable.

4

Dated:  April 29, 2015       ANDRUS ANDERSON LLP

5

6            By:   */s/ Lori E. Andrus*
              Lori E. Andrus

7

8            Lori E. Andrus (Bar No. 205816)
            155 Montgomery Street

9            San Francisco, CA 94104
            Tel.: (415) 986-1400

10           Fax: (415) 986-1474
           lori@andrusanderson.com

11

12           Lori J. Costanzo (Bar No. 142633)
           Gabrielle Korte (Bar No. 209312)

13           COSTANZO LAW FIRM
           111 North Market Street, #910

14           San Jose, CA 95113
           Tel.:  (408) 993-8493

15           Fax:  (408) 993-8496

16           lori@costanzo-law.com
           gabrielle@costanzo-law.com

17

18           *Counsel for Plaintiff, the Proposed Classes, and*
           *the Aggrieved Employees*

19

20

21

22

23

24

25

26

27

28

CLASS AND COLLECTIVE ACTION COMPLAINT