LORI J. COSTANZO (SBN 142633)
GABRIELLE KORTE (SBN 209312)
COSTANZO LAW FIRM
111 North Market Street, #910
San Jose, California  95113
Tel:     (408) 993-8493
Fax:     (408) 993-8496
Email:  lori@costanzo-law.com
            gabrielle@costanzo-law.com

ANDRUS ANDERSON LLP
Lori E. Andrus (SBN 205816)
155 Montgomery Street, Suite 900
San Francisco, California  94104
Tel:     (415) 986-1400
Fax:     (415) 986-1474
Email:  lori@andrusanderson.com

*Attorneys for Plaintiff, the Proposed Classes, and the Aggrieved Employees*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| LYNNE COATES, on behalf of herself and all others similarly situated and aggrieved,<br><br>Plaintiff,<br><br>vs.<br><br>FARMERS GROUP, INC., FARMERS INSURANCE EXCHANGE, and FARMERS INSURANCE COMPANY, INC.,<br><br>Defendants. | Case No: 5:15-CV-01913-LHK<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND MOTION FOR EQUAL PAY ACT CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND AUTHORIZATION OF NOTICE**<br><br>Judge:     Hon. Lucy H. Koh<br>Date:      December 10, 2015<br>Time:      1:30 p.m.<br>Courtroom: 8, 4th Floor<br><br>**E-FILED** |

1

## NOTICE AND MOTION

2  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3        PLEASE TAKE NOTICE that on December 10, 2015 at 1:30 p.m., or as soon thereafter as

4  the matter may be heard in Courtroom 8 of the United States District Court for the Northern

5  District of California, located on the 4th floor of the United States Courthouse at 280 South First

6  Street, San Jose, California, Plaintiff Lynne Coates, on behalf of herself and all others similarly

7  situated, hereby moves the Court for an order granting relief under the Equal Pay Act, 29 U.S.C.

8  §§ 206(d) and 216(b), and authorizing the mailing of notice of the existence of this litigation to

9  members of the proposed class.

10        This motion is based on this notice, the following points and authorities, the declaration of

11  Lori E. Andrus and the exhibits thereto, the declaration of Plaintiff Lynne Coates, the declaration

12  of Opt-in Plaintiff Sandra Carter, the declaration of Opt-in Plaintiff Keever Rhodes, the

13  declaration of Opt-in Plaintiff Angela Storey, all pleadings and papers filed in this case, and on

14  such other further written and oral argument and authorities as may be presented at or before the

15  hearing on this matter.

16

17  Dated: October 15, 2015              ANDRUS ANDERSON LLP

18

19                                   By: _____

20                                     Lori E. Andrus

21                                *Attorneys for Plaintiff, the Proposed Classes, and the Aggrieved Employees*

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR EQUAL PAY ACT      Case No. 5:15-CV-01913-LHK
CONDITIONAL COLLECTIVE ACTION CERTIFICATION
AND AUTHORIZATION OF NOTICE                                       1

LORI J. COSTANZO (SBN 142633)
GABRIELLE KORTE (SBN 209312)
COSTANZO LAW FIRM
111 North Market Street, #910
San Jose, California  95113
Tel:     (408) 993-8493
Fax:     (408) 993-8496
Email:  lori@costanzo-law.com
             gabrielle@costanzo-law.com

ANDRUS ANDERSON LLP
Lori E. Andrus (SBN 205816)
155 Montgomery Street, Suite 900
San Francisco, California  94104
Tel:     (415) 986-1400
Fax:     (415) 986-1474
Email:  lori@andrusanderson.com

*Attorneys for Plaintiff, the Proposed Classes, and the Aggrieved Employees*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| LYNNE COATES, on behalf of herself and all others similarly situated and aggrieved,<br><br>Plaintiff,<br><br>vs.<br><br>FARMERS GROUP, INC., FARMERS INSURANCE EXCHANGE, and FARMERS INSURANCE COMPANY, INC.,<br><br>Defendants. | Case No: 5:15-CV-01913-LHK<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR EQUAL PAY ACT CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND AUTHORIZATION OF NOTICE**<br><br>Judge:       Hon. Lucy H. Koh<br>Date:        December 10, 2015<br>Time:        1:30 p.m.<br>Courtroom: 8, 4th Floor<br><br>**E-FILED** |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................................ 4

        A.      Plaintiff Coates' Experience At Farmers ..................................................6

        B.      Plaintiff Coates And The Collective Action Class Members Are Similarly
                Situated. ....................................................................................................8

                1.      The Job Duties For Farmers' Attorneys Are Uniform Nationwide. ...........8

                2.      Farmers' Compensation Policies Are Uniform Nationwide. .......................9

                        a)      Salary Structures ...................................................................9

                        b)      Merit Increase Policy ..........................................................10

                        c)      Short Term Incentive Program Awards ..........................10

                3.      Farmers' Performance Evaluations Are Uniform Nationwide. .................10

                4.      Farmers' Branch Legal Offices Are Managed Uniformly
                        Nationwide. .........................................................................................11

        C.      Farmers' Male-Dominated Corporate Culture Generates Male Favoritism. .........11

        D.      The Experience Of Plaintiff Coates And The Opt-in Plaintiffs Reflects A
                Pattern Of Pay Discrimination. ..................................................................14

III.    LEGAL ANALYSIS ........................................................................................... 15

        A.      The Equal Pay Act Prohibits Pay Discrimination. .................................................15

        B.      Procedurally, Equal Pay Act Cases Are Treated Like Fair Labor Standards
                Act Cases. ..................................................................................................16

        C.      Courts Apply An Extremely Lenient Standard At The Notice Stage. ..................17

        D.      Plaintiffs' Evidence Is More Than Sufficient To Meet The Minimal
                Standard For Conditional Certification And Authorize Notice To The
                Class..........................................................................................................21

        E.      Plaintiffs' Proposed Notice Plan Should Be Approved. .......................................22

                1.      The Proposed Notice Communicates To Farmers' Female Attorneys
                        The Rights At Stake In This Litigation, And Their Options.....................22

                2.      The Notice Plan Ensures That Notice Reaches Class Members.................22

IV.     CONCLUSION.................................................................................................... 24

1

## TABLE OF AUTHORITIES

2

## FEDERAL CASES

3

*Adams v. Inter-Con Sec. Sys., Inc.*
   242 F.R.D. 530 (N.D. Cal. 2007)...............................................................................3, 20

4

5

*Beauperthuy v. 24 Hour Fitness USA, Inc.*
   No. 06-0715SC, 2007 WL 707475 (N.D. Cal. Mar. 6, 2007) ........................................20

6

*Benedict v. Hewlett-Packard Co.*
   No. 13-CV-00119-LHK, 2014 WL 587135 (N.D. Cal. Feb. 13, 2014)........................19, 20, 23

7

8

*Brasfield v. Source Broadband Servs., LLC*
   257 F.R.D. 641 (W.D. Tenn. 2009) ..............................................................................21

9

10

*Brewer v. Gen. Nutrition Corp.*
   No. 11-CV-03587 YGR, 2013 WL 100195 (N.D. Cal. Jan. 7, 2013) .............................17

11

*Carrillo v. Schneider Logistics, Inc.*
   No. CV-11-8557 CAS DTBX, 2012 WL 556309 (C.D. Cal. Jan. 31, 2012) .................3, 19, 23

12

13

*Chapman v. Fred's Stores of Tennessee, Inc.*
   No. 2:08-CV-01247-HGD, 2013 WL 1767791 (N.D. Ala. Mar. 15, 2013) .....................15

14

*Chu v. Wells Fargo Investments, LLC*
   No. C 05-04526 MHP, 2009 WL 3061974 (N.D. Cal. Sept. 24, 2009)..........................21

15

16

*Corning Glass Works v. Brennan*
   417 U.S. 188 (1974)..................................................................................................15, 16

17

18

*Cranney v. Carriage Servs., Inc.*
   No. 2:07CV1587 PLHPAL, 2008 WL 608639 (D. Nev. Feb. 29, 2008) .........................23

19

*Culver v. Bell & Loffland*
   146 F.2d 29 (9th Cir. 1944) ........................................................................................16

20

21

*Escobar v. Whiteside Const. Corp.*
   No. C 08-01120 WHA, 2008 WL 3915715 (N.D. Cal. Aug. 21, 2008) ..........................19

22

23

*Flores v. Velocity Exp., Inc.*
   No. 12-CV-05790-JST, 2013 WL 2468362 (N.D. Cal. June 7, 2013) ...........................18, 23

24

*Gerlach v. Wells Fargo & Co.*
   No. C 05-0585 CW, 2006 WL 824652 (N.D. Cal. Mar. 28, 2006) ................................20

25

26

*Guifu Li v. A Perfect Franchise, Inc.*
   No. 5:10-CV-01189-LHK, 2011 WL 4635198 (N.D. Cal. Oct. 5, 2011)..........................17

27

*Hallissey v. Am. Online, Inc.*
   No. 99-CIV-3785 (KTD), 2008 WL 465112 (S.D.N.Y. Feb. 19, 2008) ..........................19

