LORI J. COSTANZO (SBN 142633)
GABRIELLE KORTE (SBN 209312)
COSTANZO LAW FIRM
111 North Market Street, #910
San Jose, California  95113
Tel:     (408) 993-8493
Fax:     (408) 993-8496
Email:  lori@costanzo-law.com
            gabrielle@costanzo-law.com

LORI E. ANDRUS (SBN 205816)
ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, California  94104
Tel:     (415) 986-1400
Fax:     (415) 986-1474
Email:  lori@andrusanderson.com

*Attorneys for Plaintiff, the Proposed Classes, and the Aggrieved Employees*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| LYNNE COATES, on behalf of herself and all others similarly situated and aggrieved,<br><br>Plaintiff,<br><br>vs.<br><br>FARMERS GROUP, INC., FARMERS INSURANCE EXCHANGE, and FARMERS INSURANCE COMPANY, INC.,<br><br>Defendants. | Case No: 5:15-CV-01913-LHK<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR EQUAL PAY ACT CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND AUTHORIZATION OF NOTICE**<br><br>Judge:        Hon. Lucy H. Koh<br>Date:         December 10, 2015<br>Time:         1:30 p.m.<br>Courtroom: 8, 4th Floor<br><br>**E-FILED** |

1

## TABLE OF CONTENTS

2   I.   INTRODUCTION ................................................................................................. 1

3   A.   As It Was In *Wellens*, EPA Conditional Certification Is Routinely
4        Granted. .............................................................................................................2

5   B.   Plaintiff's And Class Members' Actual Job Content Is
         Substantially Similar. ........................................................................................5

6   C.   The Merits Of Coates' EPA Claim Should Not Be Decided At This
7        Stage. .................................................................................................................9

8   D.   The "Intermediate" Standard Does Not Apply And The Court
         Need Not Consider Manageability. ..................................................................11

9   E.   The Claims Litigation Department Is A Single Establishment. .............................13

10  F.   Many Cases Cited By Farmers Are Inapplicable Or Easily
11       Distinguishable. ...............................................................................................14

12  G.   Farmers Does Not Object To Plaintiff's Notice And Notice Plan. ........................15

    II.  CONCLUSION .................................................................................................. 15

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Adams v. Inter-Con Sec. Sys., Inc.*
  242 F.R.D. 530 (N.D. Cal. 2007)............................................................12

*Alvarez v. Farmers Ins. Exch.*
  No. 14-CV-00574-WHO, 2014 WL 4685031 (N.D. Cal. Sept. 19, 2014) ..............12

*Angelo v. Bacharach Instrument Co.*
  555 F.2d 1164 (1977).......................................................................15

*Benedict v. Hewlett-Packard Co.*
  No. 13–CV–00119–LHK, 2014 WL 587135 (Feb. 13, 2014).............................15

*Chao v. A-One Medical Servs., Inc.*
  346 F.3d 908 (9th Cir. 2003) .............................................................14

*Chapman v. Fred's Stores of Tenn., Inc.*
  No. 2:08–cv–01247–HGD, 2013 WL 1767791 (N.D. Ala. Mar. 15, 2013)................5

*Connor v. Office of the Attorney General of Texas*
  No. A-14-CV-961 LY, 2015 WL 1004304 (W.D. Tex. Mar. 5, 2015) ....................9

*Creely v. HCR ManorCare, Inc.*
  789 F. Supp. 2d 819 (N.D. Ohio 2011).............................................12, 13

*Diaz v. S&H Bondi's Dep't Store*
  No. 10 CIV. 7676 PGG, 2012 WL 137460 (S.D.N.Y. Jan. 18, 2012)....................4

*E.E.O.C. v. Port Authority of New York and New Jersey*
  768 F.3d 247 (2d. Cir. 2014) ..............................................................9

*Ebbert v. Nassau Cnty.*
  No. 05CV5445(FB)(AKT), 2007 WL 2295581 (E.D.N.Y. Aug. 9, 2007)..................5

*EEOC v. Madison Comm. Unit Sch. Dist. No. 12*
  818 F.2d 577 (1987)........................................................................15

*Falcon v. Starbucks Corp.*
  580 F. Supp. 2d 528 (S.D. Tex. 2008) ...................................................12

*Forsberg v. Pac. Nw. Bell Tel. Co.*
  840 F.2d 1409 (9th Cir. 1988) ...........................................................14

*Foschi v. Pennella*
  No. CV-14-01253-PHX-NVW, 2014 WL 6908862 (D. Ariz. Dec. 9, 2014)...........15

*Garner v. G.D. Searle Pharm. & Co.*
  802 F. Supp. 418 (M.D. Ala. 1991) ...................................................5, 14

*Grumbine v United States*
   586 F. Supp. 1144 (D.D.C. 1984).................................................................14

*Gunther v. Washington Cnty.*
   623 F.2d 1303 (9th Cir. 1979) .................................................................15

*In re Wells Fargo Home Mortgage Overtime Pay Litig.*
   268 F.R.D. 604 (N.D. Cal. 2010).................................................................14

*Jarvaise v. Rand Corp.*
   212 F.R.D. 1 (D.D.C. 2002).................................................................5, 14

*Kassman v. KPMG LLP*
   No. 11 CIV. 03743 LGS, 2014 WL 3298884 (S.D.N.Y. July 8, 2014)........................... passim

*Kress v. PricewaterhouseCoopers, LLP*
   263 F.R.D. 623 (E.D. Cal. 2009) .................................................................12

*Lang v. Kohl's Food Stores, Inc.*
   217 F.3d 919 (7th Cir. 2000) .................................................................14

*Litty v. Merrill Lynch & Co.*
   No. CV 14-0425 PA PJWx, 2014 WL 5904907 (C.D. Cal. Aug. 4, 2014) ..............................15

*McClean v. Health Sys., Inc.*
   No. 11-03037-CV-S-DGK, 2011 WL 6153091 (W.D. Mo. Dec. 12, 2011) ............................12

*Moore v. Publicis Groupe SA*
   No. 11 CIV. 1279 ALC AJP, 2012 WL 2574742 (S.D.N.Y. June 29, 2012)........................4, 14

*Morisky v. Pub. Serv. Elec. & Gas Co.*
   111 F. Supp. 2d 493 (D.N.J. 2000) .................................................................12

*Mulhall v. Advance Sec., Inc.*
   19 F.3d 586 (11th Cir. 1994) .................................................................13

*Myers v. Hertz Corp.*
   624 F.3d 537 (2nd Cir. 2010) .................................................................14

*Ray v. Motel 6 Operating, Ltd. P'Ship*
   No. 3-95-828, 1996 WL 938231 (D. Minn. Mar. 18, 1996).................................................12

*Rehwaldt v. Elec. Data Sys. Corp.*
   No. 95-876, 1996 WL 947568 (W.D.N.Y. 1996) .................................................................14

