UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LYNNE COATES,<br><br>            Plaintiff,<br><br>      v.<br><br>FARMERS GROUP, INC., et al.,<br><br>            Defendants. | Case No. 15-CV-01913-LHK<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND AUTHORIZING NOTICE**<br><br>Re:  Dkt. 56 |

Plaintiff Lynne Coates ("Coates" or "Plaintiff") and opt-in plaintiffs Sandra Carter ("Carter"), Chiquita Hartman ("Hartman"), Michele Morgan ("Morgan"), Serena Neves ("Neves"), Keever Rhodes ("Rhodes"), Angela Storey ("Storey"), Stephanie Torigian ("Torigian"), and Karen Wasson ("Wasson") bring this putative class and collective action against Defendants Farmers Group, Inc., Farmers Insurance Exchange, and Farmers Insurance Company, Inc. (collectively, "Defendants") for alleged violations of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), and other federal and state laws.  ECF No. 1 ("Compl.").  Before the Court is Coates's motion to conditionally certify an EPA collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).  ECF No. 56 ("Mot.").  Having considered the parties' arguments,

Case No. 15-CV-01913-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND AUTHORIZING NOTICE

United States District Court
Northern District of California

the relevant law, and the record in this case, the Court GRANTS Coates's motion for conditional collective action certification, and AUTHORIZES notice to potential similarly situated class members.

## I.    BACKGROUND

### A. Factual Background

#### 1. Allegations in the Complaint and Evidence Submitted by Both Parties

Defendants, along with additional subsidiaries and affiliates not named in this action, comprise the nation's third largest personal property and casualty insurance company.  Compl. ¶¶ 1, 6-10.  Defendants' Claims Litigation Department employs approximately 500 attorneys in over forty Branch Legal Offices nationwide to defend lawsuits brought against Defendants' insureds.  ECF No. 57 (Declaration of Lori E. Andrus, or "Andrus Decl.") ¶ 2;[1] *id.* Ex. M; *id.* Ex. L.  Named Plaintiff Coates worked in the Claims Litigation Department from 1993 to 1998, and again from 2010 to 2014, in the San Jose Branch Legal Office.  ECF No. 56-1 (Declaration of Lynne Coates, or "Coates Decl.") ¶ 4; ECF No. 57-1 (Deposition of Lynne Coates, or "Coates Depo.") pp. 21, 340.  The eight opt-in plaintiffs are all female attorneys who have worked in the Claims Litigation Department.  *See* Andrus Decl. ¶¶ 8-14; ECF No. 68-1 (Reply Declaration of Lori Andrus, or "Andrus Reply Decl.") ¶¶ 6-8.

The complaint alleges that Defendants paid the female attorneys in the Claims Litigation Department less than their male counterparts, even though the female attorneys performed the same or substantially equal work to the male attorneys.  Compl. ¶ 2.  Specifically, Plaintiff Coates alleges that she was hired as a full-time attorney on April 1, 2011 at salary grade 37 and $90,000 per year.  *Id.* ¶ 20.  Coates received positive performance reviews, and her salary increased incrementally, to $99,634.08 on April 1, 2014.  *Id.* ¶¶ 23-29.  However, in 2014, Coates learned that her law partner Andy Lauderdale ("Lauderdale")—who had been practicing law for one year

---

[1] As of September 20, 2015, the Claims Litigation Department employed 519 attorneys.  Andrus Decl. ¶ 2.  The Claims Litigation Department employed 815 attorneys during the class period, approximately 300 of whom are women.  *Id.*

2

less than Coates—was earning $185,00 compared to Coates's $99,634.08.  Coates Decl. ¶¶ 13, 18; Compl. ¶ 30(d).  According to Coates, she and Lauderdale "shared a common core of tasks" and "the same responsibilities . . . in many large-high-exposure cases that they worked on together."  Compl. ¶ 22.  According to Lauderdale, Coates did "outstanding work" on their cases.  Andrus Decl. Ex. MM.

Coates also identifies Dan Schaar ("Schaar") as a higher paid, but less experienced, male attorney.  Schaar was hired by Defendants in early 2012 at a salary of $85,000.  *Id.* ¶ 30; Coates Decl. ¶ 15.  Schaar had been a licensed attorney for only three years, and lacked prior insurance defense experience.  Coates Decl. ¶ 15.  By contrast, when Coates was hired in 2010, at $90,000, she had been licensed for 18 years and had five and a half years handling insurance defense matters, including trials.  *Id.*; Compl. ¶ 20.  By the time Schaar stopped working for Defendants in 2014, he was earning $102,000 per year—$3,000 more than Coates.  Coates Decl. ¶ 15.  Additionally, Coates points to Jeff Atterbury, who had no insurance defense experience when he was hired by Defendants in June 2012, also at $85,000.  Coates Decl. ¶ 15.  Based on these three comparators, Coates asserts that she received unequal pay for doing substantially equal work in violation of the EPA.  *Id.*  Coates contends that her unequal pay is the result of Defendants' discriminatory policies on compensation, assignment of cases, promotion, and performance evaluation.  *Id.* ¶ 63; Mot. at 1-2.

Coates alleges that the putative collective action members are similarly situated to Coates with respect to Coates's EPA claim because the class members "(a) have substantially similar job classifications, job functions, job titles, job descriptions, and/or job duties; and (b) are all subject to [Defendants'] common and centralized compensation policies, procedures and practices resulting in unequal pay based on sex."  Compl. ¶ 63.  To support this claim, Coates submitted the following evidence with the instant motion: (1) declarations of Coates and three opt-in plaintiffs; (2) deposition testimony from Coates, three opt-in plaintiffs, and four current attorney-employees of Defendants; (3) research publications, academic articles, and statistics on the employment and

Case No. 15-CV-01913-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND AUTHORIZING NOTICE

1    earnings of women in America; (4) Coates's contracts and earnings statement; (5) various policies

2    and procedures of Defendants, including on attorney competencies, compensation management,

3    performance management, and case handling; (6) job postings for employment as an attorney with

4    Defendants; (7) job profiles for attorney positions in the Claims Litigation Department; (8) emails

5    and other documents indicating Coates's satisfactory job performance; and (9) performance and

6    compensation overviews for Coates, Lauderdale, and Schaar.  ECF Nos. 57, 68.

7        In opposition, Defendants submitted (1) testimony and exhibits from the depositions of

8    Coates and three opt-in plaintiffs; (2) performance reviews for Coates and Lauderdale; (3) the high

9    exposure attorney (or "HEAT" attorney) profile; and (4) 10 declarations from attorneys currently

10   working for Defendants.  ECF No. 60.

11       **2.  Organization of Defendants' Claims Litigation Department**

12       Both parties have submitted evidence regarding the jobs of attorneys in the Claims

13   Litigation Department.  As relevant to the proposed class definition, Defendants organize the

14   attorneys in the Claims Litigation Department into the following job titles and salary grades:

15   attorney (grade 35), workers' compensation attorney (grade 35), associate trial attorney (grade 36),

16   trial attorney (grade 37), senior trial attorney (grade 38), senior workers' compensation attorney

17   (grade 38), specialty trial attorney (grade 39), supervising attorney (grade 39), supervising

18   workers' compensation attorney (grade 39), high exposure attorney (grade 40), and managing

19   attorney (grade 40).  *See* Andrus Decl. Exs. V-CC.  Each Branch Legal Office is run by a

20   Managing Attorney and includes varying numbers of attorneys from other job titles and salary

21   grades.  ECF No. 60-38 (Declaration of Craig Hartsuyker, or "Hartsuyker Decl.") ¶ 11.  Managing

22   Attorneys are overseen by Divisional Attorneys (92% of whom were male during the class

23   period), who are in turn overseen by the Head of Claims Litigation (also male).  Andrus Decl. ¶ 4;

24   *id.* Ex. III; Mot. at 5.