28

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR EQUAL PAY ACT CONDITIONAL COLLECTIVE ACTION
CERTIFICATION AND AUTHORIZATION OF NOTICE

Case No. 5:15-CV-01913-LHK

ii

*Harris v. Vector Mktg. Corp.*
   716 F. Supp. 2d 835 (N.D. Cal. 2010) ..................................................................18, 20

*Hill v. R+L Carriers, Inc.*
   690 F. Supp. 2d 1001 (N.D. Cal. 2010) .................................................................16, 18

*Hoffmann-La Roche Inc. v. Sperling*
   493 U.S. 165 (1989).........................................................................................3, 16, 18, 22

*Khadera v. ABM Indus. Inc.*
   C08-0417 RSM, 2011 WL 7064235 (W.D. Wash. Dec. 1, 2011) ...........................19

*Ledbetter v. Goodyear Tire & Rubber Co.*
   550 U.S. 618 (2007) (Ginsburg, J., dissenting) ....................................................12, 15, 24

*Lewis v. Wells Fargo & Co.*
   669 F. Supp. 2d 1124 (N.D. Cal. 2009) .................................................................17, 19, 20

*Luque v. AT & T Corp.*
   No. C 09-05885 CRB, 2010 WL 4807088 (N.D. Cal. Nov. 19, 2010) ...................19

*Misra v. Decision One Mortgage Co., LLC*
   673 F. Supp. 2d 987 (C.D. Cal. 2008) ...................................................................19

*Mowdy v. Beneto Bulk Transp.*
   No. C 06-05682 MHP, 2008 WL 901546 (N.D. Cal. Mar. 31, 2008) .....................19

*Noble v. 93 Univ. Place Corp.*
   224 F.R.D. 330 (S.D.N.Y. 2004) ...........................................................................21

*Otey v. CrowdFlower, Inc.*
   No. 12-CV-05524-JST, 2013 WL 1915680 (N.D. Cal. May 8, 2013) ....................17

*Prentice v. Fund for Pub. Interest Research, Inc.*
   No. C-06-7776 SC, 2007 WL 2729187 (N.D. Cal. Sept. 18, 2007) .......................18

*Ramirez v. Ghilotti Bros. Inc.*
   941 F. Supp. 2d 1197 (N.D. Cal. 2013) .................................................................17, 19

*Sanchez v. Sephora USA, Inc.*
   No. 11-03396 SBA, 2012 WL 2945753 (N.D. Cal. July 18, 2012).......................18, 19

*Santiago v. Amdocs, Inc.*
   No. C 10-4317 SI, 2011 WL 6372348 (N.D. Cal. Dec. 19, 2011) .........................20

*Villa v. United Site Servs. of California, Inc.*
   No. 5:12-CV-00318-LHK, 2012 WL 5503550 (N.D. Cal. Nov. 13, 2012)..............2, 17, 18, 20

*Wellens v. Daiichi Sankyo, Inc.*
   No. 13-CV-00581-WHO, 2014 WL 2126877 (N.D. Cal. May 22, 2014) .2, 3, 16, 17, 18, 19, 24

*Wong v. HSBC Mortgage Corp. (USA)*
  No. C-07-2446 MMC, 2008 WL 753889 (N.D. Cal. Mar. 19, 2008)........................................20

*Young v. Cooper Cameron Corp.*
  229 F.R.D. 50 (S.D.N.Y. 2005) ...........................................................................................20

*Zaborowski v. MHN Gov't Servs., Inc.*
  No. C 12-05109 SI, 2013 WL 1787154 (N.D. Cal. Apr. 25, 2013)........................................17

**STATE CASES**

*Delos v. Farmers Grp., Inc.*
  93 Cal. App. 3d 642 (Cal. Ct. App. 1979) ................................................................................1

*Tran v. Farmers Grp., Inc.*
  104 Cal. App. 4th 1202 (2002) .................................................................................................1

**STATUTES AND REGULATIONS**

29 C.F.R. § 1620.13(a)..................................................................................................................16

29 U.S.C. § 206(d) ...................................................................................................................1, 15

29 U.S.C. § 216(b) .............................................................................1, 2, 3, 16, 17, 18, 24

29 U.S.C. § 256..............................................................................................................................17

**OTHER AUTHORITIES**

Marianne DelPo Kulow, *Beyond the Paycheck Fairness Act: Mandatory Wage
  Disclosure Laws-A Necessary Tool for Closing the Residual Gender Wage Gap,*
  50 Harv. J. on Legis. 385, 434 (2013) ..................................................................................24

S. Rep. No. 176, 88th Cong., 1st Sess., 1 (1963) ........................................................................15

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

On average, women are paid 78 cents for every dollar men make performing the same work.  *See* Declaration of Lori E. Andrus in Support of Plaintiff's Motion for Equal Pay Act Conditional Collective Action Certification and Authorization of Notice ("Andrus Declaration" or "Andrus Decl."), Exhs. E at p. 3, and F at p.1, submitted herewith.  Women lawyers fare no better: they are paid, on average, between 79 and 83 percent of what their male counterparts are paid, *see* Andrus Decl., Exhs. E at p. 16, and G at p. 3, despite the fact that women have been graduating from law school in nearly equal numbers to men for almost thirty years.[1]  The National Association of Women Lawyers reports that even those women who reach equity partnership are not fairly compensated, earning 85 to 89 percent of male equity partners' compensation.  *See* Andrus Decl., Exh I at p.5.  Plaintiff Lynne Coates ("Plaintiff Coates" or "Ms. Coates") and the eight Opt-in plaintiffs[2] (collectively "Plaintiffs") hope to change that, at least for the female attorney employees of Farmers Group, Inc., Farmers Insurance Exchange, and Farmers Insurance Company, Inc. (collectively "Farmers").[3]

Plaintiffs allege that Farmers paid them and other female attorneys less than their male peers, even though they had the same or substantially similar job duties, in violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d).

Specifically, Plaintiffs challenge four uniform, mandatory, written corporate policies: (1)  Farmers' compensation policies, which result in discrimination in the setting of salaries;

---

[1] *See* American Bar Association annual statistics, showing that in 1985 women accounted for approximately 40% of first-year law students, reaching 50% by 1992, Andrus Decl., Exh. H.
[2] As of the filing of this motion, eight plaintiffs have opted in to this action: Sandra Carter, Chiquita Hartman, Michele Morgan, Serena Neves, Keever Rhodes, Angela Storey, Stephanie Torigian, and Karen Wasson.  *See* Docket Nos. 15-17 and 40-44.
[3] Farmers Insurance Company, Inc. extended a job offer to Plaintiff Coates in 2010.  *See* Andrus Decl., Exh. J.  Farmers Insurance Exchange is the company identified on Plaintiff Coates' paystubs.  *Id.*; *see also* Exh. K.  Farmers Group, Inc. is the attorney-in-fact (agent) that manages and provides human resources for Farmers Insurance Exchange.  *Delos v. Farmers Grp., Inc.*, 93 Cal. App. 3d 642, 655 (Cal. Ct. App. 1979); *Tran v. Farmers Grp., Inc.*, 104 Cal. App. 4th 1202, 1210-20 (2002).

1  (2)  Farmers' policies relating to the assignment of cases to attorneys, which result in male

2  attorneys getting bigger cases and more trials, while female attorneys get smaller cases and fewer

3  trials; (3) Farmers' performance evaluation policies, including the ranking of attorneys, which

4  results in discrimination in the setting of annual bonuses; and (4) Farmers' promotion policies,

5  including a requirement that attorneys try at least two cases per year in order to be promoted,

6  which compounds the discrimination resulting from Farmers' assignment policy.

7          These policies, created and overseen by an exclusively male group of executives,

8  systematically prevent Farmers' female attorney employees from making as much as their male

9  counterparts, and from moving up in the company.  At the appropriate time, Plaintiffs will

10  demonstrate the disparate impact that these facially-neutral policies have on Farmers' female

11  attorney employees.

12          By this motion, Plaintiffs seek relief that is critically important.  The EPA is part of the

13  federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) and, as such, employees are

14  required to affirmatively "opt-in" to the action in order to stop their statutes of limitations from

15  running.  Plaintiffs ask the Court to authorize the distribution and posting of notice of this lawsuit

16  so that members of the proposed collective action can decide whether to opt in and preserve their

17  EPA claims.

18          Given the limited purposes and effects of such a motion, the standard applied during this

19  stage of conditional certification is lenient, and "the plaintiff bears a 'very light burden.'"  *See*

20  *Wellens v. Daiichi Sankyo, Inc.*, No. 13-CV-00581-WHO, 2014 WL 2126877, at *2 (N.D. Cal.