*Rochlin v. Cincinnati Ins. Co.*
   No. IP00-1898CHK, 2003 WL 21852341 (S.D. Ind. July 8, 2003) ........................................4, 5

*Ruffin v. Los Angeles Cnty.*
   607 F.2d 1276 (9th Cir. 1979) .................................................................14

PLTF'S REPLY ISO MOTION FOR EQUAL PAY ACT       Case No. 5:15-CV-01913-LHK
CONDITIONAL COLLECTIVE ACTION CERTIFICATION
AND AUTHORIZATION OF NOTICE                                     iii

*Spaulding v. Univ. of Washington*
    740 F.2d 686 (9th Cir. 1984) ........................................................................................15

*Till v. Saks, Inc.*
    No. C 11-00504 SBA, 2013 WL 5755671 (N.D. Cal. Sept. 30, 2013) ....................................15

*Velasquez v. HSBC Finance Corp.*
    266 F.R.D. 424 (N.D. Cal. 2010)...................................................................................15

*Villa v. United Site Services of California, Inc.*
    No. 5:12-CV-00318-LHK, 2012 WL 5503550 (N.D. Cal. Nov. 13, 2012)................................4

*Vinole v. Countrywide Home Loans, Inc.*
    571 F.3d 935 (9th Cir. 2009) ........................................................................................14

*Waters v. Turner, Wood & Smith Ins. Agency, Inc.*
    874 F.2d 797 (11th Cir. 1989) ......................................................................................14

*Wellens v. Daiichi Sankyo, Inc.*
    No. 13-CV-00581-WHO, 2014 WL 2126877 (N.D. Cal. May 22, 2014).........................2, 3, 11

## STATUTES

29 U.S.C. § 206(d)(1) ..................................................................................................13

## OTHER AUTHORITIES

Susan Sturm, *Second Generation Employment Discrimination: A Structural
    Approach*, 101 Colum. Law Rev. 458, 460 (Apr. 2001) ..........................................................1

## I.   **INTRODUCTION**

Ongoing discovery, undertaken after the filing of Plaintiff's Motion for Equal Pay Act Conditional Collective Action Certification and Authorization of Notice ("Motion"), Docket No. 56, confirms that: 1) Plaintiff is similarly situated to other Farmers' female employees working in the Claims Litigation Branch Legal Offices ("BLOs") across the country; and 2) Farmers' male-dominated corporate culture fosters rampant "second generation" gender discrimination.[1]

For example, John Buratti, currently a Division Attorney and a member of the six-member, all-male top management team for Farmers' Claims Litigation Department, was unable to explain why he paid attorney █████████████ less than her male counterpart, █████████.[2]  *See* Deposition of John Buratti ("Buratti Tr."), pp. 148:23-149:4, Reply Decl., Exh. A. When asked "███████████████████████████████" Mr. Buratti responded: "██████████████████████████████████████████████████████████████████████████████████████████████████" *Id.*, pp. 151:21-152:3.  Asked why █████████, after being promoted to Salary Grade ██ was only earning $██ more than the minimum salary for that Salary Grade, Mr. Buratti testified that █████████ was "██████████████████████████." *Id.* at pp. 154:18-155:9. Mr. Buratti's attitude is endemic to Farmers: the women attorneys employed there, even high performers like █████████, should be "████████████████████," despite the fact that they are earning thousands less than men performing the same work.

In another striking example, █████████████ a trial attorney with ██ years of experience, and who has tried at least ██ cases to juries while working for Farmers, is earning $█████ per

---

[1] "Second generation" discrimination is described as "[u]nequal treatment [] result[ing] from cognitive or unconscious bias, rather than deliberate, intentional exclusion."  Susan Sturm, *Second Generation Employment Discrimination: A Structural Approach*, 101 Colum. Law Rev. 458, 460 (Apr. 2001) (citations omited), attached as Exhibit I to the Andrus Reply Declaration in Support of Plaintiffs' Motion for Equal Pay Act Collective Action Certification and Authorization of Notice ("Reply Declaration" or "Reply Decl."), filed herewith.  It involves "social practices and patterns of interaction among groups within the workplace that, over time, exclude nondominant groups." *Id.*

[2] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

1    year less than her male counterpart.[3]  *See* Reply Decl., ¶ 4; Declaration of J. Dean Rice in

2    Opposition to Motion for Equal Pay Act Conditional Collective Action Certification and

3    Authorization of Notice ("Rice Declaration" or "Rice Decl."), Dkt. No. 60-42, ¶ 3.  Another top

4    performer in Farmers' Claims Litigation, ▆▆▆▆▆,[4] is earning *$*▆▆▆▆ and *$*▆▆▆▆ **less than**

5    **her two male counterparts** in the ▆▆▆▆ BLO.  *See* Reply Decl., ¶ 5.

6         This pattern of undervaluing female employees was not the only revealing information to

7    come out of recent discovery activities.  As explained herein, the depositions of several of

8    Farmers' declarants (and frequently the declarations themselves) provide further evidence that

9    Farmers' Claims Litigation attorneys are similarly situated, regardless of which Salary Grade or

10    BLO they occupy.  Plaintiff's Motion should be granted.

11       **A.**     **As It Was In *Wellens*, EPA Conditional Certification Is Routinely Granted.**

12         Plaintiff's evidence is of the same type and quantity found to justify conditional

13    certification in other Equal Pay Act ("EPA") cases.  *See, e.g.*, *Wellens v. Daiichi Sankyo, Inc.*, No.

14    13-CV-00581-WHO, 2014 WL 2126877 (N.D. Cal. May 22, 2014).  *Wellens*, a recent EPA case

15    brought in this district, dealt with many of the same issues arising in this case.  For example,

16    defendant Daiichi Sankyo, Inc. ("DSI") argued that it was improper to include six different job

17    titles in the class definition and that the job duties for the various positions differed greatly.  *Id.* at

18    *5. The district court disagreed, stating "Defendant…misperceives the question relevant to this

19    conditional certification stage: are plaintiffs similarly situated with respect to their EPA

20    allegations?  Here, they are."  *Id.*  (citation omitted).

> That DSI may pay different wages for different positions (within set ranges), that job duties vary between divisions and job titles, and that different positions are compensated differently based on location, are not factors that defeat conditional certification.  Instead, whether the disparate factual and employment settings of the individual plaintiffs means that this case cannot proceed collectively, or would need to be prosecuted with subclasses for each of the job titles or geographic locations, is a matter to be determined at the *second* stage of the certification process.

---

[3] ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

Though ▆▆▆▆▆▆ is known for "bring[ing] her best to bear on every case she handles," she is
also commended for her "▆▆▆▆▆▆▆▆▆▆▆▆," in a classic illustration of second-generation
sexism.  *See* Reply Decl., Exh. J at D000049918-19 (emphasis supplied).