25       Jobs are assigned to salary grades based on the results of the job evaluation process, which

26   "is a systematic approach to measuring the various skills and abilities required for a job and the

27

28
Case No. 15-CV-01913-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION
AND AUTHORIZING NOTICE

United States District Court
Northern District of California

United States District Court
Northern District of California

1    responsibility level the job carries" by analyzing the "current duties and responsibilities" of a

2    position.  Andrus Decl. Ex. NN (Human Resources Policy Manual); *see also id.* Ex. EE (noting

3    that job analysis is a "method to describe what an employee at each salary grade does," and that

4    the "end result" is "a job content profile that outlines the job by content area").  Thus, regardless

5    of geography, the attorneys within a job title are expected to have similar "duties and

6    responsibilities."  *See* Andrus Decl. Ex. NN; *id.* Ex. EE (reporting results of 2013 survey that "Job

7    tasks within same salary grades are uniform"); *id.* Ex. C (Deposition of Sandra Delrivo Carter, or

8    "Carter Depo.") p. 357 ("[T]here's the salary grades and, you know, that defines what type of

9    work you're supposed to get."); *id.* Exs. V-CC (attorney profiles, which indicate that attorneys

10   within a job title are expected to perform the same duties); Andrus Reply Decl. Exs. X-Y (same).

11   *But see* ECF No. 60-47 (Declaration of John Buratti) ¶¶ 12-15 (explaining personal injury

12   protection attorneys are specialized and not expected to do the same number of trials as other

13   attorneys).

14         Additionally, there is evidence that attorneys with different job titles have substantially

15   identical duties.  For example, attorneys at salary grades ███ perform the same core tasks and

16   are expected to have the same skills and knowledge (for example, active listening, critical

17   thinking, and persuasion).  *See* Andrus Reply Decl. Exs. M-N (attorneys across grades ███

18   spend similar amounts of time on the same tasks); *see also* Andrus Decl. Ex. EE (a 2014 job-task

19   analysis by Defendants of salary grades ███ indicated that the tasks, knowledge, skills, and

20   abilities of attorneys in salary grades ███ had "little distinction" beyond the complexity of the

21   cases handled).  Coates asserts that all Claims Litigation Department attorneys, across the nation

22   and across job titles, perform "substantially similar job duties," including: "reviewing and

23   responding to complaints, sending out and responding to discovery, taking depositions, making

24   court appearances, attending mediations, handling arbitrations, meeting with clients and Farmers'

25   claims representatives, participating in roundtables with supervisors and claims representatives,

26   trying cases, and settling cases."  Coates Decl. ¶ 6; ECF No. 56-2 (Declaration of Sandra Carter,

27

28   Case No. 15-CV-01913-LHK
     ORDER GRANTING PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION
     AND AUTHORIZING NOTICE

1  or "Carter Decl.") ¶ 6; *see also* ECF No. 56-3 (Declaration of Keever Rhodes, or "Rhodes Decl.")

2  ¶ 6; ECF No. 56-4 (Declaration of Angela Storey, or "Storey Decl.") ¶ 6.  *But see* Andrus Decl.

3  Ex. DD (indicating that cases vary in complexity across salary grades).

4        Additionally, Coates testified that "[t]here was a routine way that files are . . . handled

5  within the office, and everyone followed the guideline that were given to us."  Coates Depo. p.

6  167; *see also* Coates Decl. ¶ 7 ("Farmers' Claims Litigation is a highly regimented business

7  operation and adherence to detailed written policies on a wide range of tasks is expected and

8  enforced."); Carter Decl. ¶ 7 (same); Rhodes Decl. ¶ 7 (same); Storey Decl. ¶ 7 (same).  Coates

9  points to various guidelines and forms—apparently applicable to all job titles—that govern how to

10  handle a case.  *See* Andrus Decl. Ex. OO (Litigated Case Management Guidelines); *id.* Exs. PP-

11  TT (standardized case handling forms); *see also* Andrus Decl. Ex. C (Deposition of Christina

12  Sanabria) p. 78-79 (noting there are guidelines that provide a framework for how to handle cases);

13  Carter Depo. p. 355 ("Well, like when they set out litigation guidelines . . . it's not just an L.A.

14  issue or a Long Beach issue.  It's the claims litigation, so there's claims litigation processes that to

15  my understanding apply to everybody.").  *But see* Andrus Decl. Ex. VV (case management

16  guidelines for low-exposure claims).

17        Defendants' "compensation management program" applies to the aforementioned job titles

18  and salary grades.  Andrus Decl. Ex. NN; *see also* Andrus Reply Decl. Ex. K (discussing

19  compensation management for "all" states and "all" offices); Coates Decl. ¶ 8 ("Throughout the

20  country, all Farmers' Claims Litigation attorneys are subject to the same common and uniform

21  compensation policies and practices.").  Each salary grade is assigned a range of possible salaries

22  for the associated job.  Andrus Decl. Ex. NN.  Within that range, pay is set by the Managing

23  Attorney of each Branch Legal Office, subject to discussions with and approval by higher

24  management.  Hartsuyker Decl. ¶ 11(f)-12; ECF No. 60-39 (Declaration of Edward Hoagland, Jr.,

25  or "Hoagland Decl.") ¶ 10; ECF No. 60-40 (Declaration of Mark Miller, or "Miller Decl.") ¶ 15

26  ("Within the salary grade range applicable to the position we are filling, we also determine the

6

incoming attorney's starting pay."); Coates Decl. ¶ 9 ("Final-decision making authority relating to Claims Litigation attorneys' compensation belongs to a small group, consisting only of men, who work at or above the Division Attorney level.").  Managing attorneys also determine the annual pay raises for the attorneys within the Branch Legal Offices, subject to an allocation budget and approval by higher management.  *See, e.g.*, Hartsuyker Decl. ¶ 27; Miller Decl. ¶ 16 (noting that percentage increases are set "within our assigned budget" and "within the constraints of the salary grade system").  █████████████████████████████████

███████████████████████████████████████████████████████████████

████  Andrus Reply Decl. Ex. K.   Managers are cautioned not to ████████████████

██████  that govern merit increases.  *Id.*

All supervisors follow the same performance evaluation procedure.  *See* Andrus Decl. Exs. BBB, CCC (explaining mid-year and year-end performance review process); Coates Decl. ¶ 11 ("Farmers' performance review policies and practices are uniform nationwide. . . . The same forms are used nationwide.").  The performance evaluation system uses ███████████████ to measure performance.  Andrus Decl. Exs. NN, EEE, FFF.  Managers are encouraged to assign performance ratings according to a ████████████████, and all ratings are then calibrated according to a ████████████████.  Andrus Reply Decl. Exs. K, Q; *see also* Hoagland Decl. ¶ 11 (noting calibration meeting is "to ensure that we collectively are using a common judgment scale and applying that scale fairly across the business").