21  May 22, 2014) (granting conditional certification in an EPA action involving 1,500 women in six

22  job titles) (citation omitted).  When faced with such a motion, courts typically grant conditional

23  certification of the collection action and authorize notice, even on the pleadings or declarations

24  alone.  *See, e.g., Villa v. United Site Servs. of California, Inc.*, No. 5:12-CV-00318-LHK, 2012

25  WL 5503550, at *13 (N.D. Cal. Nov. 13, 2012) (for conditional certification, "courts require little

26  more than substantial allegations, supported by declarations or discovery, that the putative class

27  members were together the victims of a single decision, policy or plan.") (citation omitted)

28

1  (internal quotation marks omitted); *see also Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530,

2  536 (N.D. Cal. 2007) (holding "[t]he usual result is conditional class certification").

3        Here, Plaintiffs easily meet the low burden applied at the conditional certification stage.

4  In addition to the common compensation policies, uniform job descriptions, and other corporate

5  documents submitted herewith, Plaintiffs' motion is supported with deposition testimony and

6  declarations from Plaintiff Coates and three Opt-in plaintiffs.[4]  Even with the limited discovery

7  taken to date, the evidence supporting Plaintiffs' motion shows that the proposed collective action

8  members were all subjected to the same policies and practices that Plaintiff Coates alleges result

9  in widespread gender-based pay disparities.  Plaintiffs have more than demonstrated that "there is

10  a reasonable basis to conclude that there are 'potentially' similarly-situated class members who

11  would 'benefit' from notice," the only question presented at this stage of the case.  *Wellens*, 2014

12  WL 2126877, at *4 (quoting *Carrillo v. Schneider Logistics, Inc.*, No. CV-11-8557 CAS DTBX,

13  2012 WL 556309, at *11 (C.D. Cal. Jan. 31, 2012)).

14        Plaintiffs therefore seek an order conditionally certifying this collective action and

15  directing the dissemination of notice of the pendency of this action pursuant to 29 U.S.C. section

16  216(b) and *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) to the women who fit the

17  following definition (the "Nationwide EPA Class"):

18       Women employed by Farmers Group, Inc., Farmers Insurance Exchange, or Farmers
     Insurance Company, Inc. ("Farmers") in Claims Litigation at any time since June 8, 2012

19       in one or more of the following positions: attorney, workers compensation attorney,
     associate trial attorney, trial attorney, senior trial attorney, senior workers compensation

20       attorney, specialty trial attorney, supervising attorney, supervising workers compensation
     attorney, high exposure attorney, or managing attorney.

21

---

22  [4] *See* Declaration of Lynne Coates In Support of Plaintiff's Motion for Equal Pay Act Conditional

23  Certification And Authorization of Notice ("Coates Decl."), Declaration of Sandra Carter In
Support of Plaintiff's Motion for Equal Pay Act Conditional Certification And Authorization of

24  Notice ("Carter Decl."), Declaration of Keever Rhodes In Support of Plaintiff's Motion for Equal
Pay Act Conditional Certification And Authorization of Notice ("Rhodes Decl."), and Declaration

25  of Angela Storey In Support of Plaintiff's Motion for Equal Pay Act Conditional Certification
And Authorization of Notice ("Storey Decl.") (collectively, "Plaintiffs' Decls."), filed herewith.

26  *See also* Lynne Coates Deposition Transcript Excerpts ("Coates Tr.") (Oct. 1-2, 2015), Sandra
Carter Deposition Transcript Excerpts ("Carter Tr.") (Sep. 17-18, 2015), Keever Rhodes

27  Deposition Transcript Excerpts ("Rhodes Tr.") (Oct. 6, 2015), and Angela Storey Deposition

28  Transcript Excerpts ("Storey Tr.") (Sep. 29, 2015), Andrus Decl., Exhs. A through D.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION      Case No. 5:15-CV-01913-LHK
FOR EQUAL PAY ACT CONDITIONAL COLLECTIVE ACTION
CERTIFICATION AND AUTHORIZATION OF NOTICE                  3

## II.   FACTUAL BACKGROUND

Farmers is the third largest insurance provider in the United States.  It currently employs more than 500 attorneys[5] in its Claims Litigation Department[6] ("Claims Litigation"), whose responsibility it is to defend lawsuits brought against Farmers' insureds.  The Claims Litigation attorneys are presently organized into 49 Branch Legal Offices ("BLOs") around the country.[7] *See* Andrus Decl., Exh. M, pp.5-7.  Although the Claims Litigation attorneys are geographically dispersed, the job descriptions in job postings are frequently identical.  *See* Andrus Decl., Exhs. N through Q.

All Claims Litigation attorneys are governed by uniform, written corporate policies, including the Farmers ██████████████████, the Farmers ████████ the Farmers ██████ and the Farmers ████████████████████.  *See* Andrus Decl., Exh. R, Exh. S at D000002296, Exh. T at D000002309, and Exh. U at D000000003.

Claims Litigation attorneys are categorized into Farmers' salary grades 35-40, with the following titles:

- Salary Grade 35      Attorney
- Salary Grade 35      Workers' Compensation Attorney
- Salary Grade 36      Associate Trial Attorney
- Salary Grade 37      Trial Attorney
- Salary Grade 38      Senior Trial Attorney
- Salary Grade 38      Senior Workers' Compensation Attorney
- Salary Grade 39      Specialty Trial Attorney

---

[5] According to employment data produced by Defendants, Farmers has employed 815 Claims Litigation attorneys during the Class Period, approximately 300 of whom are women.  *See* Andrus Decl., ¶ 2.

[6] The function of Farmers' Claims Litigation Department is described in Exhibit L of the Andrus Declaration.

[7] Although the Claims Litigation attorneys are employed by Farmers, it is important that, when appearing in court, the jury does not know that the defendant has insurance.  For that reason, each BLO uses a "firm name."  *See e.g.*, Coates Tr., 83:17-84:8; Storey Tr., 109:8-13.  For example, the Los Angeles BLO is referred to as Early, Maslach & Sepe and the San Jose BLO is known as Pedersen | Lauderdale.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR EQUAL PAY ACT CONDITIONAL COLLECTIVE ACTION
CERTIFICATION AND AUTHORIZATION OF NOTICE

Case No. 5:15-CV-01913-LHK

4

1       •    Salary Grade 39      Supervising Attorney

2       •    Salary Grade 39      Supervising Workers' Compensation Attorney

3       •    Salary Grade 40      High Exposure Attorney

4       •    Salary Grade 40      Managing Attorney

5  *See* Andrus Decl., ¶ 3, and Exhs. V through CC.

6        Farmers' salary grades are supposed to sort the Claims Litigation attorneys according to

7  their competency level, so that more experienced attorneys handle more complex cases, which

8  often come with greater risk/exposure.  *See* Andrus Dec., Exh. DD.[8]  As Plaintiffs intend to

9  demonstrate during the merits stage of this litigation, female attorneys are disproportionately

10 represented in the lower salary grades, while male attorneys get promoted to higher salary grades

11 in disproportionate numbers.  *See* Andrus Decl., ¶ 4; *see also* Figure 1, below.

12 **Figure 1.**



MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION     Case No. 5:15-CV-01913-LHK
FOR EQUAL PAY ACT CONDITIONAL COLLECTIVE ACTION
CERTIFICATION AND AUTHORIZATION OF NOTICE     5

---

[8] Query whether the salary grades meaningfully sort Claims Litigation attorneys at all.  As an internal job task analysis concluded, ███████████████████████████████████ ██████████████████████.  *See* Andrus Decl., Exh. EE at D000002469.

In keeping with the pattern observed in the lower ranks of Claims Litigation, women are increasingly rare as one climbs Farmers' corporate ladder.  As the above figure shows, Farmers' supervising attorneys and managing attorneys are predominantly male, and its executive team at the Division Attorney level and above is presently exclusively male.

### A.    Plaintiff Coates' Experience At Farmers

Plaintiff Coates was licensed to practice law in California in November 1992.  *See* Coates Decl., ¶ 3.  In 1993, Farmers hired Ms. Coates as an attorney in the Claims Litigation department. *Id.*, ¶ 4.  Her first stint with Farmers lasted until 1998, when she left to seek employment elsewhere.  *Id.*, ¶ 4.

In October 2010, Ms. Coates returned to Farmers' San Jose Branch Legal Office as a contract attorney.  *See* Andrus Decl., Exh. FF.  In April 2011, Ms. Coates became a full-time employee again with a salary of $90,000.  *Id.*, Exh. GG.  She was given the title of "Trial Attorney," with a salary grade of 37.  *Id.*; *see also* Exh. HH.  Shortly after returning, Ms. Coates was assigned to work on the HEAT team ("High Exposure Attorney Team") alongside Mr. Andy Lauderdale, who was licensed in 1993.[9]  *See* Coates Decl., ¶ 13.  Mr. Lauderdale and Ms. Coates worked on HEAT cases together, sharing all responsibilities on their cases.  *Id.*, ¶ 13; *see also* Coates Tr., 161:16-17.  Mr. Lauderdale and Ms. Coates worked well together and he routinely referred to her as his ███████ and remarked that ████████████████████████ ████████  *See* Andrus Decl., Exhs. JJ through MM; *see also* Coates Tr., 310:12-14.

Ms. Coates received incremental annual pay increases and by April 2014 her salary was $99,634.08.  *See* Coates Decl., ¶ 14.