PLTF'S REPLY ISO PLAINTIFF'S MOTION FOR            Case No. 5:15-CV-01913-LHK
EQUAL PAY ACT CONDITIONAL COLLECTIVE ACTION
CERTIFICATION AND AUTHORIZATION OF NOTICE            2

1    *Id.* (emphasis in original) (internal quotation marks and citation omitted).

2        The defendant in *Wellens* also argued—as Farmers does here—that compensation

3    decisions were made on an individualized basis, but, again, the district court held that such

4    arguments are more appropriately addressed at the second stage of conditional certification. *Id.* at

5    *3 ("DSI has not shown that individualized decisions or situations would negate plaintiffs'

6    allegations of widespread compensation disparity based on gender in light of the pay scales and

7    ranges uniformly used by DSI for all positions.").  *Wellens* is directly on point, yet Farmers does

8    not attempt to distinguish it, or address the guidance *Wellens* offers in any manner. *See generally*

9    Defendants' Opposition to Plaintiff's Motion for Equal Pay Act Conditional Collective Action

10   Certification and Authorization of Notice ("Opposition" or "Opp."), Dkt. No. 60-3.

11       *Kassman v. KPMG LLP*, No. 11 CIV. 03743 LGS, 2014 WL 3298884 (S.D.N.Y. July 8,

12   2014) provides another instance of EPA conditional certification in factual circumstances similar

13   to those presented here.  In *Kassman*, female client service professionals employed in KPMG's

14   tax and advisory job functions in the positions of Associate, Senior Associate, Manager, Senior

15   Manager/Director and Managing Director were determined to have substantially similar

16   responsibilities and qualifications.[5]  *Id.* at *2.  Like KPMG, Farmers' "compensation policies are

17   set at high levels and applied across job titles, function groups and geographic locations." *Id.*; *see*

18   Reply Decl., Exh. K; Buratti Tr., p. 238:11-23, Reply Decl., Exh. A.  Also like KPMG, Farmers

19   has "firm-wide salary bands, which establish uniform compensation ranges" and "has a firm-wide

20   policy for awarding merit-based increases in compensation." *Id.*; *see also* Declaration of Lori E.

21   Andrus In Support Of Plaintiff's Motion for Equal Pay Act Collective Action Certification And

22   Authorization of Notice ("Andrus Declaration" or "Andrus Decl."), Dkt. 53-3, Exh. ZZ.  Like

23   KPMG, Farmers' Managing Attorneys have **limited** discretion in the specific dollar amounts of

24   salaries, annual bonuses and raises.[6]  *See* footnote 14, *infra*.

25

26   [5] The named plaintiff, Donna Kassman, a Senior Tax Manager employed by KPMG for over
     seventeen years, who received positive performance reviews, made $50,000 less than her male
27   comparator, even though she held a law degree and he did not. *Id.* at *2.
     [6] *Id.* ("Specific pay amounts are not dictated by these policies, but are determined by the partners
28   in each of KPMG's offices based on factors specific to location and employee.").

1    Quickly dispatching with several of the same arguments raised by Farmers, the district

2  court in *Kassman* held that "it is not necessary for the purposes of conditional certification that

3  the prospective class members all performed the same duties as the named plaintiffs." *Id*. at *7,

4  (quoting *Diaz v. S&H Bondi's Dep't Store*, No. 10 CIV. 7676 PGG, 2012 WL 137460, at *5, n.6

5  (S.D.N.Y. Jan. 18, 2012) (internal quotation marks omitted)).

6         Ultimately, the proper inquiry during conditional certification is whether the named
          plaintiffs and the other potential members of the proposed collective are similarly
7         situated *with respect to their allegations that the law has been violated*.  Other factual
          variances that may exist between the plaintiff and the putative class do not defeat
8         conditional class certification.  Such variances are more appropriately analyzed during
          the second–decertification–stage.

9  *Id.* (emphasis in original) (internal quotation marks and citations omitted).[7]

10        In another illustrative EPA case, *Moore v. Publicis Groupe SA*, No. 11 CIV. 1279 ALC

11 AJP, 2012 WL 2574742 (S.D.N.Y. Jun. 29, 2012), the district court rejected the defendant's

12 claims that certification was improper because "the proposed class held four different job titles

13 [including Vice President and Senior Vice President] . . . worked in diverse practice and industry

14 segments, and had varying levels of responsibilities, numbers of employees reporting directly to

15 them, and years of experience."  *Id*. at *10.  The court explained: "Defendants' arguments are

16 more appropriate after discovery is finished.  Then, Defendants can attack the validity of

17 Plaintiffs' assertions and the Court will be in a better position to determine whether all class

18 members are indeed similarly situated."  *Id*. at *11.  The same is true here.

19        In another case remarkably similar to this one, *Rochlin v. Cincinnati Ins. Co.*, No. IP00-

20 1898CHK, 2003 WL 21852341 (S.D. Ind. Jul. 8, 2003), the district court granted conditional

21 certification on behalf of a class of ***insurance defense attorneys*** who claimed that their employer

22 treated males preferentially in promotions and pay.  *Id*. at *1.  The female attorneys were

23

24 [7] Facing similar arguments regarding the individualized nature of employment settings and factual
   background of each plaintiff in *Villa v. United Site Services of California, Inc.*, No. 5:12-CV-
25 00318-LHK, 2012 WL 5503550 (N.D. Cal. Nov. 13, 2012), this Court granted conditional
   certification, explaining: "Plaintiff has alleged that he and the other class members are 'similarly
26 situated' because they were subject to Defendant's alleged common policy of deducting time
   from employees' pay without confirming whether they had indeed taken their off-duty breaks.
27 This suffices for conditional certification of a FLSA collective action."  *Id*. at *14.  Likewise,
   Plaintiffs here allege that they are subject to a "single decision, policy or plan" of unequal pay.
28 *Id*. at *13.  Farmers ignores *Villa* entirely.

1    employed in ten locations across three departments: the Headquarters Claims Department, the

2    Legal Department (in-house counsel), and the Field Claims Department.  *Id*. at *2.  The job duties

3    of the named plaintiffs varied: some had executive or managerial responsibilities,[8] while others

4    handled workers' compensation litigation.  *Id*. at **2-5.  One of the named plaintiffs provided

5    Claims Department oversight for the Trial Division, while the plaintiff assigned to the Trial

6    Division was responsible for defending lawsuits brought against the insureds.  *Id*.  Despite these

7    non-identical job duties, and despite the fact that there were no "written materials that would

8    describe the various positions, salary ranges of those positions and possibilities for advancement,"

9    and no company handbook, the district court held that "plaintiffs have alleged a company-wide

10   policy of discrimination against women" and was satisfied that "plaintiffs have introduced

11   evidence that all departments share similar job functions."  *Id.* at **5, 14.[9]

12        **B.**     **Plaintiff's And Class Members' Actual Job Content Is Substantially Similar.**

13         For all Farmers' bluster that Plaintiff has failed to show that class members are similarly

14   situated with respect to the "actual job content and performance," Opp., at pp. 1-3, 10, Farmers

15   completely disregards the ***evidence Plaintiff submitted*** regarding Farmers' ████████████

16   ██████████ project.  *See* Andrus Decl., Exhs. DD (Dkt. No. 49-7) and EE (Dkt. No. 49-9 & 10).