## B. Procedural History and the Instant Motion

On April 29, 2015, Plaintiff Coates filed the complaint, which asserts six causes of action against Defendants, including violations of the EPA and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and violations of various California state laws.  Compl. ¶¶ 109-175.  Coates seeks to represent a nationwide collective action class for the EPA claim; a nationwide class under Federal Rule of Civil Procedure 23 for the Title VII claim; and a California class for the California claims.  *Id.*

Case No. 15-CV-01913-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND AUTHORIZING NOTICE

On October 15, 2015, Coates filed the instant motion for conditional certification of the EPA collective action, which would permit court-authorized notice to be sent to potential opt-in plaintiffs.  ECF No. 56.  Coates seeks to certify the following class:

> Women employed by Farmers Group, Inc., Farmers Insurance Exchange, or Farmers Insurance Company, Inc. ("Farmers") in Claims Litigation at any time since June 8, 2012 in one or more of the following positions: attorney, workers compensation attorney, associate trial attorney, trial attorney, senior trial attorney, senior workers compensation attorney, specialty trial attorney, supervising attorney, supervising workers compensation attorney, HEAT attorney, or managing attorney (the "Class" or "Class Members").  The Class excludes individuals working in Farmers Legal Business Administration (formerly known as "Claims Legal Services Management").

ECF No. 69 ("Revised Proposed Order").[2]  Coates seeks an order (1) conditionally certifying the proposed EPA class; (2) requiring Defendants to produce the names and contact information of all potential collective action members; and (3) authorizing notice of the lawsuit.  *Id.*  Defendants opposed the motion on November 6, 2015.  ECF No. 60 ("Opp.").  Coates replied on November 24, 2015.  ECF No. 68.

Although Coates does not offer an estimate of the number of potential class members, it appears that there is a maximum of 300 individuals nationwide who may fall within the proposed class.  Mot. at 4 n.5; Andrus Decl. ¶ 2.  Between June 12, 2015 and June 17, 2015, three plaintiffs opted in to the putative EPA collective action:  Storey, Rhodes, and Carter.  ECF Nos. 15-17.  On October 15, 2015, five additional plaintiffs opted in to the collective action: Morgan, Neves, Torigian, Wasson, and Hartman.  ECF Nos. 40-44.  Three more plaintiffs opted in after the motion for collective action certification was filed: (1) Celeste Stokes, on October 16, 2015, ECF No. 59;

---

[2] The Court notes that Coates has not consistently characterized the proposed class of potential plaintiffs in the collective action.  In the complaint, the class definition did not include workers' compensation attorneys, nor exclude Farmers Legal Business Administration employees.  Compl. ¶ 59.  In Coates's motion, the class definition included workers' compensation attorneys, but did not exclude Farmers Legal Business Administration employees.  ECF No. 56-5 (Proposed Order). The Court will consider whether to conditionally certify the collective action based on the definition of the class contained in Coates's Revised Proposed Order, submitted with her reply brief, which excludes individuals working in Farmers Legal Business Administration, and is the most restrictive definition submitted with the instant motion for conditional certification.  *See* ECF No. 69; *see also* Reply at 8-9 n.18 (acknowledging and explaining change in definition).

Case No. 15-CV-01913-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND AUTHORIZING NOTICE

United States District Court
Northern District of California

1 (2) Kim Carlton, on November 10, 2015, ECF No. 63; and (3) Julia Vohl Islas, on December 8,

2 2015, ECF No. 75.

3 **II.      LEGAL STANDARD**

4         The EPA is an amendment to the FLSA, and therefore incorporates the FLSA's

5 enforcement and collective action provisions. *See Wellens v. Daiichi, Sankyo, Inc.*, 2014 WL

6 2126877, at *1 (N.D. Cal. May 22, 2014) (citing *Anderson v. State Univ. of N.Y.*, 169 F.3d 117,

7 119 (2d Cir. 1999), *vacated on other grounds*, 528 U.S. 111 (2000)).  Under the FLSA, an

8 employee may bring a collective action on behalf of other "similarly situated" employees.  29

9 U.S.C. § 216(b).  In contrast to class actions pursuant to Rule 23 of the Federal Rules of Civil

10 Procedure, potential members of a collective action under the FLSA must "opt in" to the suit by

11 filing a written consent with the court in order to benefit from and be bound by a judgment.

12 *Centurioni v. City & Cnty. of San Francisco*, No. 07-01016, 2008 WL 295096, at *1 (N.D. Cal.

13 Feb. 1, 2008); *see also* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such

14 action unless he gives his consent in writing to become such a party and such consent is filed in

15 the court in which such action is brought.").  Employees who do not opt in are not bound by a

16 judgment and may subsequently bring their own action.  *Centurioni*, 2008 WL 295096, at *1.

17         Determining whether a collective action is appropriate is within the discretion of the

18 district court.  *See Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004).  The

19 plaintiff bears the burden to show that the plaintiff and the proposed class members are "similarly

20 situated."  *Id.*  The FLSA does not define the term "similarly situated," nor has the Ninth Circuit

21 defined it.  *Id.*  Although various approaches have been taken to determine whether plaintiffs are

22 "similarly situated," courts in this circuit have used an ad hoc, two-step approach.[3]  *See id.* at 467

23

24 [3] Use of this two-tiered approach has been affirmed by at least six United States Courts of
   Appeals.  *See White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012);
25 *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012); *Myers v. Hertz Corp.*, 624 F.3d
   537, 554-55 (2d Cir. 2010); *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 n.2 (5th Cir.
26 2008); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008); *Thiessen v.
   Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001); *see also Bouaphakeo v. Tyson
27 Foods, Inc.*, 765 F.3d 791, 796 (8th Cir. 2014) (adopting the second-step factors from *Thiessen*,

9

28 Case No. 15-CV-01913-LHK
   ORDER GRANTING PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION
   AND AUTHORIZING NOTICE

1    ("The court proceeds under the two-tiered analysis, given that the majority of courts have adopted

2    it."); *see also Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)

3    (discussing three different approaches district courts have used to determine whether potential

4    plaintiffs are "similarly situated" and finding that the ad hoc approach is arguably the best of the

5    three approaches); *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012) (noting that

6    "conditional certification" involves the exercise of the district court's "discretionary power, upheld

7    in *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989), to facilitate the sending of notice to

8    potential class members," and approving ad hoc approach).

9            Under the two-tiered approach, the court first makes an initial "notice stage" determination

10   of whether potential opt-in plaintiffs exist who are similarly situated to the representative

11   plaintiffs, determining whether a collective action should be certified for the purpose of sending

12   notice of the action to potential class members.[4]  *See, e.g.*, *Thiessen*, 267 F.3d at 1102; *Wellens*,

13   2014 WL 2126877, at *1 ("The question is essentially whether there are potentially similarly-

14   situated class members who would benefit from receiving notice at this stage of the pendency of

15   this action as to all defendants.").  For conditional certification at this notice stage, the court

16   requires little more than substantial allegations, supported by declarations or discovery, that "the

17   putative class members were together the victims of a single decision, policy, or plan."  *Thiessen*,

18   267 F.3d at 1102; *see also Myers*, 624 F.3d at 555 (noting plaintiffs must make a "modest factual

19   showing"); *Morton v. Valley Farm Transport, Inc.*, No. C-06-2933-SI, 2007 WL 1113999, at *2

20   (N.D. Cal. Apr. 13, 2007) (describing burden as "not heavy" and requiring plaintiffs to merely

21   show a "reasonable basis for their claim of class-wide" conduct (internal quotation marks and

22   citation omitted)); *Stanfield v. First NLC Fin. Serv., LLC*, No. C-06-3892-SBA, 2006 WL

23   3190527, at *2 (N.D. Cal. Nov. 1, 2006) (holding that the plaintiffs simply "must be generally

24

25   without stating if the two-tiered approach applies), *cert granted*, 135 S. Ct. 2806 (2015).
     [4] The sole consequence of conditional certification is the "sending of court-approved written

26   notice to employees, who in turn become parties to a collective action only by filing written
     consent with the court."  *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530 (2013)

27   (internal citations omitted).