In early May of 2014, Ms. Coates learned that Mr. Lauderdale and two other male attorneys with less experience were earning more than female attorneys in the San Jose BLO with more experience.  *See* Coates Decl., ¶ 15.  Specifically, Ms. Coates learned that Dan Schaar, licensed only three years and lacking any insurance defense experience, was hired in early 2012 at

---

[9] Although Mr. Lauderdale had been practicing law for one year less than Ms. Coates, he was ████████████████████████████████████████.  *See* Andrus Decl., Exh. II.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR EQUAL PAY ACT CONDITIONAL COLLECTIVE ACTION
CERTIFICATION AND AUTHORIZATION OF NOTICE

Case No. 5:15-CV-01913-LHK

6

1   a salary of $85,000, which was only $5,000 less than the salary she had been given when re-hired

2   for a full time position.  *Id.*, ¶ 15.  At that time, Plaintiff Coates had been licensed 18 years, had

3   worked for Farmers for five and a half years, and had experience handling insurance defense

4   matters, including trials.  *Id.*, ¶ 15.  Mr. Schaar's salary quickly increased and eventually

5   exceeded Ms. Coates' salary.  *Id.*, ¶ 15.  When he left Farmers' employment in May 2014,

6   Mr. Schaar was earning $102,000, approximately $3,000 more than her.  *Id.*, ¶ 15.  The work

7   Ms. Coates and Mr. Schaar did as Farmers' Claims Litigation attorneys was equivalent: defending

8   cases brought against insureds.  *Id.*, ¶ 15; *see also* Coates Tr., 167:11-12.

9        Ms. Coates also learned that another male attorney, Jeff Atterbury, licensed nine years and

10  with a history of criminal defense work and no insurance defense experience, had also been hired

11  at $85,000 in June of 2012.  *Id.*, ¶ 16.

12       Third, Ms. Coates learned that a female attorney, Jessica Nudelman, licensed in 2009 and

13  hired in 2010, was earning well below her male counterparts (and well under market), with a

14  salary of $68,000.  *Id.*, ¶ 17.

15       Fourth, Ms. Coates learned that she was making approximately one-half of what her male

16  counterpart, Andy Lauderdale, was making (███████).  *See* Coates Decl., ¶ 18; *see also* Andrus

17  Decl., Exh. NNN.  Mr. Lauderdale and Ms. Coates were doing substantially similar work, but

18  with vastly unequal pay.  *Id.*, ¶ 18.

19       When Ms. Coates raised her concerns with her supervisor, attorney Scott Stratman, she

20  was stripped of many of the duties she had been performing for years.  *See* Coates Decl., ¶ 19; *see*

21  *also* Coates Tr., 193:7-198:7; 330:7-340:3 .  Plaintiff Coates was no longer permitted to make

22  certain appearances (such as mandatory settlement conferences and mediations), and no longer

23  permitted to take critical expert/witness depositions.  *See* Coates Decl., ¶ 19.  She was, in effect,

24  demoted from her attorney position to that of a paralegal in retaliation for complaining about

25  unfair pay.  *Id.*, ¶ 19.  Ms. Coates was told that after an investigation, HR determined that when

26  she was hired, her salary was within Farmers' "parameters."  *Id.*, ¶ 19.  Mr. Stratman stated that

27  HR did not believe there was a "gender issue," and that Farmers was not going to make any

28  adjustment to her salary.  *Id.*, ¶ 19.

On or about August 1, 2014, Plaintiff Coates resigned, having been constructively terminated from her job as an attorney with Farmers. *Id.*, ¶ 20.

**B.     Plaintiff Coates And The Collective Action Class Members Are Similarly Situated.**

**1.     The Job Duties For Farmers' Attorneys Are Uniform Nationwide.**

The duties performed by all Claims Litigation attorneys in a given job title are identical, irrespective of geographic location, and Farmers' job description are ███████████████ ████████     *See* Andrus Decl., Exhs. V through CC, and Exh. NN at D000001553.  There is also substantial overlap in duties between job levels (e.g., between Trial Attorney and Senior Trial Attorney).  *Id.*[10]  Claims Litigation attorneys are expected to take cases brought against Farmers' insureds from beginning to end, including: reviewing and responding to complaints, sending out and responding to discovery, taking depositions, making court appearances, attending mediations, handling arbitrations, meeting with clients and Farmers' claims representatives, participating in roundtables with supervisors and claims representatives, trying cases, and settling cases.  *See* Plaintiffs' Decls., ¶ 6.[11]

To guide their overall objective of representing Farmers' insureds, the Claims Litigation attorneys are provided detailed protocols and case management guidelines.  *See* Andrus Decl., Exh. OO.  For example, Farmers' ███████████████████████ ("Litigation Guidelines") dictate that cases are to be litigated in such a manner as to ████████████ ██████████████████████████████ *Id.* at D000002874.  The Litigation Guidelines specify █████████████████████████████ in great detail.  *Id.* at D000002875.  For example, in each case, Claims Litigation attorneys must prepare an ████████ ████████████████████████████████ *Id.* at D000002876. Claims Litigation attorneys are required to provide detailed reports to Farmers' claims representatives throughout the litigation.  *Id.* at D000002879-80; *see also* Coates Tr., 425:1-5.  All

---

[10] *See also* Carter Tr., 357:18-20.
[11] *See also* Rhodes Tr., 10:14-25; Carter Tr., 55:20-25; 58:23-59:4; 367:1-3, 379:24-380:17; Storey Tr., 15:10-13; Coates Tr., 18:11-16.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR EQUAL PAY ACT CONDITIONAL COLLECTIVE ACTION
CERTIFICATION AND AUTHORIZATION OF NOTICE

Case No. 5:15-CV-01913-LHK

8

aspects of litigation—discovery, depositions, motions, expert witnesses, settlement conferences, mediations, trials and post-trial activity—is intricately managed by Claims supervisors. *Id.* at D000002875-82.  Farmers' emphasis on consistency is also reflected in the forms used by all Claims Litigation attorneys, regardless of location.  *See* Andrus Decl., Exhs. PP through SS (█████

█████████████████████████████████████████████████████████

███████████████████) and Exh. TT (███████████████████).  Farmers sets

forth the ██████████████ for cases involving commercial insurance policies, and also

has detailed guidelines for low exposure claims.  *See* Andrus Decl., Exhs. UU and VV.

The Opt-in Plaintiffs confirm that all Claims Litigation attorneys are expected to handle cases in a substantially similar manner nationwide.  *See* Plaintiffs' Decls., ¶ 7.[12]  Farmers' Claims Litigation is not just practicing law, it is running a business that needs to be predictable and profitable.

### 2.   Farmers' Compensation Policies Are Uniform Nationwide.

One stated purpose of Farmers' compensation policies—which apply in the same manner to all Claims Litigation attorneys, regardless of job title or geographic location—is ████

█████████████████████████████████ *See* Andrus Decl., Exh. NN at

D000001551; *see also* Plaintiffs' Decls., ¶ 8.[13]  Such policies govern all aspects of the class

members' pay, and set forth the approval procedures for all compensation-related actions.

### a)   Salary Structures

Farmers has established uniform salary structures applicable to all Claims Litigation attorneys.  *Id.* at D000001552 (██████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

---

[12] *See also* Rhodes Tr., 155:12-22 ("Farmers has procedures and protocols and manuals that are nationwide…it's a uniform practice."); Carter Tr., 355:11-19 ("[T]here's a standard set of processes that everyone's supposed to follow in the offices."); Coates Tr., 21:18-19 ("Everybody did the same kind of work."); 106:25-107:1 ("[Y]ou were responsible for handling files just like every attorney in the office."); 167:16-18 ("[E]veryone followed the guidelines that were given to us.").
[13] *See also* Storey Tr., 223:25-224:4 (employee policies available on Farmers' intranet).

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR EQUAL PAY ACT CONDITIONAL COLLECTIVE ACTION
CERTIFICATION AND AUTHORIZATION OF NOTICE

Case No. 5:15-CV-01913-LHK

9

1    ████████████████████).  Supervisors and managers must abide by ████████████

2    ████████████████████ which dictate the level of authority required for various salary

3    change requests.  *See* Andrus Decl., Exh. WW.  Each year, Farmers publishes a detailed

4    ████████████████ outlining the company's uniform salary structures.  *Id.*; *see also* Exh. XX at

5    D000001753-57.  An exclusively male circle of upper-level management has final authority over

6    compensation decisions for all members of the proposed class.  *See* Plaintiffs' Decls., ¶ 9.[14]

**b)** **Merit Increase Policy**

8        Like its base pay policies, Farmers' merit increase policy applies to all Claims Litigation

9    attorneys, and sets forth a centralized approval process for pay increases.  *See* Andrus Decl., Exh.