17         The purpose of the ██████████████████ project was described as: "█████

18   ████████████████████████████████████████████████████████

19

20   ──────────────────────
[8] *Rochlin* thus defeats Farmers' argument that attorneys with supervisory duties cannot be
21   included in Plaintiffs' class.  Opp. at p. 2, 9.
     [9] Still more district court opinions support conditional certification of this EPA case.  *See, e.g.*,
22   *Ebbert v. Nassau Cnty.*, No. 05CV5445(FB)(AKT), 2007 WL 2295581, at *1 (E.D.N.Y. Aug. 9,
2007) (conditionally certifying EPA claims for a class of dispatchers [Police Communication
23   Officers and Police Communication Office Supervisors] on minimal evidence); *Jarvaise v. Rand
Corp.*, 212 F.R.D. 1, 4 (D.D.C. 2002) (granting EPA conditional certification covering female
24   employees in two offices); *Garner v. G.D. Searle Pharm. & Co.*, 802 F. Supp. 418, 422-23 (M.D.
Ala. 1991) (conditionally certifying EPA claims brought by female medical sales representatives
25   based on declarations identifying male comparators earning more, and holding "[t]o impose a
strict standard of proof on the plaintiffs at this stage would unnecessarily hinder the development
26   of collective actions and would undermine the 'broad remedial goals' of the anti-discrimination
provisions of the FLSA.") (citation omitted); *Chapman v. Fred's Stores of Tenn., Inc.*, No. 2:08–
27   cv–01247–HGD, 2013 WL 1767791 (N.D. Ala. Mar. 15, 2013) (granting conditional certification
and noting that "[w]hile [district managers] make the initial salary decisions, their decisions are
28   subject to review at a higher level in many cases and are limited by corporate policy and pay
scales.").

PLTF'S REPLY ISO PLAINTIFF'S MOTION FOR           Case No. 5:15-CV-01913-LHK
EQUAL PAY ACT CONDITIONAL COLLECTIVE ACTION
CERTIFICATION AND AUTHORIZATION OF NOTICE                  5

1  ███████████████████████████████" *Id.*, Exh. EE at

2  D000002444, Reply Decl., Exh. L.  This "████████████████████████

3  ██████████████" *Id.*, Exh. EE at D000002450 (emphasis supplied).[10]

4  ████████████████████████████████████████████████

5  ███████████████████████████████████████████

6  ██████████████.  *See* Deposition of Craig Hartsuyker ("Hartsuyker Tr."), Reply Decl., Exh. B,

7  pp. 146:25-147:14; Andrus Decl., Exh. EE at D000002450. ████████████████

8  ███████████████████████████████████, *see* Reply Decl., ¶ 21, Exhs. M and

9  N, ████████████████████████████████████████████

10 █████████████████ *see* Hartsuyker Tr., p. 167:7-10, Reply Decl., Exh. B; Deposition of

11 Christina Sanabria ("Sanabria Tr."), pp. 40:24-42:7, Reply Decl., Exh. C.[11]

12 █████████████████████████████████████████████

13 ███████████████████████████████████████████████

14 ████████████████████████████████████████████

15 Andrus Decl., Ex. DD at D000002671-72.[12]  Farmers' claims otherwise are specious.

16      Ironically, the uniform nature of the management of BLOs is even supported by the

17 declarations submitted by Farmers in conjunction with the Opposition.[13]  For example, the

18 ───────────────────────

19 [10] The explanation continues: "████████████████████████████████

20 ████████████████████████████████████████████████

21 ██████████████████████████████████████████████

22 ████████████████████████████████████" Andrus Decl., Exh. EE at D000002450.
   Though complexity increases with experience, all Claims Litigation attorneys are subject to

23 "the expectation [] that you are handling your files from inception to verdict." *See* Sanabria Tr.,
   p. 42:6-7, Reply Decl., Exh. C.

24 [12] Farmers' claims that PIP attorneys and BI attorneys do completely different work is
   contradicted by their own internal documents, which show "██████████████████████████

25 ██████.  *See* Reply Decl., Exh. O.  Additionally, testimony of Farmers' declarants and internal
   documents show that PIP attorneys go to trial, make court appearances, take depositions and do

26 motion work.  *See* Sanabria Tr., pp. 81:21-82:9, Reply Decl., Exh. C; Buratti Tr., p. 202:12-20,
   Reply Decl., Exh. A; Reply Decl., Exh. P at D000046403-05.

27 [13] Declaration of Craig Hartsuyker In Opp. To Mot. For Equal Pay Act Cond. Collective Action
   Cert. And Auth. Of Notice ("Hartsuyker Decl."), Dkt. No. 60-38; Declaration of Edward

28 Hoagland In Opp. To Mot. For Equal Pay Act Cond. Collective Action Cert. And Auth. Of Notice

1    Managing Attorneys each admit that they assign salaries and raises according to the "guidelines"

2    and within the "budgets" they are provided by superiors within Farmers' organization.[14]

3           In reality, the BLOs are all governed by the same corporate policies Plaintiff proffered in

4    support of the Motion.  Claims Litigation attorneys in all BLOs are expected to use the same

5    Litigated Case Management Guidelines.  *See* Andrus Decl., Exhs. OO through SS (Dkt. Nos. 51-

6    1, 2, 4, 6, 8, & 10); Buratti Tr., p. 233:4-16 (Litigated Case Management Guidelines still in

7    effect), Reply Decl., Exh. A; Hartsuyker Tr., pp. 92:9-93:18, Reply Decl., Exh. B; Sanabria Tr.,

8    pp. 78:13-79:2 (Litigated Case Management Guidelines "provide[] the framework for case

9    handling and case management."), Reply Decl., Exh. C.  The annual compensation memos

10   (defining salary ranges within salary grades nationwide) apply to all BLOs.  *See* Reply Decl.,

11   Exh. K; Buratti Tr., p. 238:11-23, Reply Decl., Exh. A.  The same Short Term Incentive Program

12   ("STIP") Plan (for setting annual bonuses) applies to all BLOs.  *See* Andrus Decl., Exh. ZZ;

13   Buratti Tr., pp. 159:23-161:10, Reply Decl., Exh. A; Deposition of Lucy Williams-Abrego

14   ("Williams-Abrego Tr."), p. 156:17-20, Reply Decl., Exh. D.  All Managing Attorneys follow the

15   same performance review procedure, and use the same rating categories.[15]  *See* Andrus Decl.,

16

---

17   ("Hoagland Decl."), Dkt. No. 60-39; Declaration of Rick Pedersen In Opp. To Mot. For Equal
     Pay Act Cond. Collective Action Cert. And Auth. Of Notice ("Pedersen Decl."), Dkt. No. 60-41;

18   Rice Declaration; Declaration of Mark Miller In Opp. To Mot. For Equal Pay Act Cond.
     Collective Action Cert. And Auth. Of Notice ("Miller Decl."), Dkt. No. 60-40; Declaration of

19   Christina M. Sanabria In Opp. To Mot. For Equal Pay Act Cond. Collective Action Cert. And
     Auth. Of Notice ("Sanabria Decl."), Dkt. No. 60-43; Declaration of Anne Shaw in Opp. to Mot.