28   Case No. 15-CV-01913-LHK
     ORDER GRANTING PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION
     AND AUTHORIZING NOTICE

United States District Court
Northern District of California

comparable to those they seek to represent").  The standard for certification at this stage is a "fairly lenient" one that typically results in certification.  *Wynn v. Nat'l Broadcasting Co.*, 234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002).

Once discovery is complete, and the case is ready to be tried, the party opposing class certification may move to decertify the class.  *Leuthold*, 224 F.R.D. at 467.  "[T]he Court then determines the propriety and scope of the collective action using a stricter standard."  *Stanfield*, 2006 WL 3190527, *2.  At that point, "the court may decertify the class and dismiss the opt-in plaintiffs without prejudice."  *Leuthold*, 224 F.R.D. at 467.  It is at this second stage that the Court makes a factual determination about whether the opt-in plaintiffs are actually similarly situated, by weighing such factors as: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations."  *Id.* (citing *Thiessen*, 267 F.3d at 1103).

Notably, collective actions under the FLSA are not subject to the requirements of Rule 23 of the Federal Rules of Civil Procedure for certification of a class action.  *Thiessen*, 267 F.3d at 1105.  Thus, even at the second stage, "[t]he requisite showing of similarity of claims under the FLSA is considerably less stringent than the requisite showing under Rule 23 of the Federal Rules of Civil Procedure.  All that need be shown by the plaintiff is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA."  *Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1009 (N.D. Cal. 2010) (quoting *Wertheim v. Arizona*, No. CIV 92-453 PHX RCB, 1993 WL 603553, at *1 (D. Ariz. Sept. 30, 1993)).

## III.   DISCUSSION

### A.  The Notice-Stage Standard Applies

Plaintiffs argue that the Court should apply the more lenient first-step analysis.  Mot. at 17-21.  By contrast, Defendants argue that a more searching "intermediate" inquiry should be applied,

11

United States District Court
Northern District of California

given the discovery that has already taken place in this case.  Opp. at 16-17.  In support, Defendants point to the discovery schedule, which permitted Defendants to depose Plaintiff Coates and three opt-in plaintiffs before the briefing for the instant motion, and required Defendants to produce all documents relevant to conditional class certification prior to those depositions.  Opp. at 16; *see also* ECF No. 30 (case management order setting forth discovery schedule).  The case schedule also called for "any of Defendants' witnesses related to conditional class certification" to be deposed prior to the class certification briefing.  ECF No. 30.

Several courts have embraced Defendants' argument.  The principle underlying these opinions appears to be that, if the reason for the "lenient standard" at the notice stage is the minimal amount of evidence typically available at that time, the lenient standard does not apply when evidence is available.  Thus, four cases cited by Defendants hold that an "intermediate" or heightened standard applies when discovery has taken place on whether similarly situated plaintiffs may exist.  *See Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 822 (N.D. Ohio 2011) (finding that, because the parties have conducted limited discovery on the collective action claims, "it is appropriate to require Plaintiffs to make a modest 'plus' factual showing that there is a group of potentially similarly situated plaintiffs that may be discovered by sending opt-in notices"); *McClean v. Health Sys., Inc.*, No. 11-03037-CV-S-DGK, 2011 WL 6153091, at *4 (W.D. Mo. Dec. 12, 2011) (applying intermediate standard from *Creely* after discovery commenced); *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497-98 (D.N.J. 2000) (using "stricter standard" when 100 potential plaintiffs had already opted in); *Ray v. Motel 6 Operating, Ltd. P'ship*, No. 3-95-828, 1996 WL 938231, at *4 (D. Minn. Mar. 18, 1996) (rejecting need for additional discovery when "the facts before the Court are extensive").

However, "[c]ourts in this Circuit, including this Court, routinely reject defendants' requests to apply heightened scrutiny before the close of discovery and hold that the first-stage analysis applies until the close of discovery." *Benedict v. Hewlett-Packard Co.*, No. 13-CV-00119-LHK, 2014 WL 587135, at *7 (N.D. Cal. Feb. 13, 2014); *see also, e.g.*, *Villa v. United Site*

12

Case No. 15-CV-01913-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND AUTHORIZING NOTICE

United States District Court
Northern District of California

*Servs. of Cal, Inc.*, No. 5:12-CV-00318-LHK, 2012 WL 5503550, *13 (N.D. Cal. Nov. 13, 2012) ("In this case, discovery is still ongoing; fact discovery does not close until April 11, 2013. Accordingly, the Court applies the lower, notice-stage standard for conditional certification."); *Guifu Li v. A Perfect Franchise, Inc.*, 5:10-CV-01189-LHK, 2011 WL 4635198, *4 (N.D. Cal. Oct. 5, 2011) (holding that although parties had already engaged in "significant discovery," first-stage analysis was appropriate because discovery was still ongoing and "[i]t is likely that the Plaintiffs have not yet presented a complete factual record for the Court to analyze"); *Hill*, 690 F. Supp. 2d at 1009 ("The second determination is made at the conclusion of discovery . . . ."); *Kress*, 263 F.R.D. at 629 ("Courts within this circuit . . . refuse to depart from the notice-stage analysis prior to the close of discovery."); *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124. 1127-28 (N.D. Cal. 2009) (declining to apply second-stage review even though "volumes of paper have been produced and several witnesses deposed" because to apply a different standard would "be contrary to the broad remedial policies underlying the FLSA"); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 482 (E.D. Cal. Apr. 19, 2006) (noting that courts sometimes bypass the notice stage analysis when "discovery is complete"); *Rees v. Souza's Milk Transp.*, Co., No. CVF0500297, 2006 WL 738987, at *3 (E.D. Cal. Mar. 22, 2006) ("Here, the case is more at the "notice" stage and not at the second stage. . . . Discovery has been limited to the issue of class certification.  Discovery on the merits is not complete and the case is not ready for trial."); *Leuthold*, 224 F.R.D. at 467-68 (applying first-stage standard although "extensive discovery has already taken place," because discovery was not complete).

This Court is persuaded by the rationale of the majority of district courts within this Circuit that a heightened standard is not warranted in the instant case, where discovery is not near completion and it appears that no formal solicitation has been sent to potential class members.  As explained by Northern District of California U.S. District Judge Vaughn Walker, skipping to the second-stage standard not only requires the court to evaluate an incomplete factual record—it interferes with the future completion of that record. *Leuthold*, 224 F.R.D. at 467-68.  "The

Case No. 15-CV-01913-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION
AND AUTHORIZING NOTICE

1    number and type of plaintiffs who choose to opt into the class may affect the court's second tier

2    inquiry regarding the disparate factual and employment situations of the opt-in plaintiffs . . . ." *Id.*

3    at 467-68.  Additionally, separate from the risk of an incomplete factual record, "[b]ypassing the

4    notice-stage altogether . . . might deprive some plaintiffs of a meaningful opportunity to

5    participate." *Id.*  Measured against these dangers, delaying the second stage analysis risks little

6    harm to defendant, who will be free to move for decertification "once the factual record has been

7    finalized and the time period for opting in has expired." *Id.*  Accordingly, the Court finds that the

8    notice-stage standard applies in this case.  Thus, the question that the Court faces is whether

9    similarly situated plaintiffs exist, such that the Court should authorize notice to potential plaintiffs.