10   NN at D000001553 (█████████████████████████████████████████████

11   ████████████████████████.[15]

**c)** **Short Term Incentive Program Awards**

13       Claims Litigation attorneys are eligible for annual bonuses through Farmers' Short Term

14   Incentive Program ("STIP").  The policy governing STIP awards applies uniformly to all Claims

15   Litigation attorneys, regardless of location.  Whether STIP awards are available each year

16   depends in part on ████████████████████████████████████████████████

17   ██████████████████████████████████████.  *See* Andrus Decl., Exh. YY at

18   D000001839.  In years when STIP awards are available, they are apportioned among Farmers'

19   employees based in part on t██████████████████████████.  *Id.*; *see also* Exh.

20   ZZ at D000001831.

**3.** **Farmers' Performance Evaluations Are Uniform Nationwide.**

22       The performance review process at Farmers is also uniform nationwide.  *See* Plaintiffs'

23   Decls., ¶ 11; *see also* Andrus Decl., Exh. AAA at D000044865.[16]  All Claims Litigation attorneys

24   are required to participate in mid-year and year-end reviews with their supervising attorneys.  *Id*,

---

[14] *See also* Coates Tr., 258:4-7; 258:17-19; Storey Tr. 225:19-226:2; Rhodes Tr., 37:18-21; 38:6-12; 48:13-16.
[15] *See also* Carter Tr., 121:17-122:18.
[16] *See also* Carter Tr., 110:4-13; Rhodes Tr. 180:10-14; Storey Tr., 148:25-149:11.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR EQUAL PAY ACT CONDITIONAL COLLECTIVE ACTION
CERTIFICATION AND AUTHORIZATION OF NOTICE

Case No. 5:15-CV-01913-LHK

10

*see also* Andrus Decl., Exhs. BBB, and CCC.  The reviews are completed online, through

Farmers' GEMS system.  *See* Plaintiffs' Decls., ¶ 11.  The same forms are used nationwide.  *Id.*

Additionally, all Claims Litigation attorneys are placed into a ███████████ of performance ratings

to ensure uniformity.  *See* Andrus Decl., Exh. VV at D000001831.[17]  Farmers explains that the

performance ratings[18] it employs in all Claims Litigation attorneys' performance reviews are █

███████████████████████  *See* Andrus Decl., Exh. FFF at D000002354.

#### 4.     Farmers' Branch Legal Offices Are Managed Uniformly Nationwide.

Farmers' Managing Attorneys and Supervising Attorneys at BLOs around the country are

provided uniform training on Farmers' compensation policies and performance management

policies.  *See* Andrus Decl., Exhs. GGG and HHH.  Throughout, Farmers emphasizes its

███████████████████  *See* Andrus Decl., Exh. HHH at D000002025.

### C.     Farmers' Male-Dominated Corporate Culture Generates Male Favoritism.

The BLOs are each headed by a Managing Attorney, who reports to one of four Division

Attorneys, who reports to one of two Regional Head of Claims Litigation, who reports to the VP

of Claims Litigation.  As of January 2015, Farmers employed 39 Managing Attorneys, only nine

of whom are women.[19]  *See* Andrus Decl., Exh. III.  During the class period, only one woman has

held a position higher than Managing Attorney, contrasted with 12 men.  *See* Andrus Decl., ¶ 6.

This severe gender disparity continues throughout Farmers' upper management (above the

Claims Litigation department).  In a 2014 California Department of Insurance diversity survey,

Farmers Insurance Exchange identified only one woman on its ten member Board of Directors.

*See* Andrus Decl., Exh. JJJ.

---

[17] *See also* Carter Tr., 356:2-11, 358:10-13, 360:9-12.

[18] Farmers' performance ratings, which changed in 2015, remain consistent for all Claims Litigation attorneys.  *See* Andrus Decl., Exhs. DDD and EEE.

[19] In the year following Plaintiff Coates' departure from employment with Farmers—once Farmers was on notice of her complaints regarding pay discrimination—Farmers promoted or hired ██ Supervising Attorneys and Managing Attorneys, ██ of whom are women.  In the preceding year, Farmers promoted or hired ██ Supervising Attorneys and Managing Attorneys, only ██ of whom are women.  *See* Andrus Decl., ¶ 5.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR EQUAL PAY ACT CONDITIONAL COLLECTIVE ACTION
CERTIFICATION AND AUTHORIZATION OF NOTICE

Case No. 5:15-CV-01913-LHK

11

Farmers' male-dominated corporate culture generates and sustains male favoritism.  Male attorneys are sought out for promotion and given better opportunities.[20]  In contrast, female attorneys are generally assigned smaller cases,[21] are frequently denied opportunities for advancement, or have plum assignments taken away arbitrarily.[22]  In one particularly egregious example, a female Supervising Attorney was demoted without explanation, but is still required to do the work she did previously, only now for less pay.[23]  In the worst-case scenarios, female attorneys are treated "more like secretar[ies]" than lawyers and instructed to "fetch coffee" and pick up male attorneys' dry cleaning.[24]

Male attorneys are routinely assigned higher-stakes litigation, while female attorneys struggle to get anything other than low-value cases (like uninsured motorist lawsuits and landlord-tenant cases).[25]  Female attorneys describe being "stifled" in their careers, and feeling that "no matter what I seem to do, it's never enough."[26] Opt-in Plaintiff Keever Rhodes, who has spent her entire legal career at Farmers, put it this way:

> During the time period that I've been there…I always put the onus on me.  I always thought if I just do more, if I just extend myself more, do things out of the box that we don't do that it's eventually going to reward--it's going to show up as a promotion or a pay raise. It wasn't until just this last year that I finally realized that it wasn't me.  It wasn't my performance. It wasn't anything I was doing wrong.  But it took me a long time to get there, to realize it wasn't about what I was doing.

---

[20] *See* Carter Tr., 40:20-24; 352:18-19; Coates Tr., 176:23-177:1.

[21] *See* Storey Tr., 40:14-18.

[22] *See* Carter Tr., 17:16-18:7; 39:4-41:25; Rhodes Tr. 121:16-18; 122:24-123:6; 159:24-160:24.

[23] *See* Carter Tr., 41:8-10.  This example brings to mind Justice Ginsburg's lament that "when a woman is paid less than a similarly situated man, the employer reduces its costs each time the pay differential is implemented." *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 651 (2007) (Ginsburg, J., dissenting), *superseded by statute on other grounds,* Lilly Ledbetter Fair Pay Act Of 2009, PL 111-2, January 29, 2009, 123 Stat 5 (codified at 42 U.S.C. § 2000e-5(e)).

[24] *See* Carter Tr., 278:25-279:9 (Los Angeles BLO female attorney told to "fetch coffee"); Storey Tr., 88:3-4 (female attorneys did the "grunt work"); 88:8-9 (San Jose BLO female attorney instructed to carry briefcase and get coffee); Coates Tr., 138:19-140:15 (San Jose BLO female attorney instructed to pick up dry cleaning and get oil changed in male attorney's car).

[25] *See* Carter Tr., 266:23-267:17; 344:25-345:7; 345:21-25; Storey Tr., 68:17-21.

[26] *See* Rhodes Tr., 59:24-60:9; 187:17-19; 186:1-19.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR EQUAL PAY ACT CONDITIONAL COLLECTIVE ACTION
CERTIFICATION AND AUTHORIZATION OF NOTICE

Case No. 5:15-CV-01913-LHK

12

1   Rhodes Tr., 281:8-21.[27]  It's a familiar refrain.  Opt-In Plaintiff Angela Storey, who worked for

2   Farmers for eight years, was repeatedly told that in order to get the promotion she was originally

3   promised, she just needed "one more trial."[28]

4          The favoritism towards men at Farmers is not limited to trial opportunities.  When

5   attorney Jeff Atterbury was hired into the San Jose BLO, he asked for $80,000 in salary; the

6   hiring attorney called him a few days later and told him, unprompted, "Hey, I got you $85,000."[29]

7   When attorney Dan Schaar announced he was leaving the San Jose BLO, the managing attorney

8   asked if more money would change his mind.[30]

9          Farmers' corporate culture of male favoritism means that male attorneys are not held to

10  the same standards as the female attorneys, and that they don't have to follow the same rules as

11  the women.[31]  With respect to performance evaluations, women describe themselves as being

12  given a "moving target."[32]  At Farmers, women's errors are remembered while men get more

13  glory than they deserve.[33]  This may be due to the fact that women are underrepresented in the

14  management ranks, which fact also contributes to the "old boys' club" nature of the company,

15  where the men have been known to exclude the female attorneys when going out to dinner after a

16  hard day's work.[34]

17         In all, unlawful stereotypes and a general perception that female attorneys should be doing

18  the office "housework" means unequal pay and unequal employment opportunities for female

19  attorneys at Farmers.

20

21

22  [27] After Opt-in Plaintiff Rhodes came to this realization, she decided she needed to "not just be a
    victim."  See Rhodes Tr., 130:4-15.  "When I learned about the class action lawsuit, I felt that this

23  would be the only way of redress, that there wasn't any self-correcting that was going on
    systematically within Farmers no matter how much I brought it to their attention."  Id. at 282:2-6.

24  [28] See Storey Tr., 24:1-5; 52:2-14; 57:17-58:1; 58:16-25; 61:10-17; 66:5-6 ("It was clear I was
    never going to get promoted").