20   For Equal Pay Act Cond. Collective Action Cert. and Auth Of Notice ("Shaw Decl.");
     Declaration of Stacey Upson In Opp. To Mot. For Equal Pay Act Cond. Collective Action Cert.

21   And Auth. Of Notice ("Upson Decl."), Dkt. No. 60-45; Declaration of Lucy Williams-Abrego In
     Opp. To Mot. For Equal Pay Act Cond. Collective Action Cert. And Auth. Of Notice ("Williams-

22   Abrego Decl."), Dkt. No. 60-46; Declaration of John Buratti In Opp. To Mot. For Equal Pay Act
     Cond. Collective Action Cert. And Auth. Of Notice ("Buratti Decl."), Dkt. No. 60-47.

23   [14] *See* Hartsuyker Decl., ¶ 25, 27; Sanabria Decl., ¶¶ 5, 7; Hoagland Decl., ¶ 9, 10, 12; Williams-
     Abrego Decl., ¶¶ 9-10; Upson Decl., ¶¶ 9, 12; Pedersen Decl., ¶¶ 15, 16, 18.  Supervising

24   Attorney Mark Miller's admission in this regard is particularly blunt: "[Managing Attorney]
     Hollenbeck and I have discretion to assign percentage increases to attorneys based on their

25   performance each year, ***so long as we remain within our assigned budget*** for the BLO as a whole
     and we stay within the constraints of the salary grade system."  Miller Decl., ¶ 16 (emphasis

26   supplied); Hoagland Decl., ¶ 10 ("I am careful about staying within the allotted range.").
     Mr. Miller also explains that he must seek approval to fill vacancies.  *See* Miller Decl., ¶ 15;

27   Upson Decl., ¶ 8.  Division Attorneys approve all new hires, salaries and raises.  *See* Buratti Tr.,
     pp. 96:19-20, 103:16-105:7, Reply Decl., Exh. A; Sanabria Tr., p. 50:3-5, Reply Decl., Exh. C.

28   [15] All BLOs are also required to go through a "calibration" process during year-end performance
     reviews to "███████████████████████████████████████████████

---

Exhs. BBB, CCC, FFF (Dkt. Nos. 53-7 & 9, 54-3); Buratti Tr., pp. 39:4-17, 179:1-7, Reply Decl.,
Exh. A; Williams-Abrego Tr., pp. 157:6-159:19, Reply Decl., Exh. D.  When scrutinized, the
declarations cannot conceal the fact that Farmers' Claims Litigation Department operates under a
highly-centralized and regulated structure.  *See* Andrus Decl., Exh. III (Dkt. 54-11).

Further discovery has also revealed that Farmers' WC attorneys are similarly situated.
Farmers' WC attorneys are located only in California, organized in a state-wide BLO headed by
Managing Attorney Williams-Abrego.[16]  *See* Williams-Abrego Tr., pp. 27:24-28:15, 32:11-18,
Reply Decl., Exh. D; Reply Decl., Exh. R.  Ms. Williams-Abrego has explained that WC
attorneys—like other Claims Litigation attorneys—handle cases from beginning to end, review
medical records, take depositions, issue subpoenas, work with experts, conduct legal research,
prepare pleadings, argue motions, present evidence at hearings and trial, participate in
roundtables, attend status conferences, and attend mandatory settle conferences.  *See* Williams-
Abrego Decl., ¶ 6; Williams-Abrego Tr., pp. 51:8-54:24, 58:15-17, Reply Decl., Exh. D.

Identical job titles and job profiles apply uniformly to PIP attorneys, BI attorneys, Law
and Motion attorneys,[17] ***and*** WC attorneys, across Salary Grades.  *See* Williams-Abrego Tr., pp.
58:18-59:3, Reply Decl., Exh. D; Sanabria Tr., p. 38:9-20, Reply Decl., Exh. C; Buratti Tr., p.
206:6-8, Reply Decl., Exh. A; Carter Tr., pp. 28:22-29:3, Reply Decl., Exh. F.  There are no
customized job profiles in effect.  *See* Buratti Tr., pp. 194:5-17, 205:8-11, 206:9-13, Reply Decl.,
Exh. A; Williams-Abrego Tr., p. 136:10-13, Reply Decl., Exh. D.  Additionally, soft tissue cases
are typically handled by attorneys in Salary Grades 35-36; there is no separate job profile for soft
tissue attorneys.  *See* Buratti Tr., pp. 198:9-200:5, Reply Decl., Exh. A.[18]

---

[black redaction bar] "  *See* Reply Decl., Exh. Q;
Buratti Tr., pp. 113:23-114:22, Reply Decl., Exh. A; Miller Decl., ¶ 14.

[16] The statewide WC BLO was created to generate consistency in the WC practice across
California. *See* Williams-Abrego Tr., pp. 103:13-104:1, Reply Decl., Exh. D.

[17] Contrary to Farmers' sophistry, Law and Motion attorneys argue motions in court, prepare
discovery, participate in roundtables, and assist with depositions.  Buratti Decl., ¶ 17; Deposition
of Keever Rhodes, pp. 121:17-123:12, 123:7-11, Reply Decl., Exh. E; Deposition of Sandra
Carter ("Carter Tr."), pp. 76:19-20, 366:5-13, 379:24-380:17, Reply Decl., Exh. F.