10   *See Morgan*, 551 F.3d at 1260; *see also Myers*, 624 F.3d at 555.  After discovery is complete,

11   Defendants can move for decertification, and the Court will then apply the heightened second-

12   stage review.

13           In considering whether the lenient notice-stage standard has been met in a given case,

14   courts bear in mind two evidentiary issues.  First, a plaintiff need not submit a large number of

15   declarations or affidavits to make the requisite factual showing that class members exist who are

16   similarly situated to the plaintiff.  A handful of declarations may suffice.  *See, e.g.*, *Gilbert v.

17   Citigroup, Inc.*, No. 08-0385 SC, 2009 WL 424320, at *2 (N.D. Cal. Feb. 18, 2009) (finding

18   standard met based on declarations from plaintiff and four other individuals); *Escobar v.

19   Whiteside Construction Corp.*, No. C 08-01120 WHA, 2008 WL 3915715, at *3-4 (N.D. Cal. Aug.

20   21, 2008) (finding standard met based on declarations from three plaintiffs); *Leuthold*, 224 F.R.D.

21   at 468-69 (finding standard met based on affidavits from three proposed lead plaintiffs).

22           Second, the "fact that a defendant submits competing declarations will not as a general rule

23   preclude conditional certification."  *See Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 838

24   (N.D. Cal. 2010) (citation omitted).  Competing declarations simply create a "he-said-she-said

25   situation."  *Escobar*, 2008 WL 3915715, at *4.  Thus, "[i]t may be true that the [defendants']

26   evidence will later negate [the plaintiff's] claims," but that should not bar conditional certification

27

28   Case No. 15-CV-01913-LHK
     ORDER GRANTING PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION
     AND AUTHORIZING NOTICE

United States District Court
Northern District of California

1    at the first stage.  *Id.*

2    **B.  "Similarly Situated"**

3        Defendants contend that, even under a lenient standard, Coates has failed to demonstrate

4    that she and the opt-in plaintiffs are "similarly situated" to the proposed collective action

5    members.  First, Defendants argue that Plaintiffs misunderstand the applicable legal standard

6    because, Defendants say, the phrase "similarly situated" must be interpreted differently for EPA

7    collective actions compared to other FLSA collective actions.  Opp. at 10-13.  Second, Defendants

8    assert that various differences between the job responsibilities of the putative collective action

9    members mean that the class members are not "similarly situated."  *Id.* at 13-25.  The Court first

10   discusses the standard for showing that proposed class members are "similarly situated" in EPA

11   cases, and then applies that standard to the instant case.

12       **1.  Legal Standard**

13       Plaintiff moves to conditionally certify an EPA collective action pursuant to the FLSA, 29

14   U.S.C. § 216(b).  Defendants argue that the phrase "similarly situated" in § 216(b) must be

15   interpreted differently for EPA collective actions compared to other FLSA collective actions.

16   Opp. at 10-13.  In order to establish an EPA claim, a female plaintiff must show that the employer

17   pays a male employee more "for equal work on jobs the performance of which requires equal skill,

18   effort, and responsibility, and which are performed under similar working conditions."  29 U.S.C.

19   § 206(d)(1).  Case law has described this requirement as the "substantially equal" work

20   requirement.  *See, e.g.*, *E.E.O.C. v. Port Auth. of N.Y. & New Jersey*, 768 F.3d 247, 255 (2d Cir.

21   2014).  Defendants argue that to be "similarly situated" for an EPA collective action pursuant to

22   § 216(b), Coates and the opt-in plaintiffs must show that they performed "substantially equal" or

23   "virtually identical" work to each other and the other proposed class members.  Opp. at 5, 10-13.

24   Otherwise, Defendants assert, each class member will have to offer individualized evidence of a

25   male comparator to show an EPA violation, which makes the class unmanageable and undermines

26   the benefits of a collective action.  *Id.*

27

28   Case No. 15-CV-01913-LHK
     ORDER GRANTING PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION
     AND AUTHORIZING NOTICE

United States District Court
Northern District of California

The Court finds no basis to adopt Defendants' "substantially equal" work standard as a measure of when an EPA class is "similarly situated," either as a matter of statutory interpretation or due to prudential considerations such as manageability.  First, Defendants fail to point to anything in the text of the FLSA or the EPA—or any precedent—that suggests that "substantially equal" work and "similarly situated" are interpreted in the same manner.  Rather, these two standards govern two different relationships and serve two different purposes.  To show an EPA violation, a female plaintiff does not need to show that she performs "substantially equal" work to other female employees.  Rather, a female plaintiff must show that she performs "substantially equal" work to a higher-paid male comparator.  *E.E.O.C.*, 768 F.3d at 255.  Thus, the focus of the "substantially equal" inquiry is on the relationship between the female employee and the male comparator.  *See id.*

By contrast, the focus of the "similarly situated" inquiry pursuant to § 216(b) is the relationship between the plaintiff and proposed class members, and whether the proposed class members are similarly situated "with respect to their EPA allegations."  *Wellens*, 2014 WL 2126877, at *5.  Thus, courts have found proposed classes to be "similarly situated" pursuant to § 216(b) when the plaintiff shows that (1) the plaintiff and the proposed class members were victims of the same policy, and (2) the plaintiff and the proposed class members may be able to assert EPA claims against the defendant based on that policy.  *Id.* (conditionally certifying an EPA class when the plaintiffs claimed that they were subjected to a policy to pay women less in violation of the EPA); *Earl v. Norfolk State Univ.*, Civil No.: 2:13CV148, 2014 WL 6608769, at *6 (E.D. Va. Nov. 18, 2014) ("To the extent that Plaintiff alleges such policy violated the EPA, assuming the truth of such allegations, other male teaching faculty subject to such policy are similarly situated to Plaintiff because those faculty might also assert EPA claims against NSU based on that policy."); *Barrett v. Forest Labs., Inc.*, No. 12 cv. 5224(RA)(MHD), 2015 WL 5155692, at *3 (S.D.N.Y. Sept. 2, 2015) ("[T]he courts have consistently held that EPA plaintiffs asserting that they and fellow employees were subjected to conduct by their common employer

16

Case No. 15-CV-01913-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND AUTHORIZING NOTICE

United States District Court
Northern District of California

1    that violated their right to equal pay under the EPA may be granted conditional certification if they

2    make the necessary provisional demonstration that non-party employees were similarly situated

3    with respect to an asserted violation.").

4         Second, the Court finds no merit in Defendants' argument that any EPA collective action

5    will necessarily be unmanageable unless all of the proposed class members do substantially equal

6    work.  As a preliminary matter, Defendants ignore the possibility of subclasses.  In such a case,

7    each subclass could offer common proof that the members of the subclass perform substantially

8    equal work.  *See Earl*, 2014 WL 6608769, at *6 ("[S]uch male teaching faculty are similarly

9    situated to Plaintiff to the extent that they claim that [the defendant], in violation of the EPA, has

10   paid them less than female comparators *within their departments*, just as Plaintiff claims that [the

11   defendant] has violated the EPA by paying him less than female comparators *within his

12   department.*"); c*f. O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009) ("[I]t is

13   possible that representative testimony from a subset of plaintiffs could be used to facilitate the

14   presentation of proof of FLSA violations, when such proof would ordinarily be individualized.").