25  [29] See Coates Tr., 147:19-23.
    [30] See Coates Tr., 356:12-23.

26  [31] See Carter Tr., 41:15-22; 65:12-25; 170:3-7; Coates Tr., 307:12-308:3; 311:6-21.
    [32] See Carter Tr., 68:10-70:4.

27  [33] See Carter Tr., 84:4-25; 103:1-4.

28  [34] See Storey Tr., 100:3-8; 101:8-18; 127:13-14; 125:4-24.

D.    **The Experience Of Plaintiff Coates And The Opt-in Plaintiffs Reflects A Pattern Of Pay Discrimination.**

Although Plaintiffs have not yet engaged a testifying expert to analyze the (incomplete) compensation data Farmers has produced to date (nor are they required to at the notice stage), a preliminary, top-level comparison of compensation across all salary grades during the class period indicates that, on average, male attorneys at Farmers are paid between ███████ more than their female counterparts.  *See* Andrus Decl., ¶ 7, Fig. 2.

**Figure 2.**



At the merits stage, Plaintiffs will explore Farmers' compensation data further, employing an expert to isolate gender using a multiple regression analysis.  For the time being, the disparity reflected in the data, along with the anecdotal evidence offered by the Opt-in Plaintiffs,[35] is sufficient to show that Plaintiff Coates is similarly situated to the other Claims Litigation female attorneys.

---

[35] Opt-in Plaintiff Rhodes has been told that her salary, compared to others doing the same work, is "historically low."  *See* Rhodes Tr., 49:14 (Supervising Attorney David Telerant); 55:10-20 (Supervising Attorney Larry Oelze).  When a thirteen-year female employee has been paid less than her male counterparts, "it's hard to ever catch up."  *See* Rhodes Tr., 188:11-12.  Opt-in Plaintiff Carter has also been told that she is making "substantially less" than her male counterparts.  *See* Carter Tr., 35:24-36:9.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR EQUAL PAY ACT CONDITIONAL COLLECTIVE ACTION
CERTIFICATION AND AUTHORIZATION OF NOTICE

Case No. 5:15-CV-01913-LHK

14

1    III.    **LEGAL ANALYSIS**

2          A.    **The Equal Pay Act Prohibits Pay Discrimination.**

3          The Equal Pay Act prohibits discriminating between employees on the basis of gender for

4    work on jobs which require equal skill, effort and responsibility, and which are performed under

5    similar working conditions.  *See* 29 U.S.C. § 206(d)(1).  An EPA plaintiff is not required to prove

6    that the employer acted with discriminatory intent.  *See* 29 U.S.C. § 206(d)(1) (asking only

7    whether the alleged inequality resulted from "any factor other than sex"); *see also Ledbetter*, 550

8    U.S. at 640.

9          The EPA is broadly remedial and courts construe and apply it so as to fulfill the

10   underlying purposes that Congress sought to achieve.  *See Corning Glass Works v. Brennan*, 417

11   U.S. 188, 208 (1974).  Those purposes include "remedy[ing] what was perceived to be a serious

12   and endemic problem of employment discrimination in private industry—the fact that the wage

13   structure of 'many segments of American industry has been based on an ancient but outmoded

14   belief that a man, because of his role in society, should be paid more than a women even though

15   his duties are the same.'"  *Id.* at 195 (citing S. Rep. No. 176, 88th Cong., 1st Sess., 1 (1963)).

16   "Congress enacted the Equal Pay Act '(r)ecognizing the weaker bargaining position of many

17   women and believing that discrimination in wage rates represented unfair employer exploitation

18   of this source of cheap labor.'"  *Id.* at 206 (citation omitted).  Essentially, the EPA embodies the

19   principle that employees doing equal work should be paid equal wages, regardless of sex.  *Id.* at

20   191.[36]

21          In an EPA case, the plaintiff's prima facie case is limited to a comparison of the jobs in

22   question, and does not involve a comparison of the individuals who hold the jobs.  *See, e.g.,*

23   *Chapman v. Fred's Stores of Tennessee, Inc.*, No. 2:08-CV-01247-HGD, 2013 WL 1767791

24   (N.D. Ala. Mar. 15, 2013).  To make out a prima facie case, the plaintiff bears the burden of

25

26   ───────────────
     [36] "The Act also establishes four exceptions—three specific and one a general catchall
27   provision—where different payment to employees of opposite sexes 'is made pursuant to (i) a
     seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality
28   of production; or (iv) a differential based on any other factor other than sex.'"  *Id.* at 196.

1  showing that the jobs being compared are "substantially equal."  *See* 29 C.F.R. § 1620.13(a); *see*

2  *also Corning Glass Works*, 417 U.S. at 203, n. 24 (noting that "it is now well settled that jobs

3  need not be identical in every respect before the Equal Pay Act is applicable").

### B.   Procedurally, Equal Pay Act Cases Are Treated Like Fair Labor Standards Act Cases.

6      The EPA incorporates the FLSA's enforcement mechanisms and collective action

7  provisions.  *See Wellens*, 2014 WL 2126877, at *1.  Hence, a suit brought on behalf of "similarly

8  situated" employees under the EPA is not subject to the class action provisions of Federal Rule of

9  Civil Procedure 23 but, instead, to the collective action provisions of 29 U.S.C. section 216(b).

10 *See Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1009 (N.D. Cal. 2010) (noting that "[t]he

11 requisite showing of similarity of claims under the FLSA is considerably less stringent than the

12 requisite showing under Rule 23").  Section 216(b) provides that:

> [a]n action . . . may be maintained against any employer . . . in any Federal or
> State court . . . by any one or more employees for and in behalf of himself or
> themselves and other employees similarly situated.  No employee shall be a party
> plaintiff to any such action unless he gives his consent in writing to become a
> party and such consent is filed in the court in which such action is brought.

17     In section 216(b), "Congress has stated its policy that . . . plaintiffs should have the

18 opportunity to proceed collectively" because a collective action serves the twin goals of judicial

19 economy and lowering "individual costs to vindicate rights by the pooling of resources."

20 *Hoffmann-La Roche Inc.*, 493 U.S. at 170.  As courts widely acknowledge, collective actions

21 further the broad, remedial purposes of the FLSA and promote efficient adjudication.  *See, e.g.,*

22 *Culver v. Bell & Loffland*, 146 F.2d 29, 31 (9th Cir. 1944) (acknowledging that provisions of

23 section 216(b) are liberally construed to avoid multiplicity of suits on common issues); *Hill*, 690

24 F. Supp. 2d at 1009 (recognizing that section 216 "promotes judicial efficiency and comports with

25 the broad remedial policies underlying the FLSA").  Unlike in Rule 23 class actions, similarly

26 situated employees are not automatically included in EPA collective actions, and, absent court-

27 ordered tolling, the statutes of limitations on their claims continue to run until the employees

28

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR EQUAL PAY ACT CONDITIONAL COLLECTIVE ACTION
CERTIFICATION AND AUTHORIZATION OF NOTICE

Case No. 5:15-CV-01913-LHK

16

1    affirmatively file written consents to join the litigation.[37]  *See*, *e.g.*, 29 U.S.C. §§ 216(b), 256;

2    *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1129 (N.D. Cal. 2009) (citation omitted).

3          **C.      Courts Apply An Extremely Lenient Standard At The Notice Stage.**

4          The courts in this district uniformly follow a two-stage certification procedure in

5    FLSA/EPA actions. *See, e.g., Villa*, 2012 WL 5503550, at *13; *Wellens*, 2014 WL 2126877, at

6    *1.  At the initial "notice" stage—the current stage of this case, before the close of discovery[38]—

7    the court determines whether plaintiffs are similarly situated, justifying certification of a

8    collective action for the purpose of sending notice of the action to potential class members.

9    *Wellens*, 2014 WL 2126877, at *1 (citations omitted).  Once the standard is met, the court

10   conditionally certifies the case as a collective action and orders dissemination of notice to the

11   class members, allowing them an opportunity to affirmatively opt in by filing consent to join

12   forms.  *Brewer v. Gen. Nutrition Corp.*, No. 11-CV-03587 YGR, 2013 WL 100195, at *3-4 (N.D.

13   Cal. Jan. 7, 2013).  Early conditional certification "promote[s] justice and efficiency by notifying

14   potential class members of this action early so that documents and memories can be more

15   carefully preserved, and discovery can proceed forward."  *Zaborowski v. MHN Gov't Servs., Inc.*,

16   No. C 12-05109 SI, 2013 WL 1787154, at *3 (N.D. Cal. Apr. 25, 2013).  The case then proceeds

17   as a representative action through discovery.