[18] Plaintiff agrees that the audit specialists who "review and process legal bills," Opp. at 3, should
be excluded from the Class definition.  Plaintiff's Counsel attempted to reach agreement with
Farmers' Counsel on this point, but the issue was not resolved.  *See* Reply Decl., ¶ 2; Hartsuyker
Tr., pp. 70:25-75:10, Reply Decl., Exh. B.  Plaintiff has submitted herewith a Revised [Proposed]

1    Given this plentiful documentary and testimonial evidence of Plaintiff Coates' and the

2    putative class members *actual* job duties, *E.E.O.C. v. Port Authority of New York and New Jersey*,

3    768 F.3d 247 (2d. Cir. 2014), Opp. at pp. 1, 3-5, is readily distinguishable.  There, the Second

4    Circuit emphasized "the EEOC's complaint and incorporated interrogatory responses rely almost

5    entirely on broad generalizations drawn from job titles and divisions, and . . . the unsupported

6    assertion that all Port Authority nonsupervisory attorneys had the same job, to support its

7    'substantially equal' work claim."  *Id.* at 256.  In addition, unlike the plaintiff in *Port Authority*,

8    Plaintiff Coates has not had three years in which to investigate her claim, but rather is still in the

9    early stages of discovery.  Farmers' reliance on *Port Authority* for its precedential value in this

10   case is thus misplaced.  *See Connor v. Office of the Attorney General of Texas*, No. A-14-CV-961

11   LY, 2015 WL 1004304, at *3 (W.D. Tex. Mar. 5, 2015).

12        **C.      The Merits Of Coates' EPA Claim Should Not Be Decided At This Stage.**

13        Although the gross disparity in pay between Andy Lauderdale and Plaintiff Coates[19] is

14   what initially led Ms. Coates to complain to her supervisor about unequal compensation, the

15   Opposition's singular focus on Mr. Lauderdale as her comparator is a calculated diversion.  Opp.,

16   pp. 6-7.  *Plaintiff Coates has also identified Farmers' attorney employee Dan Schaar as a*

17   *comparator*, *see* Complaint at ¶ 30(a) and Motion at pp. 6-7, and the evidence demonstrates that

18   Mr. Schaar was paid more than Ms. Coates for doing the same or substantially similar work.

19   Farmers' Opposition does not argue otherwise, and thus concedes the point.[20]

20        Comparing Dan Schaar and Lynne Coates, Plaintiff states a prima facie case under the

21

22   Order Granting Equal Pay Act Conditional Collective Certification and Authorization of Notice,
     excluding individuals responsible for auditing vendor and legal bills.
23   [19] In addition to Mr. Lauderdale's base salary of $ ▮▮▮▮▮ in 2013, he earned a "▮▮▮▮▮▮▮"
     (bonus) of $ ▮▮▮▮ (▮% of his base salary), bringing his total compensation to $ ▮▮▮▮
24   for that year, compared to Plaintiff Coates' $ ▮▮▮▮▮▮▮.  *See* Reply Decl., Exhs. S and T.
     Mr. Lauderdale's ▮% bonus was above his "▮▮▮▮▮▮▮" of ▮% for that year.  *Id.*, Exh. S.  In
25   contrast, Ms. Coates' ▮▮▮▮▮ of $ ▮▮▮▮▮ (representing ▮% of her base salary) was below
     her ▮▮▮▮ % for the year.  *Id.*, Exh. T.
26   [20] Nor does Farmers attempt to contradict the evidence showing that each of the Opt-in Plaintiffs
     (Carter, Rhodes, Storey, Morgan, Neves, Torigian, and Wasson) has at least one male comparator
27   with comparable education and experience, and doing the same work, but earning more.  *See*
     Andrus Decl., ¶¶ 8-14.  Plaintiff provides comparator information for the recent opt-in plaintiffs,
28   Kim Carlton, Chiquita Hartman, and Celeste Stokes, in the Reply Declaration.  *Id.*, ¶¶ 6-8.

1  EPA.  Plaintiff Coates graduated law school in 1992.  *See* Complaint, ¶ 17.  Mr. Schaar graduated

2  16 years later, in 2008.  *See* Reply Decl., Exh. U.  ███████████████████████████

3  ███████████████████████████  *Id.,* Exh. V.  Ms. Coates had, by that point, completed

4  three or four jury trials and two bench trials, each of which she first chaired.  *See* Deposition of

5  Lynne Coates ("Coates Tr."), pp. 37:22-38:5, 340:20-21, Reply Dec., Exh. G.

6          Despite the fact that Ms. Coates had sixteen years more experience than Mr. Schaar, and

7  the fact that she had been employed by Farmers for a total of eight years, *see* Complaint, ¶¶ 18-

8  30, compared to Mr. Schaar, who had been there less than two years, in 2013, Dan Schaar's total

9  compensation was *$*████████, compared to Plaintiff Coates' $████████.  *See* Reply Dec.,

10 Exhs. W at D000035200 and T at D000035194.  In April 2014, that pay disparity increased when

11 Mr. Schaar's base salary rose to $██████, exceeding Ms. Coates' base salary of $████████.  *Id.,*

12 Exh. W at D000035200.

13                ████████████████████████████████████████

14 ████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████

17 ████████████████████████████████████████████████

18 ████████████████████████████████████████████

19 ████████████████████████████████████████████████████

20 ████████████████████████████████████████████████

21 ████████████████████████████████████████████████████

22 ████████████████████████████████████████████████████

23 ██████████████████████████████████████████████████████

24 ████████████████████████████████████████████████

25 ████████████████████████████████████████████████

26 ████████████████████████████████████████████

27 ████████████████████████  *Id*.

28          On this evidence, Plaintiff's prima facie case is made.  When the merits of the claims are

1   eventually decided, Farmers will likely argue that Ms. Coates and her male comparators were

2   compensated differently for a reason other than sex, but consideration of Farmers' defenses is

3   improper at this stage.[21]  *See Wellens*, 2014 WL 2126877, at *4 ("At this early stage and before

4   the completion of discovery, plaintiffs do not need to have full and complete evidence

5   demonstrating the existence or impact of the alleged [discriminatory compensation] policy.").

6          **D.      The "Intermediate" Standard Does Not Apply And The Court Need Not
                     Consider Manageability.**

7

8          The "intermediate" standard, which has ***not*** been adopted in the Ninth Circuit, is not

9   applicable.  On the contrary, it is the "'fairly lenient standard' that applies in this Circuit to

10  determine whether the potential plaintiffs should be notified of the action…."  *Alvarez v. Farmers*

11  _____

12  [21] For this reason, Farmers' assertion that Plaintiff Coates was paid less than Mr. Lauderdale
    because she was a "HEAT Support Attorney" is a red herring.  Opp. at pp. 6-7, 22-23.  First, this
13  is a disputed issue of fact that can only be determined on the merits after full discovery has been
    completed.  Second, Plaintiff's offer letter refers to her position as "Trial Attorney," not "HEAT
14  Support Attorney."  *See* Andrus Decl., Exhs. X, GG, and HH (Dkt. Nos. 48-5, 57-33 & 34).
    Third, even if the trier of fact ultimately determines that Farmers classified Ms. Coates as a
15  "support" attorney, she has submitted ample evidence that she was doing all of the same tasks as
    her male counterparts—taking depositions, making court appearances, handling mandatory
16  settlement conferences and mediations, participating in roundtables, even trying a case—and the
    nomenclature used to describe her position is of no great importance.  *See* Coates Tr., pp. 120:22-
17  121:1, 121:25-122:2, 161:12-17 ("[T]he type of work that we were doing on the files was
    identical."), 167:4-12 (Coates and Schaar "did the same type of work"), 167:13-18 ("There was a
18  routine way that files are [] handled within the office, and everyone followed the guidelines that
    were given to us."), 339:9-12, 436:3-24, Reply Decl., Exh. G; Reply Dec., Exh. Z; Reply Decl.,
19  Exh. AA at D000030114 (