15        Moreover, even in a case with multiple subclasses, the entire class may offer proof of the

16   defendants' uniform compensation and performance evaluation policies, and proof that such

17   policies lead to systematic unequal pay for women.  *See Moore v. Publicis Groupe SA*, No. 11

18   Civ. 1279(ALC)(AJP), 2012 WL 2574742, at *10-11 (S.D.N.Y. June 29, 2012) (conditionally

19   certifying an EPA collective action when, among other evidence, the plaintiffs submitted evidence

20   that members of the purported class were subject to the same compensation policies).

21   Additionally, Defendants may have statutory defenses, such as the existence of a merit

22   compensation policy, common to the collective action class.  *See* 29 U.S.C. § 206(d)(1).

23        A determination of the manageability of the class is more appropriate on a case-by-case

24   basis at the stage-two analysis.  *See, e.g., Wellens*, 2014 WL 2126877, at *5 ("[W]hether the

25   'disparate factual and employment settings of the individual plaintiffs' means that this case cannot

26   proceed collectively, or would need to be prosecuted with subclasses for each of the job titles or

27

28

17

Case No. 15-CV-01913-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION
AND AUTHORIZING NOTICE

1 | geographic locations, is a matter to be determined at the *second* stage of the certification

2 | process."); *Creely*, 789 F. Supp. 2d at 828 ("Even under the hybrid standard above, the Court is

3 | simply making a determination on whether there is enough evidence to support sending out

4 | notifications to a potential similarly situated opt-in class.  The arguments regarding whether the

5 | collective action opt-in group is manageable or whether individual issues predominate are properly

6 | addressed under the more stringent stage-two analysis.").  Manageability is better addressed once

7 | the factual record, the issues of common proof, and the number, geographic location, and job

8 | duties of any opt-in plaintiffs are presented to the Court at the second stage of analysis.

9 | Finally, no court has equated "substantially equal" work under the EPA with "similarly

10 | situated" under § 216(b) as Defendants advocate.  In fact, two courts, including one in this Circuit,

11 | have explicitly rejected defining "similarly situated" as "substantially equal" work, and noted that

12 | "the Court cannot hold Plaintiffs to a higher standard simply because it is an EPA action rather an

13 | action brought under the FLSA."  *Moore*, 2012 WL 2574742, at *11; *Wellens*, 2014 WL 2126877,

14 | at *5 n.16.  Other courts have conditionally certified classes without requiring "substantially

15 | equal" work among class members.  *See Kassman v. KPMG LLP*, 2014 WL 3298884, at *7, *9

16 | (S.D.N.Y. July 8, 2014) (conditionally certifying EPA class and noting that it is "not necessary for

17 | the purposes of conditional certification that the prospective class members all performed the same

18 | duties as the named plaintiffs"); *Earl*, 2014 WL 6608769, at *6 (conditionally certifying EPA

19 | class and finding not all proposed class members needed to be able to use the same comparator);

20 | *Rochlin v. Cincinnati Ins. Co.*, No. IP00-1898-CH/K, 2003 WL 21852341, at *16 (S.D. Ind. July

21 | 8, 2013) (conditionally certifying EPA class of female attorneys in multiple job roles).  The Court

22 | agrees that importing the "substantially equal" work standard into the conditional certification

23 | analysis for EPA cases—which is not required in other types of cases seeking collective action

24 | certification under § 216(b)—"would be contrary to the broad remedial goals" of the EPA.  *See*

25 | *O'Brien*, 575 F.3d at 586 ("Congress has stated its policy that [EPA] plaintiffs should have the

26 | opportunity to proceed collectively.").

27 |

28 | Case No. 15-CV-01913-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION
AND AUTHORIZING NOTICE

United States District Court
Northern District of California

In sum, the Court concludes that all proposed members of an EPA collective action need not perform "substantially equal" work to each other to be "similarly situated" for the purposes of conditional class certification.  Rather, the proposed class members here are "similarly situated" to Coates if "the putative class members were together the victims of a single decision, policy, or plan" that resulted in the class members receiving lower pay for doing substantially equal work as male counterparts.  *See Thiessen*, 267 F.3d at 1102; *Earl*, 2014 WL 6608769, at *6 ("To the extent that Plaintiff alleges such policy violated the EPA, assuming the truth of such allegations, other male teaching faculty subject to such policy are similarly situated to Plaintiff because those faculty might also assert EPA claims against NSU based on that policy.").

### 2.   Application

Coates argues that she is similarly situated to other female attorneys working in the Claims Litigation Department because (1) they all were subject to the same compensation policies and practices, which were implemented regardless of job title, salary grade, or geographic location by a small highly centralized group of decisionmakers; and (2) the compensation policies resulted in lower pay for female attorneys compared to male attorneys.  Applying the above "fairly lenient" standard, the Court holds that Coates has shown that she and the proposed class members are "similarly situated" for the purposes of conditional certification.

First, Coates has made a "modest factual showing" that the putative class members were the victims of a single decision, policy, or plan.  *See Myers*, 624 F.3d at 555.  Here, the evidence in the record tends to show that the compensation and related performance evaluation policies are common across job titles, salary grades, and geographic area.  *See* Andrus Decl. Ex. NN (describing compensation management program and uniform performance rating system); Andrus Reply Decl. Ex. K (discussing compensation management for "all" states and "all" offices). Although Managing Attorneys have some discretion in setting compensation for the attorneys that they supervise, raises are determined according to set ranges and ███████████████████████ ████████████████████████████████████████████████████████  *See, e.g.*, Miller Decl. ¶ 16

19

(noting that percentage increases are set "within our assigned budget" and "within the constraints of the salary grade system"); Andrus Reply Decl. Exs. K, Q.  Additionally, Coates has offered evidence that within job titles, and among certain job titles, attorneys are performing the same tasks and following the same standardized case management guidelines.  *See* Andrus Decl. Exs. EE, NN, OO-TT; Andrus Reply Decl. Exs. M-N; Coates Depo. p. 167.  This further supports Coates's contention that the application of the performance criteria and compensation policies is uniform across the proposed class.  *See Barrett*, 2015 WL 5155692, at *3 (certifying EPA class and noting that standardized pay rules, similar job descriptions, and required skill summaries reflect "the corporation's assumption that the work done by these individuals is sufficiently comparable that their compensation is to be guided by the same criteria across the board, limited only by their geographic region and by a very narrow area of discretion on the part of their supervisors to increase their pay").  Moreover, Defendants do not dispute that all of the attorneys in the Claims Litigation Department are covered by the same compensation and evaluation policies, and are measured according to the same performance criteria.