18         At the conclusion of discovery, "the court reevaluates the collective action under a stricter

19   standard . . . usually on a motion for decertification by the defendant."  *Otey v. CrowdFlower,*

20   *Inc.*, No. 12-CV-05524-JST, 2013 WL 1915680, at *2 (N.D. Cal. May 8, 2013) (citation omitted);

21

22

23   _____

     [37] Here, the parties stipulated to an abbreviated tolling agreement, which expires either 90 days
24   after entry of the Court's order on Plaintiff's Motion for Conditional Certification or April 15,
     2016, whichever is earlier.  *See* Docket No. 29, ¶ 4.  The effective date of the tolling agreement is
25   June 8, 2015.  *Id.*  As such, the class period should start on June 8, 2012 (three years prior).
     [38] "[C]ourts in this circuit overwhelmingly refuse to depart from the notice stage analysis prior to
26   the close of discovery."  *Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1203 (N.D. Cal.
     2013) (citations and internal quotations omitted); *Guifu Li v. A Perfect Franchise, Inc.*, No. 5:10-
27   CV-01189-LHK, 2011 WL 4635198, at *4 (N.D. Cal. Oct. 5, 2011) (refusing to skip to second
     stage even after significant discovery).
28

1     *Villa*, 2012 WL 5503550, at \*13 ("[T]he Court then determines the propriety and scope of the

2     collective action using a stricter standard.") (citation omitted).

3          Plaintiffs' burden on a motion for conditional certification and authorization of notice is

4     notably low.  The issue is simply whether the proposed class members should receive notice of

5     the opportunity to opt in to the action.  *See e.g. Sanchez v. Sephora USA, Inc.*, No. 11-03396

6     SBA, 2012 WL 2945753, at \*2 (N.D. Cal. July 18, 2012).  As the Supreme Court has explained,

7     effectuation of the opt-in provisions of section 216(b) and the salutary purposes of collective

8     actions "depend on employees receiving accurate and timely notice concerning the pendency of

9     the collective action, so that they can make informed decisions about whether to participate."

10     *Hoffmann-La Roche Inc.*, 493 U.S. at 170.

11          Since the prevailing issue is whether provisional certification should be granted to afford

12     proposed class members an opportunity to preserve their claims, courts follow a "'fairly lenient'

13     standard which typically results in conditional class certification."  *See e.g.*, *Wellens*, 2014 WL

14     2126877, at \*1.  Plaintiffs need only make a "modest factual showing" that they and the class

15     members are "similarly situated"—for example, by setting forth "substantial allegations" that they

16     were "victims of a single decision, policy or plan" or that there is some other "factual or legal

17     nexus" between their claims.  *See, Hill*, 690 F. Supp. 2d at 1009; *see also Prentice v. Fund for*

18     *Pub. Interest Research, Inc.*, No. C-06-7776 SC, 2007 WL 2729187, at \*1 (N.D. Cal. Sept. 18,

19     2007) (holding "[a]t the first stage, the district court approves conditional certification upon a

20     minimal showing that the members of the proposed class are 'similarly situated'").

21          Given the "very low" standard for conditional certification, at this stage, a "fact-intensive"

22     inquiry is improper.  *See Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 841-42 (N.D. Cal.

23     2010).  Courts do not resolve disputed issues of fact when evaluating whether court-authorized

24     notice is appropriate.[39]  Thus, a defendant's assertion that adjudication of the action would require

25

---

26   [39] At the conditional certification stage, the Court need not resolve the merits of plaintiffs' claims.
*See Flores v. Velocity Exp., Inc.*, No. 12-CV-05790-JST, 2013 WL 2468362, at \*7 (N.D. Cal.

27   June 7, 2013) ("[T]he question at this stage is not whose evidence . . . is more believable, but
simply whether plaintiffs have made an adequate threshold showing."); *see also Escobar v.*

28   *Whiteside Const. Corp.*, No. C 08-01120 WHA, 2008 WL 3915715, at \*4 (N.D. Cal. Aug. 21,

---

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION      Case No. 5:15-CV-01913-LHK
FOR EQUAL PAY ACT CONDITIONAL COLLECTIVE ACTION
CERTIFICATION AND AUTHORIZATION OF NOTICE                      18

detailed individualized inquiries is not a basis for denying conditional certification. *See Sanchez*, 2012 WL 2945753, at \*4 (citing cases). In fact, plaintiffs' burden is so low at the notice stage that courts routinely disregard defendant's competing evidence. *See Wellens*, 2014 WL 2126877, at \*2, 3; *see also*, *Ramirez*, 941 F. Supp. 2d at 1203 (holding "courts need not even consider evidence provided by defendants at this stage"); *Sanchez*, 2012 WL 2945753, at \*4 (holding "federal courts are in agreement that evidence from the employer is not germane at the first stage of the certification process, which is focused simply on whether notice should be disseminated to potential claimants").[40]

Plaintiff Coates and the members of the collective action need not be similarly situated in every respect, only "*with respect to their allegations that the law has been violated.*" *Hallissey v. Am. Online, Inc.*, No. 99-CIV-3785 (KTD), 2008 WL 465112, at \*2 (S.D.N.Y. Feb. 19, 2008) (citations omitted) (emphasis in original); *accord Carrillo*, 2012 WL 556309, at \*11 (noting that opt-ins need only be similarly-situated to named plaintiffs "with respect to the disputed claims"). Therefore, the employment situations of the notified class members need not be identical. *See, e.g.*, *Luque*, 2010 WL 4807088, at \*4 (holding "plaintiffs need not show that the class's job duties are identical, just that they are similar"); *see also Misra v. Decision One Mortgage Co., LLC*, 673 F. Supp. 2d 987, 996 (C.D. Cal. 2008); *Khadera v. ABM Indus. Inc.*, C08-0417 RSM, 2011 WL 7064235, at \*3 (W.D. Wash. Dec. 1, 2011) ("If one zooms in close enough on anything,

---

2008) (holding that "[i]t may be true that the evidence will later negate plaintiffs' claims, but this order will not deny conditional certification at this stage in the proceedings"); *Mowdy v. Beneto Bulk Transp.*, No. C 06-05682 MHP, 2008 WL 901546, at \*6 (N.D. Cal. Mar. 31, 2008) ("[I]t is inappropriate for the court to entertain an inquiry on the merits. The fact that such an inquiry will be necessary in the future [after further discovery] does not constitute a sufficient ground to prevent [prospective] class members from receiving notice.").

[40] For this reason, declarations submitted by defendants at the notice stage are not relevant to the inquiry. *See, e.g.*, *Luque v. AT & T Corp.*, No. C 09-05885 CRB, 2010 WL 4807088, at \*5 (N.D. Cal. Nov. 19, 2010) (holding "[t]he Court need not consider Defendants' declarations"); *Lewis*, 669 F. Supp. 2d at 1128 (disregarding 54 declarations submitted by employer); *Escobar*, 2008 WL 3915715, at \*4 (acknowledging the "he-said-she-said" nature of competing declarations, then conditionally certifying the class); *Benedict v. Hewlett-Packard Co.*, No. 13-CV-00119-LHK, 2014 WL 587135, at \*6 (N.D. Cal. Feb. 13, 2014) (holding "[t]he fact that a defendant submits competing declarations will not as a general rule preclude conditional certification.").

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR EQUAL PAY ACT CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND AUTHORIZATION OF NOTICE     Case No. 5:15-CV-01913-LHK

19

1    differences will abound….Plaintiffs' claims need to be considered at a higher level of

2    abstraction.") (citation omitted).

3        "Courts routinely grant conditional certification of multiple-job-title classes." *Lewis*, 669

4    F. Supp. 2d at 1128; *see also*, *Benedict*, 2014 WL 587135, at *9-13 (conditionally certifying class

5    encompassing nine job titles in three job families); *Wong v. HSBC Mortgage Corp.* (*USA*), No. C-

6    07-2446 MMC, 2008 WL 753889, at *2-3 (N.D. Cal. Mar. 19, 2008) (conditionally certifying

7    class encompassing varying job titles); *Gerlach v. Wells Fargo & Co.*, No. C 05-0585 CW, 2006

8    WL 824652, at *3 (N.D. Cal. Mar. 28, 2006) (same); *Beauperthuy v. 24 Hour Fitness USA, Inc.*,

9    No. 06-0715SC, 2007 WL 707475, at *7 (N.D. Cal. Mar. 6, 2007) (certifying class consisting of

10   General Managers, Operations Managers, and Fitness Managers); *Santiago v. Amdocs, Inc.*, No. C

11   10-4317 SI, 2011 WL 6372348, at *7 (N.D. Cal. Dec. 19, 2011) (certifying class of technical

12   support workers with the primary job duties of "providing computer support, trouble shooting,

13   testing related to repairs and problem-solving, and technical services" despite various job titles).

14       Moreover, it is unnecessary to produce evidence related to employees in each location;

15   evidence from a small percentage of the class will suffice.  *See, e.g., Adams*, 242 F.R.D. at 537

16   (holding "[f]or conditional certification, plaintiffs do not need to provide evidence that every

17   facility relevant to the proposed class maintains an illegal policy").  Indeed, courts in this Circuit

18   frequently grant conditional certification and notice based on "a handful of declarations." *Harris*,

19   716 F. Supp. 2d at 838, 845 (plaintiffs submitted four declarations, out of class of thousands); *see,*

20   *also, Benedict*, 2014 WL 587135, at *6 (holding "[a] plaintiff need not submit a large number of

21   declarations or affidavits to make the requisite factual showing that class members exist who are

22   similarly situated to him."); *Villa*, 2012 WL 5503550, at *13 (certifying based on complaint and

23   three declarations, despite more than 200 declarations submitted by employer).