20  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮): Andrus Decl., Exhs. JJ (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮), KK (▮▮▮

21

22  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮), MM (▮▮▮▮▮▮▮▮▮▮▮▮▮

24  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮") (Dkt. Nos. 50-3, 5, & 9).  Additionally, Managing Attorney
    Sanabria testified that the HEAT Support Attorney takes depositions, makes court appearances,
25  reviews medical records, meets with clients, writes motions, drafts and responds to discovery,
    argues motions, appears at mediations, and works with experts.  *See* Sanabria Tr., pp. 136:13-
26  137:21, Reply Decl., Exh. C.  This testimony is in keeping with Ms. Sanabria's declaration, in
    which she explained that the HEAT Support Attorney "goes to trial with [the HEAT Attorney] as
27  an active participant, examining witnesses and sharing in all aspects of the trial."  Sanabria Decl.,
    ¶ 4.  In any event, Farmers' claim that Mr. Lauderdale had greater "responsibility" requires a
28  factual determination to be made later in the case.  *Kassman*, 2014 WL 3298884, at *6.

1   *Ins. Exch.*, No. 14-CV-00574-WHO, 2014 WL 4685031, at *3 (N.D. Cal. Sept. 19, 2014).

2          Farmers urges the Court to apply an "intermediate" standard because some discovery has

3   taken place, Opp. at pp. 16-17, but courts in this Circuit have declined to advance past the first

4   stage analysis even where "Plaintiffs have received 75,000 pages of documents produced during

5   discovery . . . . plaintiffs have conducted Fed. R. Civ. P. 30(b)(6) depositions on a variety of

6   subjects, and [defendant] has deposed several plaintiffs and all but one of the declarants

7   supporting plaintiffs' motion." *Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 628

8   (E.D. Cal. 2009); *cf. Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 498 (D.N.J.

9   2000) (applying stricter standard on conditional certification where discovery was "completed").[22]

10         Even if an "intermediate" standard governed, "[t]he standard against which Plaintiffs'

11  evidence will be evaluated ***remains lenient***, with the burden focused on advancing their own

12  original allegations of a sufficiently similar class, not on refuting Defendants' arguments and

13  defenses." *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 827 (N.D. Ohio 2011)

14  (emphasis supplied); *see also McClean v. Health Sys., Inc.*, No. 11-03037-CV-S-DGK, 2011 WL

15  6153091, at *7 (W.D. Mo. Dec. 12, 2011) ("Plaintiffs ***need not produce significant evidence*** of

16  how the rounding practice operates in practice. Rather, it is sufficient that they present evidence

17  of a common policy or plan affecting the class of plaintiffs that they seek to represent.")

18  (emphasis added). As discussed *infra*, Sections I.B. and I.C., Plaintiff has supplemented her

19  detailed allegations with proof of Farmers' uniform policies and practices, and evidence of the

20  widespread gender-based pay disparities. That is sufficient, even under an "intermediate"

21  standard.

22         Arguing that the Court should consider manageability when ruling on conditional

23  certification, Farmers cites a handful of cases from other districts. Opp., p. 21, n.28. None of the

---

24  [22] Farmers also cites *Ray v. Motel 6 Operating, Ltd. P'Ship*, No. 3-95-828, 1996 WL 938231 (D.
25  Minn. Mar. 18, 1996), Opp. at 16, which is "case law inapplicable to the [two-stage] approach
    adopted by the court for evaluating conditional certification." *Adams v. Inter-Con Sec. Sys., Inc.*,
26  242 F.R.D. 530, 537 (N.D. Cal. 2007); *see also Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528,
    539 (S.D. Tex. 2008) (disapproving of *Ray* even at the ***second stage analysis*** because "[i]t simply
27  cannot be that an employer may establish policies that create strong incentives for managers to
    encourage or allow employees to work off-the-clock, and avoid a FLSA collective action [where]
28  a large number of employees at a number of different stores are affected").

cases cited involved the EPA, and each of the cases is either factually distinguishable and/or

applies a procedural standard different from the two-stage procedure applied in this district.[23]

### E.   The Claims Litigation Department Is A Single Establishment.

Farmers' argument that Plaintiff cannot meet the EPA's "single establishment" requirement

(29 U.S.C. § 206(d)(1)), Opp. at pp. 5, 19-21, is both weak and premature.  First, courts widely

recognize that:

> [C]entral control and administration of disparate job sites can support a finding of a
> single establishment for purposes of the EPA.  The hallmarks of this standard are
> centralized control of job descriptions, salary administration, and job assignments or
> functions.  Courts reason that narrow construction of the word 'establishment' could
> make proof of discrimination more difficult, thus frustrating congressional intent.

*Kassman*, 2014 WL 3298884, at *8 (internal quotation marks omitted) (citing *Mulhall v. Advance

Sec., Inc.*, 19 F.3d 586, 591 (11th Cir. 1994)).  *Kassman* is analogous to the present case.  Here,

plaintiffs have:

> presented sufficient evidence that [Farmers' Claims Litigation] offices nationwide may
> be considered one establishment for purposes of conditional certification under the
> EPA.  Specifically, Plaintiffs have presented evidence that job responsibilities [are]
> generally the same across offices, compensation policies [are] firm-wide and ultimate
> compensation decisions [are] made by centralized leadership.

---

[23] Plaintiff has provided more than sufficient evidence of Farmers' nationwide uniform
compensation policies.  *Contra Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 688 (D. Md. 2010)
(denying conditional class certification for unpaid overtime claims as not appropriate where
plaintiffs could set their own hours and could not show that "a national directive existed"); *Basco
v. Wal-Mart Stores, Inc.*, No. CIV.A. 00-3184, 2004 WL 1497709, at *7 (E.D. La. Jul. 2, 2004)
(alleged national "corporate policy to keep employee wage costs low" not appropriate for
conditional class certification where the effects of the policy were particularized); *Sheffield v.
Orius Corp.*, 211 F.R.D. 411, 413 (D. Or. 2002) (plaintiffs sought redress for violations caused in
part by independent companies defendant later acquired, cutting against finding a "national policy
to deny workers overtime and minimum wages"); *Severtson v. Phillips Beverage Co.*, 137 F.R.D.
264, 267 (D. Minn. 1991) (conditional class certification inappropriate where plaintiffs did not
submit evidence of even a "colorable basis" for their claim).
   Plaintiffs' EPA claims also do not require a highly individualized unpaid overtime inquiry.
*Contra Pelczynski v. Orange Lake Country Club, Inc.*, 284 F.R.D. 364 (D.S.C. 2012) (where no
record of hours worked existed in FLSA overtime claim, conditional certification inappropriate
for putative plaintiffs who required week-by-week and employee-by-employee evidentiary
showings); *Purdham v. Fairfax Cty. Pub. Sch.*, 629 F. Supp. 2d 544 (E.D. Va. 2009) (denying
conditional certification for unpaid overtime claims involving "volunteers" and coaches where no
county-wide guidelines for payment or work hours existed; the amount of hours worked at each
school varied; and the amount of supplemental pay received varied).
   Farmers' advocacy notwithstanding, questions of manageability, or whether individual
issues predominate, are properly addressed during the more stringent stage-two analysis.  *See
Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 828 (N.D. Ohio 2011).