Defendants do dispute the relevance of common policies to an EPA claim.  Defendants argue that such policies are irrelevant because, ultimately, each plaintiff must demonstrate that she actually received unequal pay, regardless of the policies in place.  *See* Opp. at 1, 17-18.  The Court disagrees.  Common policies related to compensation are relevant to conditional EPA class certification because a compensation policy that is applied across the proposed class, coupled with evidence that the policy results in discriminatorily unequal pay, suggests the existence of other similarly situated plaintiffs who may have EPA claims arising from the application of that policy.  *See, e.g.*, *Earl*, 2014 WL 6608769, at *6; *Wellens*, 2014 WL 2126877, at *4 ("Plaintiffs can, however, base their common policy claim on the unofficial policy of [the defendant] . . . to unfairly compensate women.").  Indeed, courts have repeatedly relied upon evidence that a defendant applied the same compensation policy to the plaintiff as other members of the purported class in order to determine whether potential plaintiffs are "similarly situated" in EPA cases.  *See*

Case No. 15-CV-01913-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION
AND AUTHORIZING NOTICE

United States District Court
Northern District of California

1   *Earl*, 2014 WL 6608769, at *6 (noting faculty performance policy establishes a common

2   evaluation scheme, and other male faculty may have EPA claim based on that policy); *Kassman*,

3   2014 WL 3298884, at *6 (relying in part on "documentary evidence of [the defendant's] firm-

4   wide compensation policies); *Moore*, 2012 WL 2574742, at *10-11 (conditionally certifying an

5   EPA collective action when, among other evidence, the plaintiffs submitted evidence that

6   members of the purported class were subject to the same compensation policies).

7          Second, Coates has presented evidence that these policies result in class-wide unequal pay

8   for female attorneys.  Coates offers evidence that female attorneys are paid less than male

9   attorneys, on average.  Andrus Decl. ¶ 7; Mot. at 14.[5]  More importantly, Coates and each of the

10  opt-in plaintiffs have identified a higher-paid male comparator.  Coates Decl. ¶¶ 15-16; Andrus

11  Decl. ¶¶ 8-14; Andrus Reply Decl. ¶¶ 6-8; *see also Earl*, 2014 WL 6608769, at *7 ("As evidence

12  of the existence of a class of plaintiffs similarly situated to the named plaintiff, courts consider

13  affidavits from other employees who assert that a defendant has violated their rights in the same

14  manner as those of the named plaintiff.").  Coates and the opt-in plaintiffs have held a variety of

15  job titles and salary grades, providing a "modest factual showing" that the alleged pay inequality

16  occurs across job titles and salary grades in the Claims Litigation Department.  *See* Andrus Decl.

17  ¶¶ 8-14 (trial attorney; attorney; attorney in workers' compensation; senior trial attorney in

18  workers' compensation, and high exposure attorney); Andrus Reply Decl. ¶¶ 6-8.

19         In opposition, Defendants dispute whether Lauderdale is an appropriate comparator to

20  Coates.  Opp. at 22-23.  However, the notice-stage is not the appropriate time to evaluate the

21  merits of Coates's EPA claim.  *See Benedict*, 2014 WL 587135, at *11; *see also Young v. Cooper*

22  *Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) ("The focus of [the] inquiry [during a motion

23

24  [5] The Court observes that the average salary across all salary grades does not establish that any
    one female employee was paid less than a male employee doing substantially equal work.  Indeed,
25  Coates indicates that there are more male attorneys than female attorneys at higher salary grades,
    which would skew the average salary for male attorneys higher.  *See* Mot. at 5.  Under the lenient
26  first-stage standard for conditional certification, however, Coates need not produce expert
    statistical analysis on the gender pay disparity, and the deadline for opening expert reports is not
27  until June 2, 2016, and the close of expert discovery not until July 21, 2016.  ECF No. 30.

28  Case No. 15-CV-01913-LHK
    ORDER GRANTING PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION
    AND AUTHORIZING NOTICE

1    for conditional certification] . . . is not on whether there has been an actual violation of law but

2    rather on whether the proposed plaintiffs are 'similarly situated' . . . .").  Additionally, Defendants

3    do not dispute the validity of Coates's comparison to Dan Schaar, or the opt-in plaintiffs'

4    comparisons to their identified comparators.  *See generally* Opp.  Thus, Defendants' argument

5    about Lauderdale does not undermine Coates's proffered evidence that she received unequal pay

6    due to Defendants' compensation policies, as did other female attorneys.  Taken together, the

7    evidence is sufficient to provide a "modest factual showing" for Coates's claim that Defendants'

8    compensation and evaluation policies have resulted in female attorneys in the Claims Litigation

9    Department receiving unequal pay compared to male attorneys doing substantially equal work.

10   Again, the Court notes that, at this stage, the Court is not deciding the merits of any EPA claim,

11   but is simply making a determination as to whether there is enough evidence to support sending

12   out notifications to a potential similarly situated opt-in class.

13          Defendants also argue that, in this specific case, the proposed class is unmanageable given

14   the differences in job responsibilities of the proposed class members and the varied geographic

15   locations.[6]  *See* Opp. at 2, 8-10 (noting, for example, that some attorneys perform mostly

16   management duties; others have no management duties and exclusively represent clients in court;

17   others never appear in court, but write briefs or appear before administrative agencies).  However,

18   Coates has provided evidence that attorneys within job titles actually share the same duties,

19   responsibilities, skills, and competencies.  *See* Andrus Decl. Exs. NN, EE (discussing job analysis

20   method); Andrus Decl. Ex. V-CC (attorney profiles); Andrus Reply Decl. Exs. X-Y (same).

21   Additionally, Coates has offered evidence that the legal tasks, skills, and knowledge of attorneys

22   _____

23   [6] As part of the argument on manageability, Defendants point out that a comparator must be from
     the same "establishment" as the plaintiff.  Opp. at 19-20.  However, "[t]he general approach of the
24   cases has been to decline to determine at the conditional-certification stage whether the plaintiffs
     will be able to satisfy the "establishment" requirement."  *Barrett*, 2015 WL 5155692, at *8; *see
25   also, e.g.*, *Kassman*, 2014 WL 3298884 at *8; *Moore*, 2012 WL 2574742 at *11 (citing cases).
     Indeed, the courts have "typically approved certification for multi-state or national collectives
26   without even addressing the 'establishment' question."  *Barrett*, 2015 WL 5155692, at *8 (citing
     *Flood v. Carlson Rest. Inc.*, No. 14 Civ. 2740(AT), 2015 WL 260436, *4 (S.D.N.Y. Jan. 20, 2015)
27   (citing cases)).

22

28   Case No. 15-CV-01913-LHK
     ORDER GRANTING PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION
     AND AUTHORIZING NOTICE

United States District Court
Northern District of California

United States District Court
Northern District of California

1  at least at salary grades ███ are substantially identical.  *See* Andrus Reply Decl. Exs. M-N; *see*

2  *also* Andrus Decl. Ex. EE.  Finally, as discussed above, Coates has shown that the compensation

3  and evaluation policies are applied across job titles.  Courts have often conditionally certified

4  multi-job-title classes in similar situations.  *See Wellens*, 2014 WL 2126877, at *2 (conditionally

5  certifying class of approximately 1500 women within six job titles); *Moore*, 2012 WL 2574742, at

6  *10-11 (conditionally certifying EPA class with members that "held four different job titles,

7  worked in nine different establishments across the nation, worked in diverse practice and industry

8  segments, and had varying levels of responsibilities, numbers of employees reporting directly to

9  them, and years of experience"); *Diaz v. S&H Bondi's Dep't Store*, No. 10 Civ. 7676(PGG), 2012

10  WL 137460, at *6 (S.D.N.Y. Jan. 18, 2012) ("Courts have found employees 'similarly situated'

11  for purposes of the FLSA where they performed different job functions or worked at different

12  locations, as long as they were subject to the same allegedly unlawful policies.").