24       Courts have regularly held that there is no prejudice to employers from collective action

25   notice and have broadly authorized notice to all employees who might be affected by a common

26   policy or practice.  As explained in *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 55-56

27   (S.D.N.Y. 2005):

28

> Courts have recognized that it is best to authorize a collective action and then wait to see what the facts bear out . . . the sending of notice does not prejudice the defendant precisely because it is preliminary and may be revisited if it later appears, after appropriate discovery, that the additional plaintiffs who opt to join the lawsuit, if any, are not similarly situated.[41]

**D.**   **Plaintiffs' Evidence Is More Than Sufficient To Meet The Minimal Standard For Conditional Certification And Authorize Notice To The Class.**

Plaintiffs' preliminary evidence far surpasses the showing required to meet their minimal burden at the notice stage.

First, deposition testimony, declarations, job descriptions, and other documents demonstrate that all Claims Litigation attorneys share substantially similar job duties and that, regardless of location, their jobs require equal skill, effort and responsibility and are performed under similar working conditions.[42]

Second, Plaintiffs identify common employment policies that apply to all Claims Litigation attorneys, as well as evidence of centralized decision-making and a male-dominated corporate culture and hierarchy.

Finally, and most importantly, Plaintiffs raise more than substantial allegations that these common policies and practices had a class-wide discriminatory effect.  Deposition testimony and declarations from the Opt-in plaintiffs point to a common discriminatory scheme: like Plaintiff Coates, women in the proposed class attest that they were paid less than their male counterparts for performing the same or substantially similar work.

---

[41] *See also*, *Brasfield v. Source Broadband Servs., LLC*, 257 F.R.D. 641, 644 (W.D. Tenn. 2009) (notice to expanded nationwide class based on evidence of uniform policies "promotes . . . justice" and "judicial efficiency," "avoids duplicative actions," and does not cause substantial prejudice).

[42] To the extent that Defendants argue the workers' compensation attorneys should not be included in the Class definition since Plaintiff Coates did not handle workers' compensation claims, one of the Opt-In Plaintiffs who worked for Farmers as workers' compensation attorney can be added as a Class Representative.  Although there is no requirement that a class representative be a named plaintiff, *see Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 343, n. 97 (S.D.N.Y. 2004), should the court prefer, an additional workers' compensation Class Representatives can be formally added in an amended complaint.  *Chu v. Wells Fargo Investments, LLC*, No. C 05-04526 MHP, 2009 WL 3061974, at *1-2, n. 1 (N.D. Cal. Sept. 24, 2009) ("The Ninth Circuit has construed Rule 15(a) broadly, requiring that leave to amend be granted with 'extraordinary liberality.'") (citations omitted)).

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR EQUAL PAY ACT CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND AUTHORIZATION OF NOTICE

Case No. 5:15-CV-01913-LHK

21

Collectively, the evidence strongly suggests a "factual and legal nexus" between Plaintiff Coates' claims and the claims of the collective action class members, and justifies conditional certification.

### E.     Plaintiffs' Proposed Notice Plan Should Be Approved.

As the Supreme Court has explained: "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same allegedly discriminatory activity."  *See Hoffmann-La Roche Inc.*, 493 U.S. at 170.  "These benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate" and "the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way."  *Id.*

Plaintiffs' proposed Notice and Notice Plan further the "legitimate goal of avoiding a multiplicity of duplicative suits," *id*. at 172, and should be approved.

#### 1.     The Proposed Notice Communicates To Farmers' Female Attorneys The Rights At Stake In This Litigation, And Their Options.

Plaintiffs propose a neutral and straightforward form of Notice, which will inform potential opt-ins of their statutory opt-in rights.  *See* [Proposed] Order Granting Plaintiffs' Motion For Conditional FLSA Collective Action Certification, Ex. A ("Notice"), filed herewith. The Notice explains the nature of the action, Plaintiffs' allegations, and Farmers' denial of liability. *Id.*  It makes clear that the Court has not adjudicated the merits of the dispute.  *Id.*  The Notice provides Plaintiffs' Counsel's contact information, so that class members can speak with the attorneys whom they would be designating to represent them should they choose to opt in.  *Id.* The Notice also warns that Opt-in Plaintiffs will be bound by the resulting judgment, whether favorable or unfavorable.  *Id.*

#### 2.     The Notice Plan Ensures That Notice Reaches Class Members.

First, Plaintiffs propose disseminating notice by mail and e-mail, with a reminder postcard sent towards the end of the opt-in period.  Dissemination of the Notice by mail and e-mail will help ensure that the collective action class members are informed of their rights.  Courts

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR EQUAL PAY ACT CONDITIONAL COLLECTIVE ACTION
CERTIFICATION AND AUTHORIZATION OF NOTICE

Case No. 5:15-CV-01913-LHK

22

frequently approve the inclusion of e-mail addresses with other contact information for notice purposes, in recognition of the growing acceptance of supplemental communication by that method. *See, e.g., Cranney v. Carriage Servs., Inc.*, No. 2:07CV1587 PLHPAL, 2008 WL 608639, at *5 (D. Nev. Feb. 29, 2008) (ordering production of e-mail addresses and telephone numbers with other contact information on certification). Although supplemental e-mail notice is appropriate here, Farmers has refused to provide email addresses to date, requiring Plaintiffs to seek a ruling on this issue. *See* Andrus Decl., Exhs. KKK and LLL.

Plaintiffs also request that the Court order the production of the class members' non-work telephone numbers, to increase Plaintiffs' Counsel's ability to communicate with class members. Courts routinely require production of telephone numbers. *See, e.g.*, *Flores*, 2013 WL 2468362, at *11 (ordering the production of class member phone numbers), *Cranney*, 2008 WL 608639, at *5 (ordering the production of class member e-mail addresses and telephone numbers).

Plaintiffs propose sending reminder Notices to the collective action class members towards the end of the opt-in period. Courts commonly approve such reminders. *See, e.g., Benedict,* 2014 WL 587135, at *14 (approving postcard reminder) (citation omitted).

Plaintiffs also propose posting the Notices in each BLO during the opt-in period as another method for getting the word out about class members' rights. *See, e.g., Carrillo*, 2012 WL 556309, at *12 (ordering the posting of notice in each of defendants' warehouses in places "that are accessible to the workers and including where other notices of workplace rights are posted"); *Cranney*, 2008 WL 608639, at *5 (ordering notices posted "in a conspicuous place, such as break rooms, at Defendant's locations").

Regarding the length of the Notice period, district courts in this Circuit regularly order opt-in periods of 90 days, the length Plaintiffs seek in this case and the "presumptive standard in this District." *Benedict,* 2014 WL 587135, at *13 (citations omitted).

A significant notice period is particularly appropriate in a wage discrimination case as female employees "may not know about their EPA claims (because they may not know about the alleged gender pay disparity, unlike a FLSA misclassification or donning and doffing case where the potential opt-in plaintiffs know about their classification and time requirements to prepare for

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR EQUAL PAY ACT CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND AUTHORIZATION OF NOTICE                Case No. 5:15-CV-01913-LHK

23

1    their work)." *Wellens*, 2014 WL 2126877, at *6; *see also Ledbetter*, 550 U.S. at 649 (noting that

2    "[c]ompensation disparities…are often hidden from sight.") (Ginsburg, J., dissenting).[43]  Thus,

3    the approved Notice period should allow ample time for potential opt-ins to ask questions and

4    make an informed decision and a 90-day opt-in period is justified.

5    **IV.    CONCLUSION**

6         Plaintiff Coates has amply demonstrated that there are similarly-situated employees within

7    the proposed Nationwide EPA Class who were subjected to Farmers' common policies and

8    practices.  Plaintiff has also proffered evidence that such policies and practices resulted in

9    disparate pay.  Under the lenient standard governing section 216(b) collective actions, this is

10   sufficient to warrant conditional certification.  Accordingly, Plaintiff Coates asks that the Court

11   conditionally certify the EPA collective action so that notice can be issued.

                                        Respectfully submitted,

13   Dated: October 15, 2015            ANDRUS ANDERSON LLP

14                                       By: _____
                                              Lori E. Andrus

16                                       *Attorneys for Plaintiff, the Proposed Classes and the*
                                         *Aggrieved Employees*

---

[43] *See also* Marianne DelPo Kulow, *Beyond the Paycheck Fairness Act: Mandatory Wage Disclosure Laws-A Necessary Tool for Closing the Residual Gender Wage Gap*, 50 Harv. J. on Legis. 385, 434 (2013) ("[M]any women remain unaware that they are victims of wage discrimination and/or lack access to salary data of a male comparator in their organization—necessary for an Equal Pay Act claim."), Andrus Decl., Exh. MMM.