1    *Id.*[24]

2    Moreover, in EPA cases, whether multiple locations of business can be a "single

3    establishment" is a question reserved for the second-stage de-certification inquiry.  *See Moore*,

4    2012 WL 2574742, at *11 (*citing Jarvaise*, 212 F.R.D. at 4 and *Garner v. G.D. Searle Pharm. &*

5    *Co.*, 802 F. Supp. 418, 422-23 (M.D. Ala. 1991)).  Even were such an inquiry required at this

6    stage, as in *Moore*, Plaintiff has substantiated that her duties were generally the same as Claims

7    Litigation attorneys in all BLOs: "[t]hey all [have] similar responsibilities, regardless of location,

8    and they allege they [are] subject to the same unlawful discriminatory pay practice."  *Id*. at *11.

9    Although Farmers cites to a handful of cases finding that plaintiffs had not proven

10   multiple locations should be considered a single establishment, all of those cases were decided

11   after the close of discovery on summary judgment, making them inapplicable here.[25]

12   **F.    Many Cases Cited By Farmers Are Inapplicable Or Easily Distinguishable.**

13   Farmers packs its Opposition with inapposite authority, citing several cases that do not

14   involve conditional certification, or do not involve the EPA at all.  None of the following cases

15   presents an obstacle to conditional certification here: *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d

16   1409 (9th Cir. 1988) (summary judgment); *Ruffin v. Los Angeles Cnty.*, 607 F.2d 1276 (9th Cir.

17   1979) (same); *Waters v. Turner, Wood & Smith Ins. Agency, Inc.*, 874 F.2d 797 (11th Cir. 1989)

18   (same; noting "heavy burden" on summary judgment); *Vinole v. Countrywide Home Loans, Inc.*,

19   571 F.3d 935 (9th Cir. 2009) (Rule 23); *In re Wells Fargo Home Mortgage Overtime Pay Litig.*,

20   268 F.R.D. 604 (N.D. Cal. 2010) (same); *Myers v. Hertz Corp.*, 624 F.3d 537 (2nd Cir. 2010)

21   (same); *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919 (7th Cir. 2000) (plaintiff lost her EPA

---

[24] *See also Chao v. A-One Medical Servs., Inc.*, 346 F.3d 908, 916 (9th Cir. 2003) (holding that two separate companies were a "single enterprise" for purposes of the FLSA because they "performed related activities under common control for a common business purpose"); *Rehwaldt v. Elec. Data Sys. Corp.*, No. 95-876, 1996 WL 947568, at *6, n.4 (W.D.N.Y. 1996) (granting EPA conditional certification and holding "courts in recent years have adopted a more functional approach in determining the relevant establishment for employers with physically dispersed operations") (citing cases); *Grumbine v United States*, 586 F. Supp. 1144, 1148 (D.D.C. 1984) (holding, in EPA case brought by government lawyers, that entire Civil Service was an "establishment").

[25] *See* Opp. at p. 5, n.8, and pp. 19-20, n.27, citing *Bartelt v. Berlitz Sch. of Languages of Am.*, 698 F.2d 1003 (9th Cir. 1983), *Foster v. Arcata Assocs., Inc.*, 772 F.2d 1453 (9th Cir. 1985), and *Toomey v. Car-X Assocs. Corp.*, No. 12 C 4017, 2013 WL 5448047 (N.D. Ill. Sept. 30, 2013).

1   claims at trial); *Angelo v. Bacharach Instrument Co.*, 555 F.2d 1164 (3rd Cir. 1977) (same);

2   *Gunther v. Washington Cnty.*, 623 F.2d 1303 (9th Cir. 1979) (same); *EEOC v. Madison Comm.*

3   *Unit Sch. Dist. No. 12*, 818 F.2d 577 (7th Cir. 1987); (same) *Spaulding v. Univ. of Washington*,

4   740 F.2d 686 (9th Cir. 1984) (class claims dropped); *Foschi v. Pennella*, No. CV-14-01253-PHX-

5   NVW, 2014 WL 6908862 (D. Ariz. Dec. 9, 2014) (plaintiff's complaint did not pray for relief for

6   other workers' unpaid overtime; minimum wage claims conditionally certified).

7         In *Till v. Saks, Inc.*, No. C 11-00504 SBA, 2013 WL 5755671 (N.D. Cal. Sept. 30, 2013),

8   the district court skipped to the second stage of FLSA certification.  In *Velasquez v. HSBC*

9   *Finance Corp.*, 266 F.R.D. 424 (N.D. Cal. 2010), the district court weighed the substantial

10  evidence submitted by defendants, thereby improperly determining the merits of the dispute. *Litty*

11  *v. Merrill Lynch & Co.*, No. CV 14-0425 PA PJWx, 2014 WL 5904907 (C.D. Cal. Aug. 4, 2014) is

12  distinguishable in that plaintiff offered no evidence as to how much time other financial advisors

13  spent in or out of the office or as to what their job duties involved. *Id.* at **6, 9.

14         **G.    Farmers Does Not Object To Plaintiff's Notice And Notice Plan.**

15         Conceding on all Notice-related issues, Farmers does not address Plaintiff's proposed

16  form of Notice, the proposed 90-day notice period, or the proposed plan for distribution of the

17  Notice, including first class mail and e-mail, a postcard reminder, and posting of the Notice in

18  Farmers' Branch Legal Offices, therefore, Plaintiff's Notice and Notice plan should be approved.

19  **II.    CONCLUSION**

20         Plaintiff Coates' substantial allegations, coupled with supporting evidence "that the

21  putative class members were together the victims of a single decision, policy or plan" and share

22  similar job duties, warrant conditional certification. *See Benedict v. Hewlett-Packard Co.*, No.

23  13–CV–00119–LHK, 2014 WL 587135, at **5, 7 (N.D. Cal. Feb. 13, 2014).  Nothing in Farmers'

24  Opposition changes the analysis.  The Motion should be granted.

25                                        Respectfully submitted,

26  Dated: November 24, 2015              ANDRUS ANDERSON LLP

27

28                                        By: _____
                                          Lori E. Andrus

PLTF'S REPLY ISO PLAINTIFF'S MOTION FOR          Case No. 5:15-CV-01913-LHK
EQUAL PAY ACT CONDITIONAL COLLECTIVE ACTION
CERTIFICATION AND AUTHORIZATION OF NOTICE                              15

*Attorneys for Plaintiff, the Proposed Classes and the Aggrieved Employees*