13      Accordingly, given the relatively small possible class size (300 individuals) and the

14  overlap within and among job titles, the Court concludes that an inquiry into manageability is

15  better made at the second-stage, when the Court has more information about the composition of

16  the class.  As another district judge within this Circuit explained:

17      That [Defendants] may pay different wages for different positions (within set
        ranges), that job duties vary between divisions and job titles, and that different
18      positions are compensated differently based on location, are not factors that defeat
        conditional certification.  Instead, whether the "disparate factual and employment
19      settings of the individual plaintiffs" means that this case cannot proceed
        collectively, or would need to be prosecuted with subclasses for each of the job
20      titles or geographic locations, is a matter to be determined at the *second* stage of the
        certification process.

21  *Wellens*, 2014 WL 2126877, at *5.

22      The Court concludes that Coates has a "reasonable basis" for her claim that female

23  attorneys in the Claims Litigation Department are a class of persons similarly situated to Coates

24  because the proposed class members may also have EPA claims predicated upon the same

25  compensation and evaluation policies as Coates.  For the foregoing reasons, the Court concludes

26  that Coates has met the lenient notice-stage standard for conditional certification.  If, after the

27                                                      23

28  Case No. 15-CV-01913-LHK
    ORDER GRANTING PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION
    AND AUTHORIZING NOTICE

1   close of discovery, it becomes apparent that the EPA claims should be pursued on an individual

2   basis, Defendants may move to decertify the class.  Defendants may renew their defenses at that

3   time.  Accordingly, the Court GRANTS Coates's motion for conditional collective action

4   certification.  The Court now turns to the notice to be sent to the conditional class members.

5       **C. Proposed Class Notice**

6       The U.S. Supreme Court has held that employees need to receive "accurate and timely

7   notice concerning the pendency of the collective action, so that they can make informed decisions

8   about whether to participate" in the collective action.  *Hoffman-La Roche*, 493 U.S. at 170.  Here,

9   Coates has provided a copy of the proposed notice and opt-in form, as well as a reminder postcard

10  to be sent prior to the expiration of the notice period.  ECF No. 56-5 Ex. A ("Notice"); Ex. B

11  ("Opt-In Form"); Ex. C ("Reminder Postcard").  Relatedly, Coates requests that the Court order

12  Defendants to produce contact information for class members, and authorize a 90-day opt-in

13  period.  Revised Proposed Order.

14      Although Defendants present no arguments in opposition to the Notice or Opt-In Form, the

15  Court finds that two changes to the forms are appropriate.  *See Hoffman-La Roche*, 493 U.S. at

16  170-71 (noting that a district court has a "managerial responsibility to oversee the joinder of

17  additional parties to assure that the task is accomplished in an efficient and proper way").  First,

18  the Notice and Opt-In Form must be amended to reflect the more restrictive class definition

19  proposed in Coates's Reply and Revised Proposed Order.  *See* Revised Proposed Order.

20  Accordingly, the Notice and Opt-In Form shall include that "The Class excludes individuals

21  working in Farmers Legal Business Administration (formerly known as "Claims Legal Services

22  Management")."  *See id.*  Second, on page 3 of the Notice, the sentence "If Plaintiffs recover no

23  money from Farmers, they will not be paid for their work on this case" shall read "If Plaintiffs

24  recover no money from Farmers, Plaintiffs' Counsel will not be paid for their work on this case."

25  Coates shall revise the proposed Notice and Opt-In Form accordingly.

26      The Court finds that, in all other respects, Coates's proposed Notice clearly and neutrally

27

28  Case No. 15-CV-01913-LHK
    ORDER GRANTING PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION
    AND AUTHORIZING NOTICE

United States District Court
Northern District of California

24

United States District Court
Northern District of California

communicates to potential class members the rights at stake in this litigation and their statutory opt-in right.  The Court approves the requested 90 day opt-in period.  *See, e.g.*, *Benedict*, 2014 WL 587135, at *13 ("[A] notice period of ninety days is sufficient time for a class member to receive the Notice, ask any questions of Plaintiffs or their counsel, and make an informed choice as to whether or not they wish to participate."); *Gee v. Suntrust Mort., Inc.*, No. C-10-1509 RS, 2011 WL 722111, at *4 (N.D. Cal. Feb 18, 2011) (ninety day opt-in period for mortgage underwriters).  Additionally, because courts commonly approve such methods of notice, the Court authorizes Coates to send the reminder postcards and to post notices within each Branch Legal Office.  *See Benedict*, 2014 WL 587135, at *14 (approving reminder postcards); *Carrillo v. Schneider Logistics, Inc.*, No. CV 11-8557 CAS(DTBx), 2012 WL 556309, at *13 (C.D. Cal. Jan. 31, 2012) (approving posting of notices in defendants' facilities).  Further, courts "routinely approve the production of email addresses and telephone numbers with other contact information to ensure that notice is effectuated," and the Court finds that warranted here as well.  *Benedict*, 2014 WL 587135, at *14; *see also, e.g.*, *Lewis*, 669 F. Supp. 2d at 1128-29 ("The Court finds that providing notice by first class mail and email will sufficiently assure that potential collective action members receive actual notice of this case.").

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Coates's motion for EPA conditional collective action certification.  The Court conditionally CERTIFIES the following class:

> Women employed by Farmers Group, Inc., Farmers Insurance Exchange, or Farmers Insurance Company, Inc. ("Farmers") in Claims Litigation at any time since June 8, 2012 in one or more of the following positions: attorney, workers compensation attorney, associate trial attorney, trial attorney, senior trial attorney, senior workers compensation attorney, specialty trial attorney, supervising attorney, supervising workers compensation attorney, HEAT attorney, or managing attorney (the "Class" or "Class Members").  The Class excludes individuals working in Farmers Legal Business Administration (formerly known as "Claims Legal Services Management").

The Court ORDERS Defendants to produce to Plaintiff's counsel in Microsoft Excel or comparable format, within 10 days of the date of this Order, the names, all known addresses, all

25

1  known e-mail addresses, all known telephone numbers, and Social Security numbers of all

2  proposed class members.  Plaintiff shall incorporate the aforementioned changes into her proposed

3  Notice and Opt-In Form, and shall send the Notice and Opt-In Form to all individuals on the class

4  list via first-class mail and email within 10 days of receipt by Plaintiff's counsel of the contact

5  information from Defendants.  Plaintiff shall also send reminder notices to the potential opt-ins

6  toward the end of the opt-in period.  Potential opt-ins shall be permitted to file consent to join

7  forms until 90 days after the mailing of the first Notice.

8  Plaintiff's counsel shall attempt to locate current addresses for all class members for whom

9  a Notice is returned as undeliverable and shall promptly re-mail or re-email the Notice documents

10  to the class member at that current address.  Plaintiff's counsel shall keep a record of the addresses

11  that it updates and the dates on which those Notices were sent to those addresses.  Plaintiff's

12  counsel is not required to mail the Notice to any particular individual more than two times.

13  Plaintiff shall bear the full cost of the Notice, opt-in forms, and reminder notices.

14  **IT IS SO ORDERED.**

16  Dated:  December 9, 2015

_Lucy H. Koh_
_____
LUCY H. KOH
United States District Judge

28  Case No. 15-CV-01913-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION
AND AUTHORIZING NOTICE

United States District Court
Northern District